```
 1              IN THE UNITED STATES DISTRICT COURT
              FOR THE NORTHERN DISTRICT OF ILLINOIS
 2                         EASTERN DIVISION

 3    MOTOROLA SOLUTIONS INC.,        )  Docket No. 17 C 1972
                                      )
 4                  Plaintiff,        )  Chicago, Illinois
                                      )  November 21, 2018
 5             v.                     )  9:45 a.m.
                                      )
 6    HYTERA COMMUNICATIONS           )
      CORPORATION LTD., HYTERA        )
 7    AMERICA, INC., and HYTERA       )
      COMMUNICATIONS AMERICA (WEST),  )
 8    INC.,                           )
                                      )
 9                  Defendants.       )

10           TRANSCRIPT OF PROCEEDINGS - Motion Hearing
             BEFORE THE HONORABLE JOHN ROBERT BLAKEY
11
      APPEARANCES:
12
      For the Plaintiff:    MR. ADAM R. ALPER
13                          Kirkland & Ellis LLP
                            555 California Street, 27th Floor
14                          San Francisco, CA 94104

15                          MR. MICHAEL W. De VRIES
                            Kirkland & Ellis LLP
16                          333 S. Hope Street
                            Los Angeles, CA 90071
17
      For the Defendants:   MR. DANIEL S. STRINGFIELD
18                          Steptoe & Johnson LLP
                            115 S. LaSalle Street, Suite 3100
19                          Chicago, IL 60603

20                          MR. JOHN T. SCHRIVER
                            Duane Morris LLP
21                          190 S. LaSalle Street, Suite 3700
                            Chicago, IL 60603
22
      Court Reporter:       LAURA R. RENKE, CSR, RDR, CRR
23                          Official Court Reporter
                            219 S. Dearborn Street, Room 1432
24                          Chicago, IL 60604
                            312.435.6053
25                          laura_renke@ilnd.uscourts.gov
```

1    (In open court.)

2        THE COURT: Court's in session. Please be seated.

3        THE CLERK: 17 C 1972, Motorola Solutions v. Hytera

4    Communications Corp.

5        THE COURT: Good morning, Counsel. Appearances,

6    please.

7        MR. SCHRIVER: Good morning, Judge. I'm John

8    Schriver. I'm here today representing defendant, Hytera

9    companies.

10        MR. STRINGFIELD: Good morning, your Honor. Daniel

11    Stringfield, also on behalf of Hytera.

12        And I have a motion to substitute counsel that's

13    before the Court that we filed yesterday.

14        THE COURT: Okay.

15        MR. ALPER: Good morning, your Honor. Adam Alper on

16    behalf of Motorola, from Kirkland.

17        MR. De VRIES: And good morning, your Honor. Mike

18    De Vries from Kirkland on behalf of Motorola.

19        THE COURT: All right. And I'm going to grant the

20    motion to substitute counsel.

21        MR. STRINGFIELD: Thank you, your Honor.

22        THE COURT: Have you filed your appearance yet?

23        MR. STRINGFIELD: Not yet. It was attached as an

24    exhibit to the motion.

25        THE COURT: All right. Go ahead and file that today.

1   What's the current status?  I know we were waiting to
2   see what might happen in front of the International Trade
3   Commission.
4           MR. ALPER:  Yes, your Honor.  Adam Alper for Motorola.
5           The current status is this:  As your Honor knows, the
6   case has been stayed pursuant to the mandatory stay provisions
7   since May 2017.
8           On Friday we received our commission decision.  The
9   ITC found that the four patents that had been fully adjudicated
10  before it were infringed, invalid, and issued an exclusion
11  order against Hytera on three of the four patents, banning all
12  of Hytera's DMR -- that's the technology at issue in the
13  case -- DMR products from the United States and also issued
14  what they call a cease-and-desist order covering that same set
15  of products; that that is now going to be followed by a 60-day
16  presidential review period.  That will conclude on
17  January 15th, 2019, at which point, barring a veto by the
18  United States trade representative, the exclusion order and
19  cease-and-desist order will go into effect.
20          I think as it relates to this case, your Honor, and
21  the mandatory stay provision, as your Honor knows, this case
22  has seven patents in it.  The original ITC proceedings had
23  seven patents in them as well.
24          At the administrative law judge's suggestion, we -- in
25  order for case management purposes, earlier in the proceedings,

1  three of the patents were streamlined out, without any
2  concession with respect to infringement or any of the merits on
3  those patents.
4  Motorola opted to move forward on the other four.
5  And so at this point the commission has dismissed
6  those patents, and so three of the patents before your Honor
7  are no longer subject to the mandatory stay provision because
8  they're no longer part of the ITC proceedings. So for at least
9  those three, the stay doesn't apply anymore and those are free
10  to move forward.
11  With respect to the other four that are currently in
12  the ITC, the -- we spoke with counsel for Hytera yesterday.
13  Hytera is considering whether it's going to appeal the ITC's
14  rulings.
15  If the parties do not -- this mandatory stay applies
16  through appeals. If the -- if neither party appeals any of the
17  rulings, then the stay would no longer be applicable. If the
18  parties do apply the rulings, then the stay would continue.
19  And we've just discussed procedure for exchanging
20  client-friendly versions of the order that came down on Friday
21  from the ITC. Of course, as I'm sure your Honor is aware,
22  those are protected by protective orders at this point so that
23  the opinion -- detailed opinion is confidential.
24  However, we were going to work out a way to expedite
25  our client seeing that. So if Hytera wants to make a -- you

1  know, a decision on appeals, it can do that in a more
2  expeditious matter.
3          That said, we plan to ask your Honor by way of a
4  motion to move forward with at least the three patents that are
5  no longer subject to the stay.  Those have been pending for
6  quite a while, and at this point, now that we have the full
7  guidance of the commission, we feel those are in a position to
8  be adjudicated here.
9          THE COURT:  What are your thoughts?
10         MR. STRINGFIELD:  Thank you, your Honor.  Daniel
11 Stringfield on behalf of Hytera.
12         Your Honor, our position is that the stay should not
13 be lifted at this time.  As counsel indicated in his remarks,
14 they say at this time they want to go forward with a case on
15 three patents and then maybe add four later, either in 60 days
16 after their appeal period expires or 120 days after Hytera's
17 appeal review period expires or maybe 12 months from now if
18 either party decides to go forward with an appeal and we
19 adjudicate that appeal.
20         Your Honor, the language of the statute that mandates
21 the appeal says that the stay should continue with respect to
22 any claim that involves the same issues involved in the
23 proceeding before the commission.
24         All seven of these patents were asserted in this case
25 in the same complaint.  All seven of those patents were also

1  asserted in the same ITC complaint.  The petitioner, or the
2  plaintiff here, cannot credibly claim that these patents relate
3  to different issues.  It doesn't make sense to lift the stay as
4  to some subset of the patents while reserving their right to
5  later bring more patents either before this Court or another
6  district court.
7         Your Honor, it is our position that the stay should
8  continue at least until the appeal period is expired for the
9  parties to get a better picture of which patents are going to
10 be in this case and which patents are not going to be in this
11 case.
12        And, your Honor, just a few timeline points that are
13 worth noting.  This case is -- the extension of the -- or the
14 stay, rather, has been extended on multiple occasions.  One
15 such extension was February 7th of 2018, and that's Docket
16 No. 45.
17        On February 7th of 2018, the Motorola parties had
18 already dropped these three patents from their case, from the
19 ITC case at that time.  The Motorola parties did not seek to go
20 forward with those three patents at that time.
21        It was only now, some ten months later, after they've
22 gotten the decision from the ITC on the four patents that
23 remained, that Motorola sought to go forward.
24        So we don't -- we don't sense or share the urgency
25 that Motorola feigns today with respect to those three patents

1       that it dropped from its ITC case prior to February 7th, 2018.

2               THE COURT: Would you respond to that, Counsel?

3               MR. ALPER: Yes, your Honor. Just a couple of brief

4       responses.

5               First of all, under 28 U.S.C. 1659 -- that's the

6       mandatory stay provision -- the three patents that are not part

7       of the ITC are definitively not stayed under that provision.

8       That provision specifically refers to claims that are stayed,

9       and there is no claim on those patents in the ITC. So the

10      mandatory stay provision does not apply there.

11              When it comes to a discretionary stay, your Honor --

12      which your Honor certainly has the ability to apply a

13      discretionary stay in this instance -- it's not warranted when

14      it comes to those three patents as we would plan to present to

15      your Honor when we would move, your Honor, on this point.

16              The patents, although relate to the same overall

17      products, relate to discrete features. And in the ITC, based

18      on the strong suggestion from the administrative law judge,

19      we -- Motorola opted to take those three patents and put --

20      litigate them in the district court as opposed to the ITC where

21      the four remaining patents went through to a final decision

22      that we just received on Friday.

23              I will note this: It is important to Motorola and in

24      the interest of justice to move forward with these patents.

25      The four patents that were before the ITC were not only found

1  to be infringed; they were found to be intentionally infringed.
2  And Hytera was found with respect to those patents to be an
3  intentional copyist, and the evidence supports the same when it
4  comes to these other three. And that's a very important part
5  of our case because this is one -- a case between competitors.
6  Hytera is currently using these technologies in the marketplace
7  to Motorola's great irreparable harm.
8      And so moving forward is not -- is not barred by the
9  mandatory stay provision in any way absolutely as a matter of
10 law. And, secondly, a discretionary stay in these
11 circumstances would not be appropriate.
12     THE COURT: Are the parties talking about settlement
13 at all?
14     MR. STRINGFIELD: Not that I'm aware of, your Honor.
15     MR. ALPER: We've had discussions in the past, but we
16 don't have anything currently on calendar to talk.
17     THE COURT: Does the ITC decision change that
18 landscape at all?
19     MR. ALPER: It -- well, since Motorola prevailed, we
20 would have to -- I think that would be more of a question for
21 Hytera, if they --
22     THE COURT: He's new to the case.
23     I'm going to ask the parties about that on the next
24 court date. If that decision is going to affect that -- you
25 know, no one has to settle, but people do have to talk about it

1 because it's important to, under Rule 1.

2 So if you'd go ahead and at least discuss with new
3 counsel what those issues are.

4 MR. ALPER: Certainly.

5 THE COURT: One of my concerns about lifting the stay
6 would be to have duplicative discovery. Is there any portion
7 of the discovery that essentially can be carved out with
8 respect to the three patents that are no longer subject to the
9 mandatory stay?

10 For example, I don't want to have multiple depositions
11 of the same person, but perhaps written discovery can begin to
12 issue between now and at least between the 60-day period to see
13 whether or not we're going to have additional proceedings at
14 the ITC or whether or not the remaining claims or whatever
15 other issues are going to happen there are going to clarify
16 before we finish discovery here.

17 What are your thoughts on that?

18 MR. ALPER: So we have several thoughts on that, your
19 Honor.

20 So the -- as it turns out, the three patents that are
21 no longer in the ITC did get far enough along in the ITC so
22 that we actually took substantial discovery on them. So from
23 our perspective, from Motorola's perspective, we actually don't
24 need very much more in the way of discovery in order to
25 adjudicate those claims before your Honor.

1  And so the short answer is we believe that there
2  wouldn't be a whole lot of overlap because we can reuse the
3  record that we developed in the ITC during the discovery period
4  there and thus have a very kind of streamlined proceeding when
5  it comes to those three patents.
6  And certainly when you kind of weigh that against
7  should Hytera appeal the other patents, we're talking about
8  multiple years before we take patents that are kind of, like,
9  packaged up and ready to go to get them to a final result.  It
10  doesn't -- it doesn't balance out, from our perspective.
11  THE COURT:  What discovery do you envision?
12  MR. ALPER:  We would -- so we had gotten through claim
13  construction.  We had gotten through fact discovery.  And we
14  had gotten through I believe expert discovery on all three
15  patents.  So not a whole lot.  You know, I think that most of
16  the record is there.  And standing here right now, I'm not sure
17  I can think of anything in particular.
18  Damages.  I'm sorry.  My colleague, Mr. De Vries,
19  reminded me.  Damages was not --
20  THE COURT:  The most important part.
21  MR. ALPER:  Right.  Thank you.  That is -- that's
22  correct.
23  So one of the issues that was not in the ITC that will
24  be before your Honor is damages.  So we would need to do some
25  follow-up on damages.

1 THE COURT: If the multiple patents are used on the
2 same series of products, how are you going to be able to
3 segregate damages apart from the other patents?
4 MR. ALPER: By way of, you know, ordinary experts and
5 apportionment and so forth, your Honor. That's -- that's very
6 typical for us to -- and by law, we -- we feel it's our
7 responsibility to address those issues. And -- and since
8 they're on different features, each patent is on a different
9 feature, that's something that, between the technical damages
10 experts, is very readily available to the -- you know, for us
11 to be able to do.
12 THE COURT: What's your response, Counsel?
13 MR. STRINGFIELD: Your Honor, I don't share counsel's
14 view that there won't be duplicative discovery if we do this as
15 Motorola proposes whereby we go forward with some subset of the
16 patents and then later pick up patents at some point down the
17 road.
18 There's substantial, if not almost entire, overlap in
19 the accused products that are at issue with the three patents
20 that they would like to go forward with today and the other
21 four patents that may or may not come back into the case later.
22 So, your Honor, our fear is that there would be
23 duplication of written discovery related to infringement issues
24 and -- and possibly even overlap in validity issues to the
25 extent that there are issues that interplay between the four

1 patents and the three patents, your Honor. So our fear is that
2 this would result in a duplication of discovery if we go
3 forward on a dual-track approach as counsel proposes.
4       THE COURT: Anything else, Counsel?
5       MR. ALPER: Just to say that there really -- because
6 we made so much progress in the ITC, to the extent that any
7 additional discovery needs to be -- we need to engage in any
8 additional discovery, it is minor, and it certainly doesn't
9 justify waiting what will ultimately be a couple of years for
10 appeal, especially considering that we're dealing with
11 competitors.
12       We're dealing with a company, Hytera, that is
13 continuing to use Motorola's technologies in the marketplace
14 against us. And we think that the harm that -- that
15 irreparable harm consideration in this instance should weigh
16 against a discretionary stay of patents that are no longer
17 subject to any statutory stay.
18       MR. STRINGFIELD: Your Honor, if I may make one final
19 point on that. Your Honor, one thing that hasn't been
20 mentioned is of the three patents that they seek to go forward
21 on, one of the three is subject to a pending IPR petition.
22 There's precedent in this court and other courts that when at
23 least some subset of the patents at issue are subject to a
24 pending IPR that it makes sense to stay the case for the
25 purposes of judicial economy.

1                The subject patent that I'm referring to, for the
2    record, is U.S. Patent 6,591,111. As I mentioned, the IPR
3    petition has already been instituted. Oral argument for that
4    petition I believe is set for February, with the PTAB to issue
5    its decision about six months thereafter. So we're talking
6    August on that patent; that it will be in limbo, of the three,
7    again, that Motorola seeks to go forward on today.
8                THE COURT: Is that true, Counsel, that one of the
9    three you're wanting to go forward on has a PTAB issue?
10               MR. ALPER: One of the three that we want to move
11   forward on is in the PTAB but not on all claims. So the PTAB
12   did not institute on all claims, and there are a number of
13   claims that are not in the IPR which would be before your
14   Honor.
15               THE COURT: Okay. Anything else?
16               MR. STRINGFIELD: I believe that the claims that are
17   at issue in the IPR are all of the claims that were asserted at
18   the ITC.
19               MR. ALPER: And they may have been the ones that were
20   in the ITC, but they aren't all of the claims that we would
21   assert against Hytera, so not all of the claims.
22               And that is the last chance. They are expired on
23   IPRs. They can't file IPRs on these three patents anymore.
24   Their date has passed.
25               And so at this point there are active claims that can

1     be asserted that will be asserted here, your Honor, that are

2     not -- not subject to any IPR proceedings and will never be a

3     subject of IPR proceedings by Hytera.

4          And in any event, with respect to that one patent, the

5     '111, that will all be completed by May 2019. So that's --

6     that really, from our perspective, doesn't seem like a valid

7     reason to hold things up.

8          THE COURT: Well, it might change what I do with that

9     particular patent, wouldn't it?

10         MR. ALPER: From our perspective, no, your Honor,

11     because there are claims that we could still move forward. But

12     even if the PTAB invalidates every claim that's in that

13     petition, there still would be claims that we could move

14     forward with before your Honor because they --

15         THE COURT: Yeah, but if I address claims that were

16     pending there, then I would waste my time working through

17     those, right?

18         MR. ALPER: Yes, your Honor, except -- except for we

19     don't believe that given -- when we put our heads together and

20     schedule this case, we don't think anything is going to come to

21     your Honor on those specific claims by May of 2019. I think

22     that, you know, we will have a decision from the patent office

23     before you need to evaluate anything at that level in this

24     case.

25         THE COURT: Well, you said there wasn't much discovery

1 left on the three. So why wouldn't I move forward quickly?

2 MR. ALPER: Well, so you're right, your Honor. If we
3 were looking at a schedule that was compressed like that, which
4 would be fine with us, then we -- we would either want to only
5 assert the claims that were not in the IPR proceedings or
6 accommodate that May 2019 date so you didn't have to do
7 duplicative work. Fully agree with you there.

8 And if we were to set a schedule that was in that time
9 frame, then we would very much work to do that so you wouldn't
10 have duplicative work.

11 THE COURT: Anything else, Counsel?

12 MR. STRINGFIELD: Your Honor, just for the Court's
13 reference, the authority on this point in this district is
14 *Trading Technologies v. BCG Partners*, 186 F.Supp.3d 870
15 (N.D. Ill. 2016).

16 And in that case, your Honor's -- or, your Honor, the
17 Court considered where -- a situation where only a subset of
18 the patents-in-suit were subject to IPR. And there the Court
19 exercised its discretion to stay the case because it found that
20 the cancellation of other patents or other claims, even if not
21 all of them, could significantly alter and clarify and narrow
22 the claims and defenses in that case.

23 Your Honor, it's our position, first, that the
24 statute -- or excuse me -- the mandatory stay mandates
25 continuance of the stay. Falling back, your Honor, the Court's

1  discretion should not pro -- allow a dual track, patents in,
2  patents out, maybe some are in, maybe some are out,
3  we-don't-know approach to this very complicated patent
4  litigation.
5           THE COURT:  Okay.  Anything else?
6           MR. ALPER:  Nothing, your Honor, from us.
7           THE COURT:  Okay.  Gloria, give me a status date end
8  of January.
9           THE CLERK:  Wednesday, January 30th, at 9:45.
10          THE COURT:  Is that good for the parties for a status?
11          MR. STRINGFIELD:  It's good for Hytera, your Honor.
12          MR. ALPER:  I'm sure it is.  Sorry, your Honor.
13          That looks -- looks good.  That's good for us, your
14 Honor.
15          THE COURT:  Okay.  Couple different factors: We've
16 got the ITC issue, we've got the PTAB issue, and we have new
17 counsel and the fact that some of those things are going to
18 possibly affect a settlement conversation that seems stalled
19 and needs to be at least explored again.  And there's the
20 holidays, which obviously compromise the ability to get a lot
21 of certain things done.
22          So based on all the factors in front of me, I'm going
23 to continue a stay.  I'm going to do it based on a
24 discretionary stay of all the claims through and including
25 January 30th.  But I fully expect to lift the stay on some or

1 all of the claims and move forward on our next court date.

2 What I'm going to ask that you do is at least to

3 explore the conversation regarding settlement. Nobody has to.

4 It's fine. But you do have to talk about it. So I want you to

5 talk about it, and especially since the landscape has changed

6 in light of some of the issues that were resolved in the ITC.

7 This also gives you an opportunity to catch up with

8 the case, having just come into it. And if you want to argue

9 that the stay needs to go longer, be prepared to argue it in

10 detail on the next court date. And when we discuss this stay,

11 we'll talk about ITC and PTAB and any developments on any of

12 those that have come between now and our next court date.

13 But I expect it will probably move forward, at least

14 on some phase, so that we don't waste time. But I am concerned

15 about the Court spending resources on issues that could be

16 narrowed based on what happens on the ITC, whether or not

17 there's going to be an appeal, whether or not the PTAB issues a

18 ruling and whatever the timing is.

19 They've already instituted, right?

20 MR. STRINGFIELD: Correct, your Honor.

21 THE COURT: Okay. All right. So at least we know

22 that.

23 Anything else I can help you with today?

24 MR. ALPER: Nothing for us.

25 MR. STRINGFIELD: No.

1       THE COURT:  Have a great holiday, everybody.

2       MULTIPLE COUNSEL:  Thank you, your Honor.

3    (Concluded at 10:06 a.m.)

4                    C E R T I F I C A T E

5    I certify that the foregoing is a correct transcript of the

6    record of proceedings in the above-entitled matter.

7

8    */s/ LAURA R. RENKE*                          *November 29, 2018*
     LAURA R. RENKE, CSR, RDR, CRR
9    Official Court Reporter

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25