**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | |
|---|---|
| MOTOROLA SOLUTIONS, INC.,     ) | |
|     ) | |
| Plaintiff,     ) | |
|     ) | Case No. 17-cv-01972 |
| v.     ) | |
|     ) | Judge John Robert Blakey |
| HYTERA COMMUNICATIONS     ) | |
| CORPORATION LTD. AND HYTERA     ) | |
| COMMUNICATIONS AMERICA     ) | |
| (WEST), INC.,     ) | |
|     ) | |
| Defendants.     ) | |

## STIPULATED PROTECTIVE ORDER

The parties to this Stipulated Protective Order have agreed to the terms of this Order; accordingly, it is ORDERED:

1.     **Scope.** All disclosures, affidavits and declarations and exhibits thereto, deposition testimony and exhibits, discovery responses, documents, electronically stored information, tangible objects, information, and other things produced, provided, or disclosed in the course of this action which may be subject to restrictions on disclosure under this Order, and information derived directly therefrom (hereinafter referred to collectively as "documents"), shall be subject to this Order as set forth below. As there is a presumption in favor of open and public judicial proceedings in the federal courts, this Order shall be strictly construed in favor of public disclosure and open proceedings wherever possible. The Order is also subject to the Local Rules of this District and the Federal Rules of Civil Procedure on matters of procedure and calculation of time periods.

2.     **Form and Timing of Designation.** A party may designate documents as confidential and restricted in disclosure under this Order by placing or affixing the words

"CONFIDENTIAL" (hereinafter referred to as "CONFIDENTIAL") or "CONFIDENTIAL -

ATTORNEY'S EYES ONLY" (hereinafter referred to as "ATTORNEY'S EYES ONLY") on the

document in a manner that will not interfere with the legibility of the document and that will permit

complete removal of the designation.[1] Documents shall be designated prior to or at the time of the

production or disclosure of the documents. When a tangible object is produced for inspection

subject to protection under this Order, a photograph thereof shall be produced at the time of

inspection labeled with the designation CONFIDENTIAL or ATTORNEY'S EYES ONLY.

Thereafter any information learned or obtained as a result of the inspection shall be subject to

protection under this Order in accordance with the applicable designation. When electronically

stored information is produced which cannot itself be marked with the designation

CONFIDENTIAL or ATTORNEY'S EYES ONLY, the physical media on which such

electronically stored information is produced shall be marked with the applicable designation. The

party receiving such electronically stored information shall then be responsible for labeling any

copies that it creates thereof, whether electronic or paper, with the applicable designation. By

written stipulation the parties may agree temporarily to designate original documents that are

produced for inspection CONFIDENTIAL or ATTORNEY'S EYES ONLY even though the

original documents being produced have not themselves been so labeled. All information learned

in the course of such an inspection shall be protected in accordance with the stipulated designation.

The copies of documents that are selected for copying during such an inspection shall be marked

CONFIDENTIAL or ATTORNEY'S EYES ONLY as required under this Order and thereafter the

copies shall be subject to protection under this Order in accordance with their designation. The

---

[1]    Any attorney designating documents CONFIDENTIAL or ATTORNEY'S EYES ONLY submits to the
jurisdiction of this Court on the subject matter of the designation.

designation of documents for protection under this Order does not mean that the document has any status or protection by statute or otherwise except to the extent and for the purposes of this Order.

3. **Documents Which May be Designated CONFIDENTIAL.** Any party may designate documents as CONFIDENTIAL upon making a good faith determination that the documents contain information protected from disclosure by statute or that should be protected from disclosure as confidential business or personal information, medical or psychiatric information, trade secrets, personnel records, or such other sensitive commercial information that is not publicly available. Public records and documents that are publicly available may not be designated for protection under this Order.

4. **Documents Which May be Designated ATTORNEY'S EYES ONLY.** Any party may designate documents as ATTORNEY'S EYES ONLY upon making a good faith determination that the documents contain information protected from disclosure by statute or that should be protected from disclosure as trade secrets or other highly sensitive business or personal information, the disclosure of which is likely to cause significant harm to an individual or to the business or competitive position of the designating party.

5. **Depositions.** Deposition testimony shall be deemed CONFIDENTIAL or ATTORNEY'S EYES ONLY only if designated as such. Such designation shall be specific as to the portions of the transcript or any exhibit designated for protection under this Order. Thereafter, the deposition testimony and exhibits so designated shall be protected, pending objection, under the terms of this Order. The parties agree that all deposition testimony and exhibits used therein shall temporarily and automatically be designated ATTORNEY'S EYES ONLY under this Order pending receipt and review of the transcript. The parties shall review the transcript within thirty days of the receipt thereof and specifically designate the testimony and exhibits to be protected

pursuant to the terms of this Order. Thereafter only the specifically designated testimony and exhibits shall be protected under the terms of this Order.

6. **Protection of Confidential Material.**

(a) **Protection of Documents Designated CONFIDENTIAL.** Documents designated CONFIDENTIAL under this Order shall not be used for any purpose whatsoever other than the prosecution or defense of the above-captioned action or the following co-pending actions: *Motorola Solution, Inc. et al v. Hytera Communications Corp. Ltd. et al*, Case No. 1:17-cv-01973 (N.D. Ill), *Hytera Communications Corp. Ltd v. Motorola Solutions Inc.*, Case. No. 1:17-cv-01974 (N.D. Ohio), and *In the matter of Two-Way Radio Equipment and Systems, Related Software, and Components Thereof*, Investigation No. ITC-337-TA-1053 (collectively, "the Other Litigations"). The parties and counsel for the parties shall not disclose or permit the disclosure of any documents designated CONFIDENTIAL to any third person or entity except as set forth in subparagraphs (l)-(l 1). Subject to these requirements, the following categories of persons may be allowed to review documents that have been designated CONFIDENTIAL.

(1) **Outside Counsel of Record.** Outside counsel of record for the parties and employees and agents of counsel who have responsibility for the preparation and trial of the action.

(2) **Parties.** Parties and employees of a party to this Order.

(3) **The Court.** The Court and its personnel.

(4) **Court Reporters and Recorders.** Court reporters and recorders engaged for depositions.

(5) **Outside Experts and Consultants.** Outside experts, consultants, or investigators, and their staff employed by the parties or counsel for

the parties to assist in the preparation and trial of this action or proceeding, but only after such persons have completed the certification contained in Attachment A, Acknowledgment of Understanding and Agreement to Be Bound and provided that each such person is not a current officer, director, or employee of a party or of a direct competitor of a party, nor has knowledge at the time of retention that they will become an officer, director, or employee of a party or of a direct competitor of a party. A party shall follow the disclosure process outlined in paragraph 6(f) below before any documents designated for protection under this Order are disclosed to the expert, investigator, or consultant.

(6)     **Contractors.** Those persons specifically engaged for the limited purpose of making copies of documents or organizing or processing documents, including outside vendors hired to process electronically stored documents.

(7)     **Corporate Representatives at Depositions.** During their depositions, third-party corporate representatives of a designating party in this action, but only if disclosure is reasonably necessary. Witnesses shall not retain a copy of documents designated for protection under this Order, except witnesses may, in the presence of counsel, review a copy of all exhibits marked at their depositions in connection with review of the transcripts.

(8) **Author or recipient.** During their depositions, the author or recipient of the document (not including a person who received the document in the course of litigation) shall not retain a copy of documents designated for protection under this Order, except witnesses may receive a copy of all exhibits marked at their depositions in connection with review of the transcripts.

(9) **Trial Consultants and Mock Jurors.** Trial consulting personnel or mock jurors, having first completed the certification contained in Attachment A, Acknowledgment of Understanding and Agreement to Be Bound.

(10) **Mediators and Arbitrators.** Any mediator or arbitrator who is assigned or selected to hear this action, and his or her staff, subject to their agreement to maintain confidentiality to the same degree as required by this Order.

(11) **Others by Consent.** Other persons only by written consent of the producing party or upon order of the Court and on such conditions as may be agreed or ordered. All such persons shall execute the certification contained in Attachment A, Acknowledgment of Understanding and Agreement to Be Bound.

(b) **Protection of Documents Designated ATTORNEY'S EYES ONLY.** Documents designated ATTORNEY'S EYES ONLY under this Order shall not be used for any purpose whatsoever other than the prosecution or defense of the above-captioned action or the Other Litigations. The parties and counsel for the parties shall not disclose or permit the disclosure

of any documents designated ATTORNEY'S EYES ONLY to any third person or entity except as set forth in subparagraphs (l)-(9). Subject to these requirements, the following categories of persons may be allowed to review documents that have been designated ATTORNEY'S EYES ONLY.

(1) **Outside Counsel of Record.** Outside counsel of record for the parties and employees and agents of counsel who have responsibility for the preparation and trial of the action.

(2) **The Court.** The Court and its personnel.

(3) **Court Reporters and Recorders.** Court reporters and recorders engaged for depositions.

(4) **Outside Experts and Consultants.** Outside experts, consultants, or investigators, and their staff employed by the parties or counsel for the parties to assist in the preparation and trial of this action or proceeding, but only after such persons have completed the certification contained in Attachment A, Acknowledgment of Understanding and Agreement to Be Bound and provided that each such person is not a current officer, director, or employee of a party or of a direct competitor of a party nor has knowledge at the time of retention that they will become an officer, director, or employee of a party or of a direct competitor of a party. A party shall follow the disclosure process outlined in paragraph 6(f) below before any documents designated for protection under this Order are disclosed to the expert, investigator, or consultant.

(5) **Contractors.** Those persons specifically engaged for the limited purpose of making copies of documents or organizing or processing documents, including outside vendors hired to process electronically stored documents.

(6) **Author or recipient.** During their depositions, the author or recipient of the document (not including a person who received the document in the course of litigation) shall not retain a copy of documents designated for protection under this Order, except witnesses may receive a copy of all exhibits marked at their depositions in connection with review of the transcripts.

(7) **Trial Consultants and Mock Jurors.** Trial consulting personnel or mock jurors, having first completed the certification contained in Attachment A, Acknowledgment of Understanding and Agreement to Be Bound.

(8) **Mediators and Arbitrators.** Any mediator or arbitrator who is assigned or selected to hear this action, and his or her staff, subject to their agreement to maintain confidentiality to the same degree as required by this Order.

(9) **Others by Consent.** Other persons only by written consent of the producing party or upon order of the Court and on such conditions as may be agreed or ordered. All such persons shall execute the certification contained in Attachment A, Acknowledgment of Understanding and Agreement to Be Bound.

(c)     **Control of Documents.** Counsel for the parties shall take reasonable and appropriate measures to prevent unauthorized disclosure of documents designated for protection under this Order. Counsel shall maintain the originals of the forms signed by persons acknowledging their obligations under this Order for a period of 1 year after dismissal of the action, the entry of final judgment and/or the conclusion of any appeals arising therefrom. All electronic copies / documents / data may not reside on opposing party's server or be otherwise available to anyone outside of those designated.

(d)     **Use of Information by Producing Party.** Nothing in this Order shall restrict any party to this lawsuit or its attorneys from disclosing or using, in any manner and for any purpose, its own documents designated for protection under this Order.

(e)     **Copies.** All copies of documents designated for protection under this Order, or any individual portion of such a document, shall be marked with the designation CONFIDENTIAL or ATTORNEY'S EYES ONLY if the words do not already appear on the copy. All such copies shall be entitled to the protection of this Order. The term "copies" shall not include indices, electronic databases or lists of documents provided these indices, electronic databases or lists do not contain substantial portions or images of the text of designated documents or otherwise disclose the substance of the designated documents.

(f)     **Disclosure Process for Outside Experts and Consultants.** The party obtaining the Attachment A, Acknowledgment of Understanding and Agreement to Be Bound must serve it on all other parties at least five (5) business days before the first disclosure of documents designated for protection under this Order to an expert, consultant, or investigator (or member of their staff). The party proposing to make the disclosure must serve the producing party with a written identification of the expert, consultant, or investigator and a copy of his or her

9

curriculum vitae. If the producing party has good cause to object to the disclosure (which does not include challenging the qualifications of the expert, investigator, or consultant), it must serve the party proposing to make the disclosure with a written objection within five (5) business days after service of the identification. Unless the parties resolve the dispute within five (5) business days after service of the objection, the producing party must move the Court promptly for a ruling, and the documents designated for protection under this Order may not be disclosed to the expert, investigator, or consultant without the Court's approval.

7. **Inadvertent Failure to Designate.** An inadvertent failure to designate a document or thing as CONFIDENTIAL or ATTORNEY'S EYES ONLY does not, standing alone, waive the right to so designate the document or thing as long as the party inadvertently failing to designate timely serves on any recipient of such document or thing a replacement that is properly designated or affixes a notice of confidentiality as required by this Order. If a party designates a document or thing as CONFIDENTIAL or ATTORNEY'S EYES ONLY after it was initially produced, the receiving party, on notification of the designation, must make a reasonable effort to assure that the document or thing is treated in accordance with the provisions of this Order. No party shall be found to have violated this Order for failing to maintain the confidentiality of material during a time when that material has not been designated as CONFIDENTIAL or ATTORNEY'S EYES ONLY, even where the failure to so designate was inadvertent and where the material is subsequently designated as CONFIDENTIAL or ATTORNEY'S EYES ONLY, unless it is readily apparent that said inadvertently undesignated material is, in fact, CONFIDENTIAL or ATTORNEY'S EYES ONLY.

8. **Filing of CONFIDENTIAL or ATTORNEY'S EYES ONLY Documents Under Seal.** The Court highly discourages the manual filing of any pleadings or other papers under

seal. To the extent that a pleading or other paper references an exhibit designated for protection under this Order, then the pleading or other paper shall refer the Court to the particular exhibit filed under seal without disclosing the contents of any confidential information.

(a)     Before any exhibit designated for protection under this Order is filed under seal with the Clerk, the filing party shall first consult with the party that originally designated the document for protection under this Order to determine whether, with the consent of that party, the exhibit or a redacted version of the exhibit may be filed with the Court not under seal.

(b)     Where agreement is not possible or adequate, an exhibit designated for protection under this Order shall be filed electronically under seal in accordance with the electronic case filing procedures of this Court.

(c)     Where filing electronically under seal is not possible or adequate, before an exhibit designated for protection under this Order is filed with the Clerk, it shall be placed in a sealed envelope marked CONFIDENTIAL or ATTORNEY'S EYES ONLY, which envelope shall also display the case name, docket number, a designation of what the exhibit is, the name of the party in whose behalf it is submitted, and the name of the attorney who has filed the exhibit on the front of the envelope. A copy of any exhibit filed under seal shall also be delivered to the judicial officer's chambers.

(d)     To the extent that it is necessary for a party to discuss the contents of any document designated for protection under this Order in a pleading or other paper filed with this Court, then such portion of the pleading or other paper shall be filed under seal. In such circumstances, counsel shall prepare two versions of the pleading or other paper, a public and a sealed version. The public version shall contain a redaction of references to CONFIDENTIAL or ATTORNEY'S EYES ONLY documents. The sealed version shall be a full and complete version

11

of the pleading or other paper and shall be filed with the Clerk under seal as above. A copy of the unredacted pleading or other paper also shall be delivered to the judicial officer's chambers.

9. **No Greater Protection of Specific Documents.** Except on privilege grounds not addressed by this Order, no party may withhold information from discovery on the ground that it requires protection greater than that afforded by this Order unless the party moves for an order providing such special protection.

10. **Challenges by a Party to a Designation for Protection Under this Order.** Any CONFIDENTIAL or ATTORNEY'S EYES ONLY designation is subject to challenge by any party or non-party with standing to object (hereafter "party"). Before filing any motions or objections to a designation for protection under this Order with the Court, the objecting party shall have an obligation to meet and confer in a good faith effort to resolve the objection by agreement. If agreement is reached confirming or waiving the CONFIDENTIAL or ATTORNEY'S EYES ONLY designation as to any documents subject to the objection, the designating party shall serve on all parties a notice specifying the documents and the nature of the agreement.

11. **Action by the Court.** Applications to the Court for an order relating to any documents designated for protection under this Order shall be by motion under Local Rule 5.3 and any other procedures set forth in the presiding judge's standing orders or other relevant orders. Nothing in this Order or any action or agreement of a party under this Order limits the Court's power to make any orders that may be appropriate with respect to the use and disclosure of any documents produced or used in discovery or at trial,

12. **Inadvertent Disclosure.**

(a)     This Protective Order is intended to be an Order within the meaning of Fed. R. Evid. 502(d) and 502(e). The inadvertent, unintentional disclosure of material or information

subject to the attorney-client privilege, the work product doctrine or other privilege or immunity shall not be a waiver, in whole or in part of the relevant privilege or immunity. Within a reasonable time after the discovery of the inadvertent production, the producing party shall notify the receiving party, in writing, that it inadvertently produced documents, testimony, information, or things that are protected from disclosure under the attorney-client privilege, work product doctrine, or any other applicable privilege or immunity. The receiving party shall then:

- return or destroy all copies of such documents, testimony, information, or things to the producing party within three (3) business days of receipt of such notice;

- destroy all notes or other work product reflecting the content of such material and delete or sequester such material from any litigation support or other database within three (3) business days of receipt of such notice; and

- not further use such items for any purpose unless and until further order of the Court. The return of any discovery item to the producing party shall not in any way preclude the receiving party from seeking a Court Order after conferring with the producing party for a ruling that: (i) the document or thing is not protected by the attorney-client privilege, the common-interest privilege, the work product immunity, or any other immunity, or (ii) any applicable privilege or immunity has been waived other than by the inadvertent production of such material.

(b)     Each person receiving material designated as CONFIDENTIAL or ATTORNEY'S EYES ONLY shall exercise due and proper care, in connection with the storage, custody, use, and dissemination of such information, to avoid any intentional or inadvertent

disclosure to persons to whom disclosure is not permitted under this Protective Order. In the event of disclosure of material designated as CONFIDENTIAL or ATTORNEY'S EYES ONLY to any person not authorized to such access under this Protective Order, the receiving party responsible for having made such disclosure, and each party with knowledge thereof, shall immediately inform counsel for the producing party whose material has been disclosed of all known relevant information concerning the nature and circumstances of the disclosure. The receiving party responsible for improperly disclosing such material shall also promptly take all reasonable measures to retrieve the improperly disclosed material and to ensure that no further or greater unauthorized disclosure or use thereof is made.

13.     **Use of Confidential Documents or Information.**

(a)     The Parties may use in this case any materials that have been or will be produced in connection with any of the Other Litigations.

(b)     Protected material designated by either of the Parties under a protective order in any of the Other Litigations shall be afforded at least the same level of protection under this Order. If there is any conflict between the protective orders in the Other Litigations and this Order, the more restrictive protective order provision(s) shall govern. The Parties still further stipulate and agree that the Parties need not reproduce any materials previously produced in this case or any of the Other Litigations before such materials can be used by the Parties in the Other Litigations or in this case.

(c)     Absent order of the Court, all trials are open to the public and there will be no restrictions on the use at trial of any document designated for protection under this Order or produced in the Other Litigations. If a party intends to present at trial documents designated for protection under this Order or produced in the Other Litigations, or information derived therefrom,

such party shall provide advance notice to the party designating the documents for protection under this Order or under a protective order in the Other Litigations at least five (5) days before the commencement of trial by identifying the documents or information at issue as specifically as possible (/. e., by Bates number, page range, deposition transcript lines, etc.). Upon motion of the party designating the document for protection under this Order or under a protective order in the Other Litigations, the Court may thereafter make such orders as are necessary to govern the use of such documents or information at trial.

14.     **Confidential Information Subpoenaed or Ordered Produced in Another Litigation.**

(a)     If a receiving party is served with a subpoena or an order issued in another litigation that would compel disclosure of any material or document designated in this action as CONFIDENTIAL or ATTORNEY'S EYES ONLY, the receiving party must so notify the designating party, in writing, immediately and in no event more than five (5) court days after receiving the subpoena or order. Such notification must include a copy of the subpoena or court order.

(b)     The receiving party also must immediately inform in writing the party who caused the subpoena or order to issue in the other litigation that some or all of the material covered by the subpoena or order is the subject of this Order. In addition, the receiving party must deliver a copy of this Order promptly to the party in the other action that caused the subpoena to issue.

(c)     The purpose of imposing these duties is to alert the interested persons to the existence of this Order and to afford the designating party in this case an opportunity to try to protect its CONFIDENTIAL or ATTORNEY'S EYES ONLY information in the court or forum from which the subpoena or order issued. The designating party shall bear the burden and the

expense of seeking protection in that court or forum of its CONFIDENTIAL or ATTORNEY'S EYES ONLY information, and nothing in these provisions should be construed as authorizing or encouraging a receiving party in this action to disobey a lawful directive from another court or forum. The obligations set forth in this paragraph remain in effect while the party has in its possession, custody or control CONFIDENTIAL or ATTORNEY'S EYES ONLY information by the other party to this case.

15.     **Prosecution Bar.** Absent written consent from the producing party, any individual who receives materials designated as CONFIDENTIAL or ATTORNEY'S EYES ONLY shall not be involved in the prosecution of patents or patent applications relating to digital two-way radio technology, before any foreign or domestic agency, including the United States Patent and Trademark Office. For purposes of this paragraph, "prosecution" includes-preparing and/or prosecuting, or otherwise aiding or providing advice related to the preparation or prosecution, of any new or pending patent application (or portion thereof). To avoid any doubt, "prosecution" as used in this paragraph does not include representing a party in an *inter partes* review, a covered business method review, a post grant review, a reissue, a reissue protest, or an *ex parte* reexamination. This Prosecution Bar shall begin when access to material designated as CONFIDENTIAL or ATTORNEY'S EYES ONLY is first received by the affected individual and shall end two (2) years after final termination of this action. The restrictions set forth herein shall be personal to any attorney who reviews another party's materials designated as CONFIDENTIAL or ATTORNEY'S EYES ONLY and shall not be imputed to any other persons or attorneys at the attorney's law firm or company. For the avoidance of doubt, the following documents and materials shall not be considered or classified as materials of another party that will trigger the Prosecution Bar: (i) publicly available publications, including patents and published patent

applications; (ii) materials regarding third party systems or products that were publicly known, on sale, or in public use; (iii) information that is otherwise publicly available; and (iv) documents and information related solely to damages or reasonable royalty rates.

16.     **Source Code.** To the extent production of Source Code becomes necessary in this case, a producing party may designate Source Code as "CONFIDENTIAL SOURCE CODE - ATTORNEY'S EYES ONLY" if it comprises or includes confidential, proprietary, or trade secret Source Code.

(a)     "Source Code" shall mean source code, object code *(i.e.,* computer instructions and data definitions expressed in a form suitable for input to an assembler, compiler, interpreter, or other translator), microcode, register transfer language ("RTL"), firmware, and hardware description language ("HDL"), as well as any and all programmer notes, annotations, and other comments of any type related thereto and accompanying the code. For avoidance of doubt, this includes source files, make files, intermediate output files, executable files, header files, resource files, library files, module definition files, map files, object files, linker files, browse info files, and debug files.

(b)     Source Code designated as "CONFIDENTIAL SOURCE CODE - ATTORNEY'S EYES ONLY" shall be subject to all of the protections afforded to material designated ATTORNEY'S EYES ONLY including the Prosecution Bar set forth in Paragraph 16, and may be disclosed only to the individuals to whom ATTORNEY'S EYES ONLY information may be disclosed, as set forth in Paragraph 6(b).

(c)     Any Source Code produced in discovery shall be made available for inspection, upon at least five (5) business days' notice by the receiving party, in a format allowing it to be reasonably reviewed and searched, during normal business hours, which for purposes of

this paragraph shall be 10:00 AM through 6:00 PM local time at the reviewing location, or at other mutually agreeable times, at a mutually agreed upon location. Upon reasonable notice from the receiving party, which shall not be less than five (5) business days in advance, the producing party shall make reasonable efforts to accommodate the receiving party's request for access to the computer outside of normal business hours, which shall not begin earlier than 9:00 AM and shall not end later than 8:00 PM local time at the reviewing location. The Source Code shall be made available for inspection on two (2) standalone, secured computers in a secured room without internet access or network access to other computers, and without connection to any printer or storage device other than the internal hard disk drive of the computer, and the receiving party shall not copy, remove, or otherwise transfer any portion of the Source Code onto any recordable media or recordable device. The parties are to cooperate in good faith such that maintaining the Source Code at the offices of the supplier's outside litigation counsel shall not unreasonably hinder the receiving party's ability to efficiently conduct the prosecution or defense in this investigation. The producing party or its outside counsel may visually monitor the activities of the receiving party's representatives during any Source Code review, but only to ensure that there is no unauthorized recording, copying, or transmission of the Source Code. There will be no video supervision by any supplier. The receiving party may take notes on a laptop or other personal electronic device and such notes are treated as ATTORNEY'S EYES ONLY under this Order. Nothing in this Protective Order shall prevent the receiving party from claiming such notes are protected from disclosure under the attorney-client privilege, work product doctrine, or any other applicable privilege or immunity.

(d)     The receiving party must identify in writing to the producing party at least three (3) business days in advance the names of any person that will review the Source Code for

the first time, and at least two (2) days prior to review the names of any person that was already identified at least once, and all persons entering the locked room containing the Source Code must agree to submit to reasonable security measures to ensure they are not carrying any prohibited items before they will be given access to the locked room.

(e)     The standalone computer(s) shall, at the receiving party's request, include reasonable analysis tools appropriate for the type of Source Code. The receiving party shall be responsible for providing the tools or licenses to the tools that it wishes to use to the producing party or its outside counsel so that the producing party or its outside counsel may install such tools on the standalone computer(s).

(f)     The receiving party may request-one (1) hard copy print out of-limited, reasonable portions of Source Code that are reasonably necessary for the preparation of court filings, pleadings, expert reports, or other papers, or for deposition or trial, but shall not request paper copies for the purposes of reviewing the Source Code in lieu of the inspection above. All paper copies of Source Code excerpts shall be produced by the producing party within four (4) business days of the request (unless additional time is needed due to the volume requested). The producing party shall provide all such Source Code in paper form including production numbers and the label "CONFIDENTIAL SOURCE CODE - ATTORNEY'S EYES ONLY INFORMATION." The producing party may challenge the amount of Source Code requested in hard copy form pursuant to the procedure and timeframes set forth in Paragraph 8 whereby the producing party is the objecting party and the receiving party is the designating party for purposes of the procedure.

(g)     The receiving party shall maintain all paper copies of any printed portions of the Source Code in a secured, locked area. The receiving party shall not create any electronic

or other images of paper copies of Source Code and shall not convert any of the information contained in the paper copies into any electronic format except for the creation of CD-ROMs or DVDs or encrypted thumb drives in accordance with paragraph (h) below or for filing under seal with the Court. The receiving party shall only make no more than five (5) additional paper copies for use at a deposition or hearing. One hard copy of the source code may be marked as an exhibit for the deposition, and then maintained by counsel for the party presenting the exhibit during the deposition in a secured locked area. All other copies shall be destroyed immediately after the deposition is concluded. Any paper copies used during a deposition shall not be given to or left with a court reporter or any other unauthorized individual unless approved by a producing party or its counsel. Upon request of a receiving party within three (3) business days of the deposition, a producing party shall make a standalone computer with a full copy of any Source Code produced by the producing party available for use at a deposition.

(h)     The receiving party is permitted to possess up to four (4) CD-ROMs, DVDs or encrypted thumb drives that contain an electronic copy of all or any portion of the hard copy print- outs of Source Code provided by the supplier. The receiving party may provide these CD-ROMs, DVDs or encrypted thumb drives to qualified consultants or qualified experts, who may use such CD-ROMs, DVDs or encrypted thumb drives solely for active review of the Source Code. The receiving party is also permitted to make temporary copies necessarily made in the production of these CD-ROMs, DVDs or encrypted thumb drives, provided any such copies are immediately deleted once the temporary copies are no longer required for the production of the CD-ROMs, DVDs or encrypted thumb drives. The CD-ROMS, DVDs and encrypted thumb drives shall not be copied, in whole or in part, under any other circumstances. A receiving party may destroy one or more of the four (4) previously created CD-ROMs, DVDs or encrypted thumb drives and create

one or more new CD-ROMs, DVDs or encrypted thumb drives provided that the total number in possession of the receiving party does not exceed four (4). All CD-ROMs, DVDs, or encrypted thumb drives shall be destroyed within twenty (20) days after the completion of the litigation, or the supplying party's exit from the litigation, whichever occurs first. The viewing of any such CD-ROMs or DVDs or encrypted thumb drives shall be done when all network communication functions of the viewer's device are disabled, notwithstanding that a party may temporarily enable network communication functions on a single, dedicated device only for the purposes of service and court filings in this case.

(i)     The receiving party may challenge the designation of Source Code as "CONFIDENTIAL SOURCE CODE - ATTORNEY'S EYES ONLY" pursuant to the procedure and timeframes set forth in Paragraph 8 of this Order.

(j)     Outside litigation counsel for the receiving party with custody of CONFIDENTIAL SOURCE CODE - ATTORNEY'S EYES ONLY shall maintain a source code log containing the following information: (1) the identity of each person granted access to the CONFIDENTIAL SOURCE CODE - ATTORNEY'S EYES ONLY; (2) the first date on which such access was granted and (3) the names of any individuals to whom paper copies of portions of source code are provided.. Outside litigation counsel for the receiving party will produce, upon request, each such source code log to the supplier.

(k)     Within twenty (20) calendar days after final termination of this litigation, the receiving party must serve upon the producing party a certification of the destruction of all copies of the producing party's Source Code.

17.     **Obligations on Conclusion of Litigation**.

(a)     **Order Remains in Effect.** Unless otherwise agreed or ordered, this Order shall remain in force after dismissal or entry of final judgment not subject to further appeal.

(b)     **Return of Documents Designated for Protection Under this Order.** Within ninety days after dismissal or entry of final judgment not subject to further appeal, all documents designated for protection under this Order, including copies as defined in f 6(d), shall be returned to the producing party unless: (1) the document has been offered into evidence or filed without restriction as to disclosure; (2) the parties agree to destruction in lieu of return; or (3) as to documents bearing the notations, summations, or other mental impressions of the receiving party, that party elects to destroy the documents and certifies to the producing party that it has done so. Notwithstanding the above requirements to return or destroy documents, counsel may retain copies of all pleadings, motions, orders, written discovery, and other papers filed with the Court or exchanged by the parties even though they may contain documents designated for protection under this Order. Counsel may also retain attorney work product, including an index which refers or relates to documents designated for protection under this Order, so long as that work product does not duplicate verbatim substantial portions of the text or images of documents designated for protection under this Order. This work product shall continue to be subject to the protections of this Order in accordance with the applicable designation. An attorney may use his or her work product in a subsequent litigation provided that its use does not disclose or use documents designated for protection under this Order.

(c)     **Return of Documents Filed under Seal.** After dismissal or entry of final judgment not subject to further appeal, the Clerk may elect to return to counsel for the parties or,

after notice, destroy documents filed or offered at trial under seal or otherwise restricted by the Court as to disclosure.

(d) **Retention of Work Product and one set of Filed Documents.** Notwithstanding the above requirements to return or destroy documents, counsel may retain (1) attorney work product, including an index that refers or relates to designated CONFIDENTIAL or ATTORNEY'S EYES ONLY information so long as that work product does not duplicate verbatim substantial portions of CONFIDENTIAL or ATTORNEY'S EYES ONLY information, and (2) one complete set of all documents filed with the Court including those filed under seal. Any retained CONFIDENTIAL or ATTORNEY'S EYES ONLY information shall continue to be protected under this Order. An attorney may use his or her work product in subsequent litigation, provided that its use does not disclose or use CONFIDENTIAL or ATTORNEY'S EYES ONLY information.

(e) **Deletion of Documents filed under Seal from Electronic Case Filing (ECF) System.** Filings under seal shall be deleted from the ECF system only upon order of the Court.

18. **Order Subject to Modification.** This Order shall be subject to modification by the Court on its own motion or on motion of a party or any other person with standing concerning the subject matter. Motions to modify this Order shall be served and filed under Local Rule 7.1 and the presiding judge's standing orders or other relevant orders.

19. **No Prior Judicial Determination.** This Order is entered based on the representations and agreements of the parties and for the purpose of facilitating discovery. Nothing herein shall be construed or presented as a judicial determination that any documents designated

for protection under this Order are entitled to protection under Rule 26(c) of the Federal Rules of Civil Procedure or otherwise until such time as the Court may rule on a specific document or issue.

20.     **Persons Bound.** This Order shall take effect when entered and shall be binding upon all counsel and their law firms, the parties, and persons made subject to this Order by its terms.

21.     **Third Parties.** Third parties producing documents or providing testimony in the course of this action may also designate material or documents as CONFIDENTIAL, ATTORNEY'S EYES ONLY, or CONFIDENTIAL SOURCE CODE - ATTORNEY'S EYES ONLY, subject to the same protections and constraints as the parties to the action. A copy of this Order shall be served along with any subpoena served in connection with this action. However, a third party's use of this Order does not entitle that third party access to any material or documents produced by any party in this case.

22.     **Document Production Protocol.** The parties have agreed to the Document Production Protocol attached hereto as Exhibit A, which is incorporated into this Stipulated Protective Order in its entirety.

     **IT IS SO ORDERED.**

Dated: April 16, 2019

                              ENTERED:

                              _____
                              John Robert Blakey
                              United States District Judge

**WE SO MOVE/STIPULATE and agree to abide by the terms of this Order.**

Dated: April 10, 2019

Respectfully submitted,

By: */s/Akshay S. Deoras*

    Adam R. Alper (*pro hac vice*)
    adam.alper@kirkland.com
    Akshay S. Deoras (*pro hac vice*)
    akshay.deoras@kirkland.com
    Brandon H. Brown (IL Bar No. 266347
    CA)
    bhbrown@kirkland.com
    KIRKLAND & ELLIS LLP
    555 California Street
    San Francisco, California 94104
    Telephone: (415) 439-1400
    Facsimile: (415) 439-1500

    Michael W. De Vries (*pro hac vice*)
    michael.devries@kirkland.com
    Ali-Reza Boloori (*pro hac vice*)
    ali-reza.boloori@kirkland.com
    KIRKLAND & ELLIS LLP
    333 South Hope Street
    Los Angeles, California 90071
    Telephone: (213) 680-8400
    Facsimile: (213) 680-8500

    David Rokach (IL SBN: 6279703)
    david.rokach@kirkland.com
    KIRKLAND & ELLIS LLP
    300 North LaSalle
    Chicago, Illinois 60654
    Telephone: (312) 862-2000
    Facsimile: (312) 862-2200

    *Attorneys for Plaintiff,*
    *MOTOROLA SOLUTIONS, INC.*

By: */s/ Mark W. McDougall*

    John S. Cipolla (*pro hac vice*)
    jcipolla@calfee.com
    Todd R. Tucker (*pro hac vice*)
    ttucker@calfee.com
    Mark W. McDougall (*pro hac vice*)
    mmcdougall@calfee.com
    CALFEE, HALTER & GRISWOLD LLP
    The Calfee Building
    1405 East Sixth Street
    Cleveland, Ohio 44114
    Telephone: (216) 622-8200
    Facsimile: (216) 241-0816

    Boyd Cloern (*pro hac vice*)
    bcloern@steptoe.com
    STEPTOE & JOHNSON LLP
    1330 Connecticut Avenue NW
    Washington, DC 20036
    Telephone: (202) 429-3000
    Facsimile: (202) 429-3902

    Daniel S. Stringfield
    dstringfield@steptoe.com
    STEPTOE & JOHNSON LLP
    115 South LaSalle Street, Suite 3100
    Chicago, Illinois 60603
    Telephone: (312) 577-1300
    Facsimile: (312) 566-1370

    *Attorneys for Defendants,*
    *HYTERA COMMUNICATIONS*
    *CORPORATION LTD. AND HYTERA*
    *COMMUNICATIONS AMERICA (WEST),*
    *INC.*

**ATTACHMENT A**

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | | |
|---|---|---|
| MOTOROLA SOLUTIONS, INC., | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | Civil Action No.: 1:17-cv-01972 |
| v. | ) | |
| | ) | Honorable John Robert Blakey |
| HYTERA COMMUNICATIONS | ) | |
| CORPORATION LTD. AND HYTERA | ) | |
| COMMUNICATIONS AMERICA | ) | |
| (WEST), INC., | ) | |
| | ) | |
| Defendants | ) | |
| | ) | |

**ACKNOWLEDGMENT AND AGREEMENT TO BE BOUND**

The undersigned hereby acknowledges that he/she has read the Protective Order entered in the above-captioned action and attached hereto, understands the terms thereof, and agrees to be bound by its terms. The undersigned submits to the jurisdiction of the United States District Court for the Northern District of Illinois in matters relating to the Protective Order and understands that the terms of the Protective Order obligate him/her to use documents designated CONFIDENTIAL or ATTORNEY'S EYES ONLY in accordance with the Order solely for the purposes of the above-captioned action, and not to disclose any such documents or information derived directly therefrom to any other person, firm or concern.

The undersigned acknowledges that violation of the Protective Order may result in penalties for contempt of court.

Name: _____

Job Title: _____

Employer: _____

Business Address: _____

_____

_____

Date: _____    Signature: _____

# EXHIBIT A
## DOCUMENT PRODUCTION PROTOCOL

1. <u>Scope</u>. The following protocol and definitions shall supplement the parties' responsibilities under the Federal Rules of Civil Procedure, and shall control the production of Documents, including electronically stored information ("ESI") in the matter of *Motorola Solutions, Inc. v. Hytera Communications Corporation Ltd.*, pending in the Northern District of Illinois, Docket No. 1:17-cv-01972 ("Litigation"). Nothing herein shall enlarge or affect the proper scope of discovery in the Litigation, nor shall anything herein imply that any Documents or ESI produced under the terms of this protocol is properly discoverable, relevant, or admissible in this action or in any other litigation. Further, nothing in this agreement, including any provisions related to search methodology in section 15, shall excuse a party from searching for and producing Documents from locations (including both paper and electronic files) it knows or reasonably believes to have responsive information.

2. <u>Definitions</u>. The following terms shall be defined:

(a) "Document(s)" means all data compilations, correspondence, e-mails (hard copy or in digital form), memoranda, notes, desk calendars, diaries, statistics, letters, telegrams, minutes, contracts, reports, studies, checks, invoices, statements, receipts, returns, warranties, guarantees, summaries, pamphlets, books, prospectuses, inter-office communications, offers, notations of any sort of conversations, telephone calls, meetings or other communications, bulletins, magazines, publications, printed matter, photographs, computer printouts, teletypes, telefax, worksheets and all drafts, alterations, modifications, changes and amendments of any of the foregoing, tapes, tape recordings, transcripts, graphic or aural records or representations of any kind, and electronic, mechanical, electric, magnetic, or digital records or representations of any kind.

(b) "Native File(s)" or "Native Format" means the format ESI was created or maintained by its associated software program. For example, Microsoft Excel produces its output as ".xls" or ".xlsx" files by default, which is the Native Format of Excel. Microsoft Word produces native files with a ".doc" or ".docx" extension, which is the Native Format of Word. Parties shall make a reasonable effort to collect, process and produce Native Files (if the Native Files are otherwise required to be produced) in a manner such that all files reflect accurate metadata associated with the creation and maintenance of the files and are not corrupted by the methods of the collection of the data.

(c) "Metadata" means broadly any data about data.

(d) "Static Image(s)" means a representation of ESI produced by converting a Native File into a standard image format capable of being viewed and printed on standard computer systems. A Tagged Image File Format (TIFF) image is an example of a Static Image.

(e) "Load/Unitization file" means an electronic file containing information identifying a set of paper-scanned images or processed ESI and indicating where individual pages or files belong together as documents, including attachments, and where each document begins

and ends. A Load/Unitization file will also contain data relevant to the individual Documents, for example, fielded data and information necessary for the loading of OCR or Extracted Text.

      (f)    "OCR" means the optical character recognition file which is created by software used in conjunction with a scanner that is capable of reading text-based documents and making such documents searchable using appropriate software.

      (g)    "Extracted Text" means the text extracted from a Native File and includes all header, footer, and document body information.

      (h)    "Receiving Party" shall mean the party receiving production of Documents in response to any request for production of document(s) pursuant to Fed. R. Civ. P. 34(a) or pursuant to initial production of documents identified in the party's Rule 26(a) disclosures.

      (i)    "Producing Party" shall mean the party producing Documents in response to any request for production of documents pursuant to Fed. R. Civ. P. 34(a) or pursuant to initial production of documents identified in the party's Rule 26(a) disclosures.

    3.    <u>General Format of Production</u>. Subject to the provisions of paragraph 4, Documents that are produced in these proceedings, whether or not such Documents are ESI, shall be produced in TIFF form, or native form where necessary, in the manner as described below. Notwithstanding the foregoing provisions of this paragraph, the Parties reserve the right to request that an alternative format or method of production be used for certain Documents, if such Document is not susceptible to production in the format or methods of production addressed herein. In that event, the Receiving Party and the Producing Party will meet and confer to discuss alternative production requirements, concerns, formats, or methods.

    4.    <u>Production Format</u>. Documents shall be produced according to the following formats:

      (a)    <u>Electronic Production of Paper Documents.</u> Documents that are maintained in paper format shall be scanned as black and white images at 300 x 300 d.p.i., in a Group 4 compression single-page Tagged Image File Format ("TIFFs," ".tiff format," or ".tif format") and reflect the full and complete information contained in the original Document. Documents shall also be produced with the associated OCR in accordance with 4.(c). No Producing Party shall be required to ensure that the OCR is an exact duplicate of the contents of the TIFF image; and the Receiving Party shall accept the OCR in its "as is" condition.

      (b)    <u>Electronically Stored Information</u>. Except as provided in Paragraph 4(e) below, Document images shall be generated from electronic Documents in a Group 4 compression single-page "TIFF" image that reflects the full and complete information contained on the original document, together with a load file or functional equivalent specified in Paragraph 4(c) that contains the metadata as set forth in Paragraph 11, to the extent such metadata exists. The Producing Party may produce all documents in black and white. To the extent that the Receiving Party requests that specific documents be produced in color, the Receiving Party and the Producing Party will meet and confer with respect to such color production as set forth in Paragraph 3. Documents ultimately produced in color, shall be produced in JPG format. In the event a Document is redacted, the Producing Party shall withhold the redacted text for that Document and any

metadata that is the subject of the redaction. The failure to withhold such text for a redacted document by a Producing Party shall not be deemed a waiver of the privilege associated with that Document. Extracted text will be provided for the non-redacted text.

(c)     Load/Unitization File Structure. The Producing Party shall produce a unitization file ("load file") compatible with Concordance or a comparable document management and review system, with delimited data files (commonly .DAT files), for all produced Documents in accordance with the following formatting:

**Document Unitization Load File:**

- Document productions should include a Concordance document load files.
- Metadata provided in a delimited file as described below under the subheading of "Metadata Load File."

**OCR and Extracted Text Files (.TXT Files):**

- Single text file per document containing all the document's pages
- Pages separated by form feed character
- Filenames should be of the form:
  <Bates num>.txt, where <Bates num> is the BATES number of the first page in the document.

**Image Files:**

- Single page per image
- Single image per file
- TIFF is default FORMAT. In the event the Receiving Party requests specific documents in a format other than TIFF, the Receiving Party and the Producing Party will meet and confer with respect to such production as set forth in Paragraph 3.
- Filenames should be of the form: <Bates num>.<ext>
  Where <Bates num> is the BATES number of the page, and <ext> is the appropriate extension for the image format (.jpg, .tif, .png, etc.)

(d)     Resolution of Production Issues. Documents that cannot be read because of imaging or formatting problems shall be promptly identified by the Receiving Party. The Producing Party and the Receiving Party shall meet and confer to attempt to resolve problem(s), to the extent the problem(s) are within the Parties' control.

(e)     Native Format Documents. The Producing Party shall produce Microsoft Excel, Microsoft Access, video, and audio files in native format, unless there is an agreement to the contrary. Prior to producing any confidential information as defined in any applicable Protective Order entered herein in Native Format, the Producing Party and the Receiving Party shall meet and confer to establish additional procedures, to the extent necessary, for the protection of the native information.

Nothing in this Document Production Protocol shall eliminate or alter any Party's obligation to retain native format copies, including associated metadata, of all ESI produced in this litigation and original hard copy documents for all non-ESI produced in this litigation.

5. <u>Production Media</u>. A Producing Party shall produce Documents on a CD-ROM, DVD, external hard drive, or such other readily accessible computer or electronic media as the Producing Party and the Receiving Party may hereafter agree upon (the "Production Media"). Information that shall be identified on the face of the Production Media shall include: (1) the production date, and (2) the confidentiality notation required by the Protective Order entered in this case, if the media contains Confidential Information, as defined in the Protective Order. The face of the Production Media shall also contain the Bates Number range(s) of the Documents on the Production Media, and where not practicable to do so, may be provided in an accompanying letter. If the Producing Party encrypts or "locks" the production, the Producing Party shall provide under separate cover, an explanation of how to decrypt the files.

At the discretion of the Producing Party, Documents may be produced by File Transfer Protocol (FTP) or Secure File Transfer (SFT). When Documents are produced in this manner, the Producing Party may forego delivering the Documents to the Receiving Party on Production Media as described above.

6. <u>Third-Party Software</u>. To the extent that documents produced pursuant to this Document Production Protocol cannot be rendered or viewed without the use of proprietary or third-party software, the Parties shall meet and confer to minimize any expense or burden associated with the production of such documents in an acceptable format, including issues as may arise with respect to obtaining access to any such software and operating manuals which are the property of a third party.

7. <u>Document Unitization</u>. When scanning paper documents into Document Images as described in paragraph 4(a), they shall be unitized in a manner so as to maintain the document(s) and any attachments, as they existed in their original state, to the extent reasonably possible. For electronic documents, the relationship of documents in a document collection (e.g., cover letter and enclosures, e-mail and attachments, binder containing multiple documents, or other documents where a parent-child relationship exists between the documents) shall be maintained through the scanning or conversion process from native format to TIFF, provided however, that the Parties shall only be required to present one level of parent child relationship. Document Images generated from attachments to e-mails stored in Native Format shall be produced contemporaneously and sequentially immediately after the parent e-mail. All hard copy documents imaged and produced electronically shall include a unitization file ("load file") in accordance with paragraph 4(c).

8. <u>Paper Documents Containing Fixed Note</u>s. Paper Documents that contain fixed notes shall be scanned with the notes affixed, if it can be done so in a manner so as not to obstruct other content on the document. If the content of the Document is obscured by the affixed notes, the Document and note shall be scanned separately.

9. <u>Duplicates</u>. Where a Producing Party has more than one identical copy of an electronic document as determined through a verifiable MD5 Hash de-duplication process *(i.e.,* the documents are actual duplicates), the Producing Party need only produce a single copy of that

document (as long as all family relationships are maintained). A Producing Party need not produce the same electronically stored information in more than one form.

10.  Bates Numbering. Each Producing Party shall Bates number its production(s) as follows:

(a)  Document Images. Each page of a produced Document shall have a legible, unique page identifier ("Bates Number") electronically "burned" onto the image at a location that does not unreasonably obliterate, conceal, or interfere with any information from the source document. The confidentiality legend, if any, shall be "burned" onto each document's image at a location that does not unreasonably obliterate or obscure any information from the source document. Redacted documents will be so identified by electronically "burning" the legend "Redacted" onto each document's image at a location mat does not unreasonably obliterate or obscure any information from the source document.

(b)  Native Format Documents. Documents produced in Native Format will be produced with a placeholder TIFF image. Each TIFF placeholder will contain the Bates number and confidentiality designation, if any. Native format files shall be labeled with a Bates prefix, number, abbreviated designation under any applicable Protective Order, and original file extension. For example, a native format file named "123.xls" that is designated "CONFIDENTIAL - ATTORNEYS EYES ONLY" with Bates label XYZ000001 would be named "XYZ000001-CONF-AEO-123.XLS." Alternatively, the parties may produce the Protective Order designation in a metadata field as well as on the TIFF placeholder for the Native format file.

11.  File Naming Conventions. Each Document Image shall be named with the unique Bates Number for each page of document, as set forth in Paragraph 9 above.

12.  Non-Convertible Files. Certain types of files such as system, program, video and sound files may not be amenable to conversion into anything meaningful in TIFF format. Non-convertible files will be produced in native format with a placeholder TIFF image. Some examples of file types that may not convert include file types with the following extensions: *.exp : *.exp *.ilk *.res *.trg *.tlh *.idb *.pdb *.pch *.opt *.lib *.cab *.mov *.mp3 *.swf *.psp *.chi *.chm *.com *.dll *.exe *.hlp *.ivi *.ivt *.ix *.msi *.nls *.obj *.ocx *.rmi *.sys *.tmp *.ttf *.vbx *.wav *.wpg *.iso *.pdb *.eps *.mpeg *.mpg *.ram *.rm *.psd *.ai *.aif *.bin *.hqx *.snd *.mpe *.wmv *.wma *.xfd. Other files may not be able to be converted to TIFF for reasons including, but not limited to password protection. If reasonable efforts to obtain useful TIFF images of these files are unsuccessful, the Receiving Party and the Producing Party will meet and confer with respect to such production as set forth in Paragraph 3.

Metadata. The Producing Party shall produce the metadata information described below with each production and in the format described in Paragraph 4 above, to the extent such metadata already exists. Nothing in this paragraph shall be construed to obligate a party to create new metadata that is not already in existence at the time of collection of the document. For images generated from native electronic documents, a Producing Party shall produce with each production the following fields, where reasonably available.

| | FIELD | DEFINITION | DOC TYPE |
|---|---|---|---|
| 1 | CUSTODIAN OR NON-CUSTODIAL SOURCE | Name of the person from whose files the document/data is being produced or name of data source location if not associated with single custodian | ALL |
| 2 | BEGINBATES | Beginning Bates Number (production number) | ALL |
| 3 | ENDBATES | Ending Bates Number (production number) | ALL |
| 4 | NATIVELINK | Field containing link to native file | ALL |
| 5 | TEXTPATH | File path for OCR or Extracted Text files | ALL |
| 6 | FROM | Sender | EMAIL |
| 7 | TO | Recipient | EMAIL |
| 8 | CC | Additional Recipients | EMAIL |
| 9 | BCC | Blind Additional Recipients | EMAIL |
| 10 | SUBJECT | Subject line of Email | EMAIL |
| 11 | BEGATTACH | First Bates number of a family range (i.e. Bates number of the first page of the parent email) | EMAIL/EDOCS |
| 12 | ENDATTACH | Last Bates number of a family range (i.e. Bates number of the last page of the last attachment) | EMAIL/EDOCS |
| 13 | DATESENT (mm/dd/yyyy) | Date sent | EMAIL |
| 14 | TIMESENT (hh:mm:ss TZ) | Time sent | EMAIL |
| 15 | FileExtension | Document extension (e.g. .doc, .pst, .ppt, .xls, .pdf) | EDOCS |
| 16 | AUTHOR | Creator of document | EDOCS |
| 17 | ORIGINALFILEPATH | File path location where document was originally saved | EDOCS |
| 18 | ORIGIN ALFILENAME | File name initially given when file was originally saved | EDOCS |
| 19 | DATECREATED | Date (and time) file was created | EDOCS |
| 20 | DATELASTMODIFIED | Date (and time) file was last modified | EDOCS |
| 21 | HASH | The hash value or "de-duplication key" assigned to a document. PID's for email families should also be preserved. | EMAIL/EDOCS |
| 22 | CONFIDENTIALITY | Confidentiality Designation | All Docs |

13. <u>Discovery and Admissibility</u>. Nothing herein shall be construed to affect the discoverability or admissibility of any document or data. All objections to the discoverability or admissibility of any document or data are preserved and may be asserted at any time.

14. <u>Privilege</u>

(a)     Consistent with Federal Rules of Civil Procedure, a Party withholding or redacting any responsive Document on the grounds of privilege, immunity, or any similar claim shall provide to the Receiving Party a log containing the information described in paragraph 14(b) ("Privilege Log"), except that:

(i)     the Parties shall have no obligation to log information generated after the filing of the complaint; and

(ii)     activities undertaken in compliance with the duty to preserve information (including, but not limited to, litigation hold letters) are protected from disclosure under Fed. R. Civ. P. 26(b)(3)(A) and (B). Notwithstanding the foregoing, if a party makes a good-faith assertion that specific documents should have been but were not preserved in the anticipation or conduct of litigation, the parties shall timely meet and confer in good faith to determine the appropriate scope, if any, of discovery regarding activities undertaken in compliance with the duty to preserve information or regarding the alleged failure to preserve such documents. In the event that the parties do not reach agreement, the party making the assertion may seek leave from the Court to request appropriate discovery. For avoidance of doubt, however, this paragraph does not constitute a waiver or other abrogation of the protections provided under Fed. R. Civ. P. 26, nor does it constitute any concession that activities undertaken in compliance with the duty to preserve information (and documents related to those activities) cannot be withheld on the basis of the attorney-client privilege, work product, or other immunity to the extent applicable.

(b)     For each document withheld or redacted, the Privilege Log shall contain the following information: an entry number, a production number where an entry corresponds to redacted portions of a document, the author(s) of the document, the direct recipient(s) of the document, the copied recipient(s) of the document, the date on which the document was created or sent, a description of the document, and any privilege(s) asserted.

(c)     To the extent E-mail is searched, any E-mail stream (i.e., a series of E-mails linked together by-email responses and forwarding) that is withheld or redacted on the grounds of privilege, immunity or any similar claim shall be logged by the most recent, i.e., top-most E-mail in the stream.

(d)     Each member of a family (i.e., E-mail attaching memorandum) that is withheld or redacted on the grounds of privilege, immunity or any similar claim shall be logged in the same entry as the parent E-mail, provided that each such entry describes all attachments that are also withheld as privileged.

15.     Search Methodology. The following governs the search methodologies for Producing Parties electing to use keyword searching to locate potentially responsive Documents contained in ESI or in the event that the Requesting Party elects to request searching and production from individual custodian's ESI identified pursuant to this agreement. This Section shall supplement the parties' obligations under the Federal Rules of Civil Procedure and shall not excuse a party from those obligations, including the obligation to search for and producing documents from locations (including both paper and electronic files) it knows or reasonably believes to have responsive information.

(a)     To the extent that a Producing Party elects to use any keyword search methodology to locate potentially responsive Documents contained in ESI, any such methodology must employ utilities that access the searchable content of compound, nested, or compressed archive files, and must support the use of wildcards, Boolean operators, and proximity searching.

(b)     Each Party shall use its best efforts to filter out common system files using a commercially reasonable hash identification process. Hash values that may be filtered out during this process are located in the National Software Reference Library ("NSRL") NIST hash set list.

(c)     With respect to the Requesting Party's proposal of search terms, a conjunctive combination of multiple words or phrases (e.g., "computer" and "system") narrows the search and shall count as a single search term. A disjunctive combination of multiple words or phrases (e.g., "computer" or "system") broadens the search, and thus each word or phrase shall count as a separate search term unless they are variants of the same word. Use of narrowing search criteria (e.g., "and," "but not," "w/x") is encouraged to limit the production.

(d)     Search Methodology

(i)     The Requesting Party may request the searching and production of custodial data from up to ten (10) individuals identified pursuant to Fed. R. Civ. P. 26(a)(1) or other individuals identified by the Requesting Party through any other means, including discovery, according to the methodology set forth herein. The Parties may jointly agree to modify these limits without the Court's leave. The Court will consider contested requests for additional individuals by the Requesting Party as the case develops and based upon the Requesting Party's showing of need. Regardless of the number of individuals whose custodial documents are searched, the Parties will cooperate to identify proper search terms and time frame (e.g., date ranges) on a custodian-by-custodian basis.

(ii)     To the extent a Producing Party elects to use search terms to locate ESI that may contain potentially responsive Documents for the individuals specifically identified by the Requesting Party under paragraph 15(d)(i), the Producing Party shall identify a minimum of five (5) search terms for each individual. The Producing Party must provide any such search terms to the Requesting Party within 5 days of the Requesting Party's identification of a custodian for searching and production.

(iii)     Within 7 days of identifying a custodian for searching and production, the Requesting Party may additionally propose up to ten (10) search terms for each individual. The search terms shall be narrowly tailored to particular issues, and to the extent necessary, the Parties shall meet and confer to reach agreed-to search term lists and reasonable date restrictions for each individual. The Producing Party shall timely apply all the search terms proposed by both Parties for each individual, and shall timely provide the Requesting Party with resulting hit counts for each individual. The hit counts shall reflect the total number of documents that hit on each search term for each such individual, and shall separately identify the total number of responsive documents including all parents and attachments to documents that hit on each search term (i.e., families) for each such individual. If requested, the Producing Party shall also timely provide the Requesting Party hit counts that reflect the total number of unique documents

8

that hit on each search term for each such individual (i.e., documents that contain only that term and no other search terms).

(iv)     Within 10 days of the identification of a custodian for searching and production, or at a time mutually agreeable, the Parties shall timely meet and confer in good faith to determine whether the parties can agree on all search terms to be used for each individual to ensure that any requested searching and production of ESI is reasonable, narrowly tailored for specific and material issues in the case, does not impose an undue burden on the Producing Party, and is commensurate with the Producing Party's obligations under the Federal Rules. For example, and without limitation, in the event that a particular search term selected by the Requesting Party is resulting in an excessive volume of ESI where that term appears, or numerous "false positives" (i.e., non-responsive and/or immaterial documents), the Parties will meet and confer in an attempt to further narrow the search requests. Such narrowing may include further limiting date ranges or modifying the search terms.

(v)     The Producing Party shall not unreasonably refuse additional requests by the Requesting Party to apply additional search terms for an individual where circumstances warrant additional searching, provided that such requests are narrowly tailored to the circumstances. Examples of such circumstances include, without limitation: (1) an individual having possession of information that the Requesting Party could not have anticipated with reasonable diligence to be in that individual's possession, or having possession of information that the Requesting Party could not have appreciated with reasonable diligence to be relevant, (2) material changes to the Producing Party's position on legal or factual issues, or (3) rulings or decisions of the Court, or changes in applicable law, that change the Requesting Party's needs for discovery or affect the scope of permissible discovery. The burden of showing that any additional searching of an individual is warranted shall be on the Requesting Party.

(vi)     In the event of any requests to apply additional search terms pursuant to paragraph 15(d)(iv), the parties shall timely meet and confer as provided in paragraph 15(d)(iii) to ensure that any additional requested searching and production of ESI is reasonable, is narrowly tailored for specific and material issues in the case, does not impose an undue burden on the Producing Party, and is commensurate with the Producing Party's obligations under the Federal Rules.

16.     <u>Processing Specifications</u>

(a)     The Producing Party shall collect and process documents using methods that avoid spoliation of data. The Producing Party shall use the following specifications in this paragraph when converting ESI from its native format into TIFF image files prior to production.

(b)     All tracked changes shall be maintained, to the extent reasonably feasible upon collection, so that all tracked changes to a document are evident.

(c)     Author comments shall remain or be made visible, to the extent reasonably feasible upon collection.

(d)     Presenter notes shall be made visible, to the extent reasonably feasible upon collection.

(e)     To the extent reasonably feasible, auto-populated fields, with the exception of autopopulating "page-number" fields, shall be replaced with text indicating the field name. For example, auto-populating "date" fields shall be replaced with the text "DATE."

(f)     To the extent documents in a foreign language are produced, processing of such documents shall be unicode-compliant.

(g)     Notwithstanding the foregoing, a Producing Party may produce Documents that were produced in a prior litigation in the same manner as they were produced in that litigation (e.g., TIFF, native files, etc.). The Producing Party must identify any Documents as having been previously produced in another action and include the action for which they were produced. A Receiving Party make seek re-production of any such Documents in accordance with the processing specifications above, provided the Documents are available to the Producing Party and the request is made for good reason.

(h)     As used herein, "to the extent reasonably feasible" does not obligate a Producing Party to obtain new or updated software if the Producing Party's current software is incapable of performing a particular processing specification listed in paragraph 16.

17.     <u>Cost Shifting</u>. All costs associated with production of documents pursuant to this Document Production Protocol shall be borne by the Producing Party. However, the Court may apportion or shift the costs of electronic discovery pursuant to Rule 26 or other applicable law upon a showing of good cause.

Dated: April 10, 2019

By: */s/Akshay S. Deoras*
    Adam R. Alper (*pro hac vice*)
    adam.alper@kirkland.com
    Akshay S. Deoras (*pro hac vice*)
    akshay.deoras@kirkland.com
    Brandon H. Brown (IL Bar No. 266347 CA)
    bhbrown@kirkland.com
    KIRKLAND & ELLIS LLP
    555 California Street
    San Francisco, California 94104
    Telephone: (415) 439-1400
    Facsimile: (415) 439-1500

    Michael W. De Vries (*pro hac vice*)
    michael.devries@kirkland.com
    Ali-Reza Boloori (*pro hac vice*)
    ali-reza.boloori@kirkland.com
    KIRKLAND & ELLIS LLP
    333 South Hope Street
    Los Angeles, California 90071
    Telephone: (213) 680-8400
    Facsimile: (213) 680-8500

    David Rokach (IL SBN: 6279703)
    david.rokach@kirkland.com
    KIRKLAND & ELLIS LLP
    300 North LaSalle
    Chicago, Illinois 60654
    Telephone: (312) 862-2000
    Facsimile: (312) 862-2200

    *Attorneys for Plaintiff,*
    *MOTOROLA SOLUTIONS, INC.*

Respectfully submitted,

By: */s/ Mark W. McDougall*
    John S. Cipolla (*pro hac vice*)
    jcipolla@calfee.com
    Todd R. Tucker (*pro hac vice*)
    ttucker@calfee.com
    Mark W. McDougall (*pro hac vice*)
    mmcdougall@calfee.com
    CALFEE, HALTER & GRISWOLD LLP
    The Calfee Building
    1405 East Sixth Street
    Cleveland, Ohio 44114
    Telephone: (216) 622-8200
    Facsimile: (216) 241-0816

    Boyd Cloern (*pro hac vice*)
    bcloern@steptoe.com
    STEPTOE & JOHNSON LLP
    1330 Connecticut Avenue NW
    Washington, DC 20036
    Telephone: (202) 429-3000
    Facsimile: (202) 429-3902

    Daniel S. Stringfield
    dstringfield@steptoe.com
    STEPTOE & JOHNSON LLP
    115 South LaSalle Street, Suite 3100
    Chicago, Illinois 60603
    Telephone: (312) 577-1300
    Facsimile: (312) 566-1370

    *Attorneys for Defendants,*
    *HYTERA COMMUNICATIONS*
    *CORPORATION LTD. AND HYTERA*
    *COMMUNICATIONS AMERICA (WEST),*
    *INC.*