1

```
 1                   IN THE UNITED STATES DISTRICT COURT
                       NORTHERN DISTRICT OF ILLINOIS
 2                           EASTERN DIVISION

 3   MOTOROLA SOLUTIONS, INC.,     ) Docket No. 17 CV 1972
                                   )
 4           Plaintiff,            )
                                   ) Chicago, Illinois
 5             vs.                 ) June 13, 2019
                                   ) 9:45 o'clock a.m.
 6   HYTERA COMMUNICATIONS         )
     CORPORATION, LTD., et al.,    )
 7                                 )
             Defendants.           )
 8

 9
                  TRANSCRIPT OF PROCEEDINGS - Motion
10           BEFORE THE HONORABLE JOHN ROBERT BLAKEY

11

12   APPEARANCES:
     For the Plaintiff:       KIRKLAND & ELLIS
13                            BY:  MR. MICHAEL W. DeVRIES
                              333 South Hope Street
14                            Los Angeles, California  90071

15                            KIRKLAND & ELLIS
                              BY:  MR. AKSHAY S. DEORAS
16                                 MS. IRENE JANG
                              555 California Street
17                            San Francisco, California  94104

18   For the Defendants:      CALFEE HALTER & GRISWOLD LLP
                              BY:  MR. JOHN S. CIPOLLA
19                            1405 East Sixth Street
                              Cleveland, Ohio  44114
20

21

22            LAURA LACIEN, CSR, RMR, FCRR, CRR
                    Official Court Reporter
23          219 South Dearborn Street, Suite 1212
                     Chicago, Illinois  60604
24                       (312) 408-5032

25
```

```
 1             (The following proceedings were had in open court:)
 2             COURTROOM DEPUTY:  17 C 1972, Motorola Solutions
 3   versus Hytera Communications Corp.
 4             THE COURT:  Good morning, counsel.  Appearances.
 5             MR. DeVRIES:  Good morning, your Honor.  Mike
 6   DeVries from Kirkland & Ellis on behalf of the plaintiff
 7   Motorola Solutions.  With me here today is Akshay Deoras and
 8   also Irene Jang from Kirkland & Ellis.
 9             THE COURT:  Welcome.
10             MR. DeVRIES:  Thank you.
11             MR. CIPOLLA:  John Cipolla from Calfee, Halter &
12   Griswold on behalf of the Hytera defendants, your Honor.
13             THE COURT:  We're here on the motion to dismiss or
14   transfer.  Do the parties want to argue?
15             MR. DeVRIES:  Yes, your Honor.
16             THE COURT:  Go ahead.
17             MR. DeVRIES:  Your Honor, there were a number of new
18   issues that were raised in the reply brief.  They're easily
19   disposed of and I'm going to try to handle them efficiently.
20   There is clearly a claim stated in the amended complaint
21   against Hytera Corporation; and at the outset, I'd like to
22   note that Hytera West plays a very limited role in this
23   dispute and the suggestion that Motorola does not wish to
24   dismiss its claim against Hytera West and re-file it in this
25   court today because of a damages statute of limitations
```

1  period does not make sense.

2  As the motion admits at Page 3, Hytera West was not
3  even incorporated until March of 2016.  If we were to dismiss
4  the claim against Hytera West and re-file it today in this
5  court as they admit that we could, the damages statute of
6  limitations period would go back to 2013, which is three
7  years before Hytera West was even incorporated, but the focus
8  of our dispute is on Hytera Corporation.

9  The infringement began in 2008 when Motorola
10 engineers left Motorola to go to Hytera.  They spent years
11 developing DMR products using Motorola's stolen confidential
12 information, their stolen source code and they released those
13 products in 2012 with material sales not beginning until
14 2013.  Hytera Corporation is the one that designed the
15 products, employed the engineers who developed the products,
16 they manufacture all the products, they distribute the
17 products around the world, including into the United States,
18 and they are the focus of our dispute.  Their indirect
19 infringement captures any sales made by Hytera West just as
20 they do by Hytera East, which is why when we did not include
21 Hytera West -- East, I'm sorry, in our amended complaint, we
22 have not re-filed any action against Hytera East.  And if
23 your Honor were to dismiss Hytera West based on venue grounds
24 today, we have no intent to re-file an action against Hytera
25 West in the Central District of California.

1             And although counsel has said in the briefing that
2    we could do so in this court by dismissing and re-filing
3    today -- and presumably that case would be consolidated with
4    this one against Hytera Corporation -- the infringement by
5    Hytera Corporation clearly covers those sales and we don't
6    believe there's a need to do that at this time.
7             And so taking the issues in order, the -- they have
8    argued that we have not stated a claim for infringement
9    against Hytera Corporation.  We have stated a claim for
10   indirect infringement and in the opening motion the only
11   argument was that because they say we did not state a valid
12   claim of importation, that our indirect infringement claim
13   fails.  That argument is legally incorrect.  There is no
14   requirement for importation, although we have certainly
15   sufficiently alleged that in order to state a claim for
16   indirect infringement.
17            The amended complaint is filled with allegations of
18   Hytera Corporation employees using Motorola's information to
19   develop the accused products.  That's something that the
20   International Trade Commission has already found in
21   concluding that there was infringement of four of the
22   patents, including indirect infringement by Hytera
23   Corporation; and so there are two new arguments in the reply.
24   Because they are new, they are waived but they are easily
25   disposed of.

1        The first is an argument that the indirect
2   infringement claim in the complaint is conclusory in terms of
3   identifying the direct infringers.  That's wrong.  The
4   amended complaint explains that Hytera's customers and
5   distributors are direct infringers, as well as Hytera West,
6   and specifically alleges that there are instructional and
7   training materials provided by Hytera Corporation to those
8   entities encouraging them to infringe.  And as this Federal
9   Circuit has explained in a case that we did cite in our -- in
10  our opposition brief, *Bill of Lading*, the 2012 Federal
11  Circuit opinion, quote, plaintiff need not identify a
12  specific direct infringer if it pleads facts sufficient to
13  allow an inference that at least one direct infringer exists.
14  In fact, our complaint does identify at least one direct
15  infringer, Hytera West -- and Hytera East, frankly -- but
16  also identifies the customers and distributors in the United
17  States of Hytera Corporation as directed infringers.
18       So that brings them to their only other argument,
19  which is also waived because it was not in their opening
20  motion, and that is for two of the seven patents, they say
21  that we have not properly alleged intent to infringe.  That
22  is wrong so that argument doesn't apply to five of the
23  patents.  But for two of the patents, the rule in this
24  district is very clearly that notice of the patents for
25  purposes of an indirect infringement claim can be provided by

1   way of the complaint itself and certainly that is the case
2   here; and I have the cites for that for your Honor.
3           These were not in our opening brief again because
4   this argument was newly raised in reply.  *Burkheimer versus*
5   *Hewlett Packard*, 2013 Westlaw 12333446 at 2.  That was a
6   September 18th, 2013, opinion.  And also *Radiation*
7   *Stabilization versus Accuray,* 2012 Westlaw 3621256.  That's
8   Northern District of Illinois, August 21st, 2012.  Both of
9   those cases hold that pre-suit knowledge is not necessary to
10  satisfy the knowledge element of an indirect infringement
11  claim.
12          Despite that, however, the amended complaint clearly
13  alleges facts that are sufficient to establish the intent
14  element with respect to those two of the seven patents.
15  Paragraph 22 of the amended complaint alleges that Hytera
16  Corporation has been willfully blind to Motorola's patent
17  portfolio.  It continues and it describes that Hytera
18  employees documented that Hytera Corporation searched and
19  analyzed Motorola's patents.  Hytera Corporation did not take
20  any steps to avoid infringing Motorola's patents.  And under
21  the *Warsaw versus NuVasive* Federal Circuit opinion from 2016,
22  824 F.3d 1344 at 1347, the Federal Circuit held that willful
23  blindness can satisfy the knowledge requirement for active
24  inducement.  And so there is absolutely no question that the
25  amended complaint properly states a claim of induced

1   infringement against Hytera Corporation.

2   It also states a claim of direct infringement. What
3   Hytera asks your Honor to do is to rely on a declaration and
4   to make factual determinations rejecting our detailed
5   allegations regarding importation. That is absolutely
6   improper on a motion to dismiss. And you only have to take
7   what they have admitted in order to know that we have
8   properly alleged a claim of direct infringement based on
9   importation. In their reply brief, they concede that the
10  importation records include importation records that indicate
11  that Hytera Corporation, the global corporate entity that is
12  the focus of our dispute, is listed as the consignee. They
13  admit that there are three such importation records.

14  To be clear under the law, including the *Nuance*
15  *Communications* opinion that we've cited, we allege and the --
16  it is not proper on a motion to dismiss to resolve this
17  dispute that the shipper information on those records
18  indicates that Hytera Corporation directly infringes through
19  importation. But even if we put that dispute to the side,
20  they concede that there are three records that show Hytera
21  Corporation is the consignee and in their -- in Hytera's
22  formulation of what import should mean under 35 U.S. Code,
23  Section 271(a), they contend that the consignee can be the
24  importer. They're listed as the importer here.

25  So what do they say? They say that those are

```
 1  probably mistakes and they're asking your Honor to conclude
 2  that they're mistakes.  That kind of a conclusion on a motion
 3  to dismiss is also thoroughly improper but it also doesn't
 4  make sense what they're saying.  So they say for the ones
 5  where Hytera Corporation is listed as both the consignee and
 6  the shipper that that's probably a mistake but, in any event,
 7  it refers to transceivers and not two-way radios.  However,
 8  transceivers are equivalent to two-way radios as the
 9  importation records themselves show.  There is a row at Page
10  33 of Exhibit 10 to the amended complaint in which
11  transceivers and two-way radios are equated with one another.
12  We allege that these importation records all of them show
13  importation by Hytera Corporation.  And so in addition to
14  stating a claim for indirect infringement, we've stated a
15  claim for direct infringement.
16          So that brings me to the only other issue here which
17  is venue over Hytera West and so I think there are sort of
18  three primary points.  I can walk through them quickly.
19  Thank you for allowing me the time to explain this, your
20  Honor.  For Hytera West, they concede that Hytera West has
21  today in Schaumburg right now not too far from here a
22  warehouse that it's maintained for two years and that if we
23  wanted to do so, we could dismiss Hytera West from the case
24  today, file the same claim against them today in this court
25  and that venue would be proper.  And so there's only two
```

1  arguments -- or really one they're making which is that they
2  did not have a regular and established place of business at
3  the time that our complaint was filed.  That's wrong for two
4  reasons.  One is the proper time to assess venue in
5  connection with the patent venue statute is at the time of
6  the amended complaint.  I can briefly respond to what they
7  say in the reply brief.  There is a -- the *Fastener* case that
8  we cite from this court in 1968 held that assess --
9  assessing -- in the context of a patent case, assessing
10 proper venue at the time of the amended complaint was proper.
11 That decision was not overruled by *Welch,* which actually
12 supports our position; and I'll come to that.  *Fastener*
13 remains good law in this district.  And it's consistent with
14 the other cases that we've cited, *Hickey*, *Brown* and *Saraco*.
15 *Saraco* was from the Eastern District of Pennsylvania,
16 although it was affirmed by the Federal Circuit which has
17 jurisdiction over this -- these disputes and -- because
18 they're patent cases, of course, and that also held that
19 venue is properly assessed at the time of an amended
20 complaint.
21        *Welch* does not say that you can only look at venue
22 at the time of the original complaint.  Nothing in the
23 decision says that.  Rather, what *Welch* says is even if
24 there's not a regular and established place of business at
25 the time of the original complaint, venue can nevertheless be

1  proper if venue was established at the time the cause of
2  action accrued.  That's what it held.  Of course in that
3  circumstance, what the patent -- or I'm sorry, the infringer
4  had done was infringe and then leave the district 30 days
5  ahead of time.  But the holding in *Welch* supports a
6  conclusion that venue should be assessed as of the time of
7  the amended complaint here as well because, as Hytera
8  concedes this its reply brief, patent infringement is a
9  continuing tort that continues to incrue -- accrue, I'm
10 sorry, with each infringement and so they have -- Hytera West
11 has continued to sell the infringing products, distribute the
12 infringing products, offer for sale the infringing products
13 at the time of the amended complaint before it clearly after
14 the time that they established a warehouse and service
15 facility in Schaumburg and so *Welch* establishes that venue is
16 proper at the time.
17         So then that brings us to the second and final issue
18 with respect to venue, which is what if the court concludes
19 that venue must be assessed at the time of the original
20 complaint.  I don't think you could have a set of facts that
21 are closer to the line in terms of what the parties are
22 arguing.
23         I'd like to clarify one thing that they brought up
24 for the first time in their reply brief because we believe it
25 is incorrect and unsupported.  They claim it's a little

Case: 1:17-cv-01972 Document #: 99 Filed: 07/15/19 Page 11 of 20 PageID #:1737

11

1    bit -- I'm not entirely sure where they land here because
2    they provide different dates in the reply brief.  They say
3    that the lease and its amendment were not executed until
4    March 21st in one circumstance.  That was at Page 3, Note 2.
5    In another circumstance in the same brief, they say it wasn't
6    executed until March 22nd, Page 7, Note 4.  In both cases,
7    they say the final lease and amendment were not executed.  If
8    you look at Exhibit A to the reply brief, you'll see that
9    there are two signatures, the original lease and then an
10   amendment and a fax that was dated March 21st.  The original
11   signature on the lease says it's executed as of the date of
12   the lease, which is March 5th by operation of the agreement.
13         We did not have that document at the time I took
14   the Rule 30(b)(6) deposition of their witness and I asked him
15   when the lease was executed and he said he wasn't sure.  He
16   speculated that it might have been April the 1st.  I said how
17   does that make sense because you had already occupied it as
18   of that date and then he said he didn't know.  But the
19   document resolves the dispute.  The date of the lease says
20   that it was executed and it's effective as of March the 5th.
21         So then that brings us to whether that would
22   satisfy *Cray*, again a question you only get to if you
23   conclude that venue must be decided at the time of the
24   original complaint and not the amended complaint.  We believe
25   the answer is yes.  The reason for that is that *Cray* says a

1   few very important things.  One is that no precise rule has
2   been laid down and also it need not be a formal office or
3   store.  It talks about the three requirements.  Really,
4   there's only one in dispute because it's no dispute that
5   there is a physical location.  It is of Hytera West; and I
6   don't think there's any dispute that it is regular.  The only
7   question is whether it was established as of the time the
8   complaint was filed.  What *Cray* says is that that was an
9   issue that as of the time of *Cray* had not been deeply
10  analyzed by the Federal Circuit given the way that patent
11  venue had gone at that time, an issue I know your Honor is
12  familiar with, but it looked back at the legislative history
13  and the predecessor statutes and concluded that permanence is
14  the touchstone of what it means to be established, that
15  permanence is what the court is looking for.
16          And as of the time the complaint was filed, not only
17  did Hytera West have a full-time sales employee, was
18  conducting business here, but it had entered into a lease
19  agreement and there is no better indication of permanence
20  than entering into an agreement for a lease.  So we believe
21  that under *Cray* that the lease being entered into before the
22  complaint was filed establishes the permanence requirement of
23  *Cray*.
24          They point to some language that talks about the
25  defendant must engage in business contrasting that with the

1    advertising section.  That actually is a discussion that
2    comes after a discussion in *Cray* of the third requirement of
3    whether it means to be of the defendant and some discussion
4    around whether defendant's advertisements can be relevant or
5    dispositive.  And in a semi-colon sentence what the court
6    holds is that advertising is not enough, the defendant must
7    actually engage in business.  What we believe is that that
8    refers to the -- the defendant must actually do something
9    here.  The defendant did, entered into a lease which the
10   opinion says is relevant, had processed a certificate of
11   occupancy.
12            And the final thing I'll say on this, your Honor, is
13   that they -- the rule that Hytera West is advocating for is
14   thoroughly unworkable.  They cannot pinpoint the date that
15   they say that that physical location became established.
16   There was a declaration that was provided.  It was inaccurate
17   in certain respects.  There is a dispute over what exactly
18   happened but they have not laid out a rule that would be
19   better than looking at entering into a permanent physical
20   space lease for establishing this.
21            So the final point I'd make and again --
22            THE COURT:  Counsel --
23            MR. DeVRIES:  Yes.
24            THE COURT:  -- you need to conclude.
25            MR. DeVRIES:  Yes, your Honor.

1  THE COURT: All right. Go ahead. You got a few --
2  finish your thought.
3  MR. DeVRIES: Yes. It's that under CCD, if your
4  Honor finds that venue is not appropriate, this case should
5  not be transferred to the Central District of California.
6  Doing so would only delay it by three years. This case has
7  already been pending for over two and we don't think that
8  that's met. Thank you, your Honor.
9  THE COURT: Thank you. Go ahead, counsel.
10  MR. CIPOLLA: Yes. Your Honor, I will address some
11  of -- some of his points. First of all, the rule is clear
12  here in the Seventh Circuit under the *Welch* case that the
13  time at which you evaluate whether or not there is an
14  established place of business is at the time of the filing of
15  the complaint. Otherwise, you would have shifting sands with
16  regards to damages, especially in a patent case because you
17  have the six-year rolling statute of limitations. But the
18  *Welch* case plainly, plainly holds that.
19  Also, this court in the *Talsk* case address this very
20  issue. This is on our brief, our opening brief at Page 6.
21  In this case, this court addressed exactly this same
22  situation where a plaintiff tried to amend their complaint to
23  add in facts that had occurred after the filing of the
24  complaint and the court followed *Welch* and said no, that the
25  proper time is at the time of the filing of the complaint.

1   Here, there plainly was not any established and regular place
2   of business as of the filing of the complaint.  The lease
3   plainly was negotiated and they don't dispute this.  There
4   was no possession that possibly could be taken until April
5   1st.  The lease plainly states that.
6           When it was signed, even if it was signed six months
7   beforehand, wouldn't even matter.  It's when you have an
8   established place of business in this district and that was
9   plainly not established until April 1st.  But really, it was
10  not established until sometime after late July, like July
11  27th was the first real business activity or mid July that
12  occurred there.  And even though you have limited business
13  occurring at a location, that does not even make it
14  established.  There's cases cited in our brief that the court
15  looks at following *Cray*.  It may take five years to establish
16  an ongoing place of business.  The facts -- because there is
17  no plain rule when you are permanent -- a permanent business
18  in a physical location, it does depend upon the facts.  And
19  the facts are clear here.  They point to the declaration of
20  Andrew Yuan but plainly the -- we gave them all discovery,
21  produced all documents.  The earliest possibly there was any
22  business going on was in July and that was mid July.
23          So there's no way under the law that this -- a place
24  of business was established at the time of the filing of the
25  complaint.  Under *Cray* and the Supreme Court precedent, there

1   was no venue over Hytera West here and the case should be
2   dismissed or transferred in view of that.
3             With regards to whether or not Hytera West --
4   whether it mattered -- I mean, if they were willing to
5   dismiss Hytera West from the case, they should have done
6   that.  They had two opportunities now to file their amended
7   answer and for some mysterious reason they didn't drop Hytera
8   West.  They're telling you now it doesn't matter if they're
9   in the case.  It does because their complaint does not --
10  they have two arguments with regard to the Hytera Chinese
11  entity, that there's an importation or some sort of indirect
12  infringement through importation.  The timing of when Hytera
13  West was -- they're accusing Hytera West of being the
14  indirect infringer here -- or, excuse me, the direct
15  infringer here.  The timing and this rolling six-year statute
16  of limitations plays into that.  So I would definitely -- the
17  venue here over Hytera West is incorrect and it should be
18  transferred or dismissed.  This court does not have venue
19  over it under the *Cray* decisions.
20            With regards to inducement and the direct
21  infringement, if this court -- they're trying to make it like
22  we're trying to make this into a summary judgment.  No, we're
23  not.  The ITC documents, which we cite in our brief and we
24  highlight, show that the ITC found that the only importers
25  were Hytera West and Hytera East, okay.  They were -- they're

1  the only importers.  They're the ones that pay the import
2  duties it was taking Free On Board any of these products in
3  China.  Those are the relevant factors that you look to as to
4  importation.  Mere shipment of goods in the United States is
5  not importation.  Even the cases they cite in their brief
6  hold that.
7       And so these shipping documents that they rely upon,
8  they make -- they have to jump to these three mistakes, which
9  are plainly mistakes if you look at the documents because
10 they list Hytera West as both the consignee and the shipper.
11 They -- those shipping documents really have no relevance to
12 this dispute at all because whether or not you ship into the
13 United States doesn't matter.  It matters whether or not you
14 actually pay the import duties and whether or not -- where
15 Free On Board those goods are taken.  And the Federal Circuit
16 authority cited in our brief on that is clear on that point
17 as well as the statutes on importation.
18      There's no importation here.  Looking -- when you
19 have a motion to dismiss like this on 12(b)(6), it's -- it
20 depends whether or not the documents that they cite and
21 attach to their brief, whether that makes it implausible that
22 the Hytera Chinese entity is an importer; and they do.  The
23 Federal -- not the Federal Circuit.  The ITC plainly found
24 that the importers here were Hytera West and Hytera East and
25 that Hytera -- that the Hytera Chinese entity simply

1  manufactured for importation.  It's a much broader standard
2  than importation for an infringement in the -- for the patent
3  statute, Section 271.  So there's definitely not any
4  importation here and the documents that they attach to the
5  complaint themselves refute that they're importers.
6          With regards to the induced infringement claims, if
7  you look at their induced infringement claims, and we quote
8  them in our brief, they all rely upon importation.  Based on
9  the importation, da-da, da-da, da, based on the importation.
10 Well, there is no importation.  They again -- it's sort of
11 trying to pull themselves up by the boot straps with this
12 importing argument and so we don't think that there's any
13 induced infringement here alleged properly either.
14         I mean, you could give them another shot to amend
15 their complaint on that grounds to try to state an induced
16 infringement claim properly.  That may be the thing to do
17 here but the -- as far as importation, that should be
18 dismissed outright because it can't be cured.  There was no
19 importation.  It was already decided by the ITC and there
20 just are no facts to support it, cited or alleged in their
21 complaint and there can be none.
22         So, I mean, I'll simplify and get right to the
23 point.  I mean, our briefs really refute all their cases.
24 Their cases can be -- are distinguished on many grounds.
25 They're cases with regards to venue.  They're not even patent

```
 1  cases.  They're not from this district.  They're situations
 2  where many parties were dismissed out of the case.  There's
 3  only one party left.  The facts are all inapplicable and our
 4  briefs plainly point that out in our reply brief.
 5            I'll rest with that because I think it's a simple
 6  case.  And, you know, if they're willing to dismiss Hytera
 7  West from the case today, that's great.  They should.
 8            THE COURT:  Thank you, counsel.  The Court will take
 9  Document Entry 80 under advisement.  I'll issue a written
10  order separately.
11            The motion to seal, which is Docket Entry 93,
12  Gloria, that will be granted.  Gloria, give me a status date
13  28 days out.
14            COURTROOM DEPUTY:  Thursday, July 11th at 9:45.
15            THE COURT:  Is that good for the parties?
16            MR. CIPOLLA:  Thursday, July 11th.  What?  What --
17  what are we -- are we having another hearing, your Honor?
18            THE COURT:  Just a status.
19            MR. CIPOLLA:  Yep.
20            MR. DeVRIES:  Your Honor, I have a conflict.  I have
21  a Daubert hearing before Judge Tigar in the Northern District
22  of California that day.
23            THE COURT:  Give me a different date.  Gloria, give
24  me a different date.
25            COURTROOM DEPUTY:  Tuesday, July 16th at 9:45.
```

```
 1              THE COURT:  How is that, counsel?
 2              MR. DeVRIES:  Yes, your Honor.  That works.
 3              THE COURT:  Is that good for you, counsel?
 4              MR. CIPOLLA:  I'll make it work, your Honor.
 5              THE COURT:  Excellent.  See you then.
 6              MR. DeVRIES:  Thank you very much, your Honor.
 7       (Which concluded the proceedings in the above-entitled
 8   matter.)
 9                       C E R T I F I C A T E
10           I hereby certify that the foregoing is a transcript
11   of proceedings before the Honorable John Robert Blakey on
12   June 13, 2019.
13
14   /s/Laura LaCien
     _____              June 27, 2019
15   Laura LaCien                          Date
     Official Court Reporter
```