UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| MOTOROLA SOLUTIONS, INC., | |
| Plaintiff, | Case No. 17-cv-01972 |
| v. | |
| HYTERA COMMUNICATIONS CORPORATION LTD., *et al.* | Judge John Robert Blakey |
| Defendants. | |

# MEMORANDUM OPINION AND ORDER

Plaintiff Motorola Solutions, Inc. sues Defendants Hytera Communications Corporation Ltd. (Hytera Corporation) and Hytera Communications America West Inc. (Hytera West) for patent infringement. [78]. Defendants jointly move to dismiss Plaintiff's amended complaint pursuant to Rule 12(b)(3) for improper venue as to Hytera West, and Rule 12(b)(6) for failure to state a claim as to Hytera Corporation. [80]. For the reasons explained below, this Court denies Defendants' motion.

**I.     Background**[1]

Plaintiff, an Illinois company, maintains its principal place of business in Chicago, Illinois. [78] ¶ 12. Hytera Corporation is a Chinese company with its principal place of business in Shenzhen, China. *Id.* ¶¶ 3, 13. Hytera Corporation established Hytera West as a California subsidiary in 2016. *Id.* ¶¶ 8, 14. Plaintiff

---

[1] This Court takes the following factual allegations from Plaintiff's amended complaint, [78], documents attached to the amended complaint, and documents central to the amended complaint and to which it refers. *Williamson v. Curran*, 714 F.3d 432, 436 (7th Cir. 2013).

1

researches, invents, and provides radio equipment and infrastructure technologies, including two-way digital radio products, technologies, and supporting infrastructure and systems. *Id*. ¶¶ 1, 31.

Plaintiff's claims concern six patents: (1) U.S. Patent No. 6,591,111 (the '111 Patent), *id*. ¶ 54; (2) U.S. Patent No. 7,369,869 (the '869 Patent), *id*. ¶ 42; (3) U.S. Patent No. 7,729,701 (the '701 Patent), *id*. ¶ 45; (4) U.S. Patent No. 8,032,169 (the '169 Patent), *id*. ¶ 39; (5) U.S. Patent No. 8,279,991 (the '991 Patent), *id*. ¶ 48; and (6) U.S. Patent No. 9,099,972 (the '972 Patent), *id*. ¶ 51. Plaintiff constitutes the sole owner of each patent (collectively, the Patents). *Id*. ¶¶ 37, 40, 43, 46, 49, 52, 55.

Plaintiff alleges that Hytera Corporation specifically intended to infringe the Patents by "luring away" three of Plaintiff's senior engineers. *Id*. ¶¶ 5, 20. Plaintiff asserts that Hytera Corporation induced these engineers to infringe because: (1) they had direct familiarity with Plaintiff's innovations and technologies related to the Patents; and (2) in their final days of employment with Plaintiff, they downloaded at least 7,000 technical, marketing, sales, and legal documents related to the Patents. *Id*. According to Plaintiff, Hytera Corporation then relied upon and copied patented information from these documents in creating its own digital mobile radio (DMR) products. *Id*. ¶¶ 4, 5, 9, 21. Finally, Plaintiff alleges that Hytera Corporation infringed the Patents by directly—and/or indirectly, through subsidiaries, divisions, groups, or distributors—advertising, marketing, offering for sale, importing for sale, and/or selling the infringing DMR products. *Id*. ¶ 17.

2

Similarly, Plaintiff alleges that Hytera West directly—and/or indirectly through subsidiaries, divisions, groups, or distributers—infringed the Patents by advertising, marketing, offering for sale, importing for sale, and/or selling the infringing DMR products in this District. *Id.* ¶ 24. Plaintiff also asserts that Hytera West employs one salesperson and at least three other employees in its Schaumburg, Illinois warehouse and repair facility. *Id.* ¶¶ 25, 29.

## II. Legal Standard

To survive a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), a complaint must provide a "short and plain statement of the claim" showing that the pleader merits relief, Fed. R. Civ. P. 8(a)(2), so the defendant has "fair notice" of the claim "and the grounds upon which it rests," *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555, 127 S. Ct. 1955, 167 L. Ed. 2d 929 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 47, 78 S. Ct. 99, 2 L. Ed. 2d 80 (1957)). A complaint must also contain "sufficient factual matter" to state a facially plausible claim to relief—one that "allows the court to draw the reasonable inference" that the defendant committed the alleged misconduct. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Twombly*, 550 U.S. at 570). This plausibility standard "asks for more than a sheer possibility" that a defendant acted unlawfully. *Williamson v. Curran*, 714 F.3d 432, 436 (7th Cir. 2013).

In evaluating a complaint under Rule 12(b)(6), this Court accepts all well pleaded allegations as true and draws all reasonable inferences in the plaintiff's favor. *Iqbal*, 556 U.S. at 678. This Court does not, however, accept a complaint's legal conclusions as true. *Brooks v. Ross*, 578 F.3d 574, 581 (7th Cir. 2009).

3

With respect to venue, the plaintiff bears the burden of establishing that venue is proper in a given case. *Bartlett v. Bartlett*, No. 16 CV 6595, 2017 WL 106043, at *1 (N.D. Ill. Jan. 11, 2017) (citing *Grantham v. Challenge-Cook Bros., Inc.*, 420 F.2d 1182, 1184 (7th Cir. 1969)). In assessing venue for a 12(b)(3) motion, however, courts take the plaintiff's allegations as true and resolve factual conflicts in the plaintiff's favor. *RAH Color Techs., LLC v. Quad/Graphics, Inc.*, No. 17 C 4931, 2018 WL 439210, at *1 (N.D. Ill. Jan. 16, 2018) (citing *Deb v. SIRVA, Inc.*, 832 F.3d 800, 809 (7th Cir. 2016) and *Faulkenberg v. CB Tax Franchise Sys., LP*, 637 F.3d 801, 809−10 (7th Cir. 2011)).

### III. Analysis

#### A. Venue Is Proper As To Hytera West

In *TC Heartland LLC v. Kraft Food Group Brands LLC*, 137 S. Ct. 1514 (2017), the Supreme Court held that the patent venue statute, 28 U.S.C. § 1400(b), serves as the exclusive venue provision for patent infringement cases. *Id.* at 1517. Under Section 1400(b), plaintiffs may bring an action for patent infringement either: (1) in the judicial district where the defendant resides; or (2) where the defendant has committed acts of infringement and has a regular and established place of business. *TC Heartland*, 137 S. Ct. at 1517.

As to the first prong, a corporate defendant "resides" only in its state of incorporation. *Id.* Because Hytera West is incorporated in California, this Court finds—and Plaintiff concedes—that Plaintiff cannot establish this first prong. *See* [78] ¶¶ 13, 14, 29. Instead, Plaintiff relies upon the second prong of Section 1400(b)

4

in attempting to demonstrate proper venue in this district as to Hytera West. [88] at 9–10. Under this prong, three general requirements exist: (1) there must be a physical place in the district; (2) it must be a regular and established place of business; and (3) it must be the place of the defendant. *In re Cray Inc.*, 871 F.3d 1355, 1360 (Fed. Cir. 2017).

Here, Defendants concede—and this Court agrees—that Hytera West currently operates a regular and established place of business in this District based upon their Schaumburg, Illinois warehouse and repair facility. [95] at 1. The Schaumburg facility consists of a rented space in an office park, and Hytera West has leased the space and operated it as a warehouse, distribution center, and service station since it entered into a three-year lease in 2017. [78] ¶¶ 25, 29; [81] at 4–5, 13; [89-4]; *see also Cray*, 871 F.3d at 1362–63. Defendants argue, however, that Hytera West did not possess this "regular and established" place of business at the time period applicable for establishing venue in this suit. [81] at 3.

According to Defendants, this Court should evaluate venue based upon the "date of filing the original complaint"—March 14, 2017. [81] at 5–6; [1]. Defendants contend that although Plaintiff signed the lease on March 5, 2017, [89-4], the terms of Plaintiff's Schaumburg facility three-year lease did not permit it to occupy the facility until April 1, 2017, and Plaintiff could not operate a "regular and established" business from there until it finished "setting up" in August 2017. [81] at 4 n.2; [95] at 1, 10. As such, Defendants argue that Plaintiff cannot demonstrate proper venue as of March 14, 2017. [95] at 1.

5

Defendants base this argument upon *Talsk Research, Inc. v. Evernote Corporation*, in which the court found the plaintiff failed to demonstrate a regular and established place of business based upon the activities of independent contractors, referred to by the plaintiff as "community members," in part because those contractors were not associated with plaintiff's business *"when th[e] case was filed."* No. 16-CV-2167, 2017 WL 4269004, at *3 (N.D. Ill. Sept. 26, 2017) (citing *Welch Scientific Co. v. Human Eng'g Inst., Inc.*, 416 F.2d 32, 35 (7th Cir. 1969)). *Talsk* remains inapposite for several reasons.

As an initial matter, in *Welch*, upon which *Talsk* relies, the Seventh Circuit rejected defendant's argument that venue was improper because plaintiff "did not have a regular and established place of business at the time the suit was filed." 416 F.2d at 35. In doing so, the court made clear that "under the patent venue statute, venue is properly lodged in the district if the defendant had a regular and established place of business at the time the cause of action accrued and suit is filed within a reasonable time thereafter." *Id.*, *cert. denied*, 396 U.S. 1003 (1970); *see also Datascope Corp. v. SMEC, Inc.*, 561 F. Supp. 787, 790 (D. N.J. 1983) (holding that "time of accrual of the action is the measuring point for determination of venue."), *aff'd in relevant part*, 776 F.2d 320 (Fed. Cir. 1985); *San Shoe Trading Corp. v. Converse, Inc.*, 649 F. Supp. 341 (S.D.N.Y. 1986) (relying upon *Welch* and *Datascope* to conclude that "venue is determined at the time the claim accrues."). [2]

---

[2] To the extent any appellate opinions from prior to 1982—when Congress granted exclusive jurisdiction over patent cases to the Court of Appeals for the Federal Circuit—differ from post-1982 Federal Circuit precedent, the former opinions "must be considered as having been implicitly overruled." *Hako Minuteman, Inc. v. Advance Mach. Co.*, 729 F. Supp. 65, 67 (N.D. Ill. 1990) (citing

And although *Welch* involved a defendant ceasing operations in the relevant district before plaintiff filed a complaint, *id.* at 36, the Seventh Circuit's logic applies with equal, if not greater, force here. Patent infringement is a continuing tort, and thus each act of infringement gives rise to a separate cause of action. *See, e.g.*, *Prestone Prods. Corp. v. South/Win, Ltd.*, No. 13 C 1853, 2014 WL 12775693, at * 3 (N.D. Ill. Sept. 26, 2014) (citing *James Burrough Ltd. v. Sign of the Beefeater, Inc.*, 572 F.2d 574, 578 (7th Cir. 1978) and *Pall Corp. v. Micron Separations, Inc.*, 66 F.3d 1211, 1221 (Fed. Cir. 1995)). As such, the accrual date is not simply the first date of infringement; rather each of the alleged "infringing activities gives rise to a cause of action that dates from the moment of infringement." *Chamberlain Group, Inc. v. Lear Corp.*, 758 F. Supp. 2d 542 (N.D. Ill. 2010) (quoting *Hazelquist v. Guchi Moochie Tackle Co., Inc.*, 437 F.3d 1178, 1180−81 (Fed. Cir. 2006)).

Here, Plaintiff alleges that Hytera West's patent infringement has remained active and ongoing "well after [Plaintiff] filed the original Complaint in this matter." [78] ¶ 8 (alleging continuing violations as of March 2019). Further, Defendants concede that Hytera West could fully operate the Schaumburg facility—a regular and established place of business—as of August 2017. [95] at 1, 10. Accordingly, assessing venue "at the time the cause of action accrued," this Court finds that

---

28 U.S.C. § 1295)). Here the parties have not presented any post-1982 Federal Circuit law disavowing *Welch*, which remains controlling.

7

Plaintiff has established proper venue, as the alleged infringement continues to accrue.[3]

In any event, this Court also finds *Talsk* distinguishable from the present case. There, the court noted that the plaintiff had "no offices, warehouse, retail locations, or other facilities in Illinois," nor did it "own, lease, or control any land in Illinois" or "have full-time employees living in this District." 2017 WL 4269004, at *2. Instead, plaintiff premised its suit upon the "community members," who were "free to recommend or not recommend Defendant's software to their customers in the course of their own business." *Id*. at *3. Further, the *Talsk* court did not find the fact that the community members signed up with plaintiff *after* the suit dispositive, explaining that "even if the Court were to overlook the fact that these independent Community Members were not in existence at the time this case was filed, the Court must hold that their activities do not establish that Defendant has a 'regular and established place of business'" in the District. *Id*. at *5. Here, in contrast, Plaintiff premises venue upon Hytera West's physical warehouse and repair facility—which Defendants concede constitutes a regular and established place of business in this District— rather than third party contractors. [78] ¶¶ 25, 29; [88] at 9−10, 13; [95-1].

Accordingly, based upon the Seventh Circuit's decision in *Welch*, and construing the facts in Plaintiff's favor, as this Court must, *RAH*, 2018 WL 439210 at

---

[3] To the extent Defendants argue that a finding of proper venue as to Hytera West should "not entitle [Plaintiff] to damages based on when [Plaintiff] filed its initial complaint," [95] at 5 n.3, this Court notes that a damages analysis remains premature at the motion to dismiss stage.

*1, this Court finds Plaintiff demonstrate proper venue in this District as to Hytera West.

### B. Plaintiff Sufficiently States A Claim Under Rule 12(b)(6) Against Hytera Corporation

#### 1. Direct Infringement Claim

Plaintiff first asserts claims for direct patent infringement against Hytera Corporation under 35 U.S.C. § 271(a), which provides a cause of action against a defendant who "without authority makes, uses, offers to sell, or sells any patented invention, within the United States or imports into the United States any patented invention during the term of the patent." Because Hytera Corporation operates outside of the United States, Plaintiff's direct infringement claim relies upon allegations that Hytera Corporation imported the infringing DMR products. [78] ¶ 13; [88] at 6. Defendants argue that Plaintiff fails to allege importation, and thus cannot state a claim for direct infringement. [81] at 9−15. This Court disagrees.

Defendants rely upon *Cybiotronics Ltd v. Golden Source Electronics, Ltd.*, 130 F. Supp. 2d 1152 (C.D. Cal. 2001), in which the plaintiff accused a Hong Kong company of importing infringing telephone products into the U.S.; the Hong Kong defendant manufactured the products overseas, sold the products to an intermediary in Hong Kong, and while the products remained in Hong Kong, the intermediary sold the products to a U.S. customer. *Id.* at 1158−59. The *Cybiotronics* court decided, at summary judgment, that while it was "*possible* that [the Hong Kong defendant] itself played some role in 'arranging' or 'coordinating' the shipments of goods from Hong Kong to the United States at the behest of [the U.S. company]," the Hong Kong

9

defendant "ha[d] not *itself* engaged in the conduct prohibited by the statute, i.e., 'importing into the United States.'" *Id.* at 1174. Defendants here thus argue that like the defendant in *Cybiotronics*, Hytera Corporation serves as a "[s]hipper," but not an importer, and thus that its subsidiaries and dealers are "likely" the actual importers. [81] at 1, 10, 11.

But this case is not at summary judgment, and there "is no requirement for [Plaintiff] to 'prove its case at the pleading stage.'" *Lifetime Indus., Inc. v. Trim-Lok, Inc.*, 869 F.3d 1372, 1379 (Fed. Cir. 2017) (quoting *Bill of Lading Transmission & Processing Sys. Patent Litig.*, 681 F.3d 1323, 1339 (Fed. Cir. 2012)). Rather, this Court accepts all well pleaded allegations as true and draws all reasonable inferences in the plaintiff's favor. *Iqbal*, 556 U.S. at 678. Here, the amended complaint contains specific allegations, including details about the infringing DMR products, Hytera Corporation's alleged importation of the infringing DMR products, as well as the alleged records of such importation themselves. [78] ¶¶ 8, 16−18, 24, 42, 67, 75−81, 88, 109, 133, 156, 176, 198; [78-10]; [78-11].[4] These allegations, taken as true at this stage, plausibly state Hytera Corporation's role as an importer, and thus direct infringement. *Ashcroft*, 556 U.S. at 678.

---

[4] The parties dispute whether the International Trade Commission (ITC) proceeding between the parties, cited in the Amended Complaint, supports a reasonable inference that Hytera Corporation imports allegedly infringing products. [78] ¶ 18; [78-13]; [88] at 12−15. ITC decisions, however, "are not binding on district courts in subsequent cases brought before them." *Texas Instruments v. Cypress Semiconductor Corp.*, 90 F.3d 1557, 1569 (Fed. Cir. 1996). Rather, this Court "can attribute whatever persuasive value to the prior ITC decision that it considers justified." *Id.* Further, the ITC decision does not appear to directly address whether Hytera Corporation served as an importer. [88] at 13−14; [78] ¶ 18; [78-13]. As such, this Court does not find the ITC's decision dispositive at the motion to dismiss stage.

And to the extent Defendants rely upon the *Cybiotronics* court's nonbinding interpretation of shipping versus importing activity, this Court cannot, at the pleadings stage, determine whether Hytera Corporation serves as a "shipper" rather than an "importer," as a matter of law. 130 F. Supp. 2d at 1173–76 (conducting a detailed, post-discovery analysis of defendant's importation role). This Court also notes that unlike the plaintiff in *Cybiotronics*, Plaintiff alleges that Hytera Corporation imports the infringing DMR products directly into the U.S., rather than sells them to an intermediary abroad. 130 F. Supp. 2d at 1158–59; [78] ¶ 17.

Based upon the Amended Complaint's allegations, this Court finds that Plaintiff has plausibly stated a claim for direct infringement under Section 271(a).

### 2. Indirect Infringement Claim

Plaintiff also asserts indirect infringement claims against Hytera Corporation under 35 U.S.C. § 271(b), which prohibits "actively induc[ing] infringement of a patent." Plaintiff bases these claims upon allegations that Hytera Corporation actively induced third-party purchasers, distributors, and consumers to directly infringe the Patents in the U.S. [78] ¶¶ 69, 90, 111, 135, 158, 177, 199; [88] at 5–6.

As an initial matter, like Plaintiff's direct infringement claims, its indirect infringement claims also rely upon Hytera Corporation importing its products to the U.S. *See, e.g.*, [78] ¶¶ 69, 70. Accordingly, Defendants move to dismiss Plaintiff's indirect infringement against Hytera Corporation based upon their argument that Plaintiff failed to properly allege importation, discussed above. [81] at 15. For the reasons explained above, this Court again rejects Defendants' importation argument.

11

To sufficiently plead indirect infringement, Plaintiff must plead facts to plausibly show that Hytera Corporation possessed knowledge of the patent and specifically intended a third party to infringe the patents, as well as direct infringement by a third party. *Cascades AV LLC v. Evertz Microsystems, LTD*, No. 17 CV 7881, 2019 WL 172758, at *8 (N.D. Ill. Jan. 11, 2019) (citing *In re Bill of Lading Transmission & Processing Sys. Patent Litig.*, 681 F.3d 1323, 1339 (Fed. Cir. 2012)). Like Section 271(a), Section 271(b) does not require Plaintiff to "allege facts that prove all aspects of its [indirect inducement] claims" at the pleading stage. *Bill of Lading*, 681 F.3d at 1341. Rather, allegations giving "rise to a reasonable inference" that Hytera Corporation intended to induce third parties to infringe are sufficient. *Id*. (finding allegation that defendant advertised allegedly infringing products to customers along with cease-and-desist letter showing defendant's knowledge of patents stated a claim).

Plaintiff has met this threshold. First, with respect to knowledge of the patents, it alleges that the three senior engineers Hytera Corporation hired away from Plaintiff's employment "were well-versed in Motorola's propriety technologies and patenting efforts, had direct responsibility for the design and development of Motorola's digital product lines, and had direct access to associated confidential source code and technical documentation" concerning the implementation of Plaintiff's patented technologies. [78] ¶¶ 20, 63. Plaintiff also alleges that these engineers downloaded at least 7,000 of Plaintiff's technical documents, including "foundational documents regarding [Plaintiff's] digital technologies and disclosures

12

related to" the Patents. *Id.* ¶¶ 20, 59. In addition to the senior engineers' activities, Plaintiff alleges that Hytera Corporation's employees "monitored the filing and issuance of Motorola patents related to [its] new two-way radio technology." *Id.* ¶ 22. Further, Plaintiff alleges that, at the very least, Defendants became knowledgeable of the patents through its filing of the original complaint in this action, and nonetheless continued infringing. *Id.* ¶¶ 68, 89, 110, 134, 157, 177, 199; *see also Radiation Stabilization Solutions, LLC v. Accuracy, Inc.*, No. 11-cv-07700, 2012 WL 3621256, at *4 (N.D. Ill. Aug. 21, 2012) (finding allegations that "on information and belief," defendants "are at least as of the date of the filing of this complaint inducing infringement of the [asserted] patent" and that "the [accused] product infringes the [asserted] patent" sufficient to support claim of induced infringement).

As to knowingly inducing the infringing acts, Plaintiff alleges that Hytera Corporation copied technologies from the Patents directly into the infringing DMR products. [78] ¶ 9. According to Plaintiff, Hytera Corporation provided documentation with their products about how to use them, as well as training materials on how to configure the products, thus directing consumers to use the products in an infringing manner. *Id.* ¶¶ 9, 69, 90, 111, 135, 158, 177, 199; *see also Trading Tech. Int'l, Inc. v. BCG Partners, Inc.*, Nos. 10 C 715, *et seq.*, 2011 WL 1706136, at *4 (N.D. Ill. May 5, 2011) (finding it "reasonable to infer, at the motion to dismiss stage, that by selling infringing products and showing customers how to use them, [defendant] intended those customers to infringe"); *Lecat's Ventriloscope v. MT Tool & Mfg.*, No. 16 C 5298, 2017 WL 1362036, at *6 (N.D. Ill. Jan. 17, 2017)

13

(finding allegation that defendant "is engaged in the business of making and selling a product . . . that, when used by an end user for the specific purpose and in the specific manner promoted by" the defendant, infringes" the relevant patent sufficient to state a claim for indirect inducement.).

Finally, with respect to direct infringement by a third party, Plaintiff has plausibly alleged that upon importation of the infringing products into the U.S., third-party distributors, purchasers, and consumers operated and used the products in an infringing manner. *See, e.g.*, [78] ¶¶ 69, 75, 90, 111, 135, 158, 178, 200.

Because this Court finds that Plaintiff has plausibly alleged both intent and knowledge on the part of Hytera Corporation, as well as direct infringement by third parties, Plaintiff has stated a claim for induced infringement sufficient to survive Defendants' motion to dismiss.

## IV. Conclusion

For the reasons stated above, this Court denies Defendants' motion to dismiss Plaintiff's amended complaint pursuant to Rules 12(b)(3) as to Hytera West and 12(b)(6) as to Hytera Corporation. [80]. All dates and deadlines stand.

Dated: August 12, 2019

Entered:

John Robert Blakey
United States District Judge