# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | |
|---|---|
| MOTOROLA SOLUTIONS, INC., )<br>)<br>Plaintiff )<br>)<br>v. )<br>)<br>HYTERA COMMUNICATIONS )<br>CORPORATION LTD. )<br>)<br>Defendant )<br>) | Civil Action No. 1:17-cv-01972<br><br>Hon. District Judge Franklin U. Valderrama<br><br>Hon. Magistrate Judge Jeffrey Cummings |

## MOTOROLA'S OPPOSITION TO
## HYTERA'S MOTION FOR LEAVE TO FILE A SUR-REPLY

**TABLE OF CONTENTS**

I.    INTRODUCTION ....................................................................................................1

II.   ARGUMENT...........................................................................................................3

      A.      Hytera's Request to File a Sur-Reply Is Unjustifiably Late and Should Be
            Denied for that Reason Alone................................................................................3

      B.      Hytera's Sur-Reply Points Are Substantively Meritless..........................................5

            1.      The Commerce Bureau Letter is irrelevant and does not purport to
                    rule that Hytera's H-Series source code constitutes "critical data." ............5

            2.      The article on the Zhong Lun firm's website is fully consistent
                    with Mr. Fang's declaration testimony. .......................................................7

            3.      Hytera's offer for a Chinese expert to review the H-Series code in
                    China is unworkable. ....................................................................................7

III.  CONCLUSION........................................................................................................8

Pursuant to the Court's August 25 order (Dkt. 318), Plaintiff Motorola Solutions, Inc. ("Motorola") opposes Hytera's motion for leave to file a sur-reply (Dkt. 314) in support of Hytera's Motion to Extend Time to Produce Source Code.

I.   **INTRODUCTION**

Hytera's motion—its latest gambit to try to excuse its ongoing failure to produce the source code it was ordered to produce five months ago, and to further delay this litigation filed in 2017— should be denied for two independent reasons: (i) Hytera's request is unjustifiably late; and (ii) its points are substantively meritless.

As an initial matter, there is no justification for the belated timing of Hytera's request, beyond Hytera's apparent desire to continue to unnecessarily delay resolution of this issue. Almost two months after briefing closed on its Chinese law objections to Motorola's request that Hytera produce H-Series source code (which were themselves late), Hytera now attempts to make additional arguments that it could have raised much earlier. For example, the letter from the Commerce Bureau of Shenzhen Municipality ("Commerce Bureau Letter")—which has no substantive bearing on the dispute, as explained below—was dated in July (Dkt. 314, Ex. B at 3), showing that Hytera sat on its hands for over a month before seeking to raise the letter with the Court. More importantly, Hytera could have requested that letter much earlier in the process if it thought it was relevant, but failed to do so. Likewise, the website article that Hytera contends contradicts the testimony of Motorola's declarant Mr. Fang (it does not, as explained below) was available since at least September 2022, nearly a year ago. Hytera provides no reason why it did not raise that article over the last two months, since receiving Mr. Fang's declaration. Finally, Hytera's suggestion that Motorola should be required to retain an expert in China to review the H-Series source code in China—for this United States litigation—is fundamentally unworkable, but

in any event could have been made months ago if Hytera truly thought that was a proper solution. In sum, there is simply nothing new that would justify a sur-reply to address these issues, and Hytera's belated attempt to raise them confirms Hytera's real aim: introducing as much procedural delay as possible into this case, which has been pending since March 2017, just as Hytera has in other intellectual property litigation with Motorola pending before this Court. *See, e.g.*, *Motorola Sol'ns v. Hytera Commc'ns Corp.*, Case No. 1:17-cv-1973, Dkt. 1461 (N.D. Ill. Aug. 26, 2023) (Pacold, J.) (holding Hytera in contempt for failing to comply with Court order).

But even if the Court were inclined to permit Hytera's belated sur-reply, the three points Hytera raises do not substantively justify its ongoing refusals to produce the H-Series source code, let alone suggest that the Court should depart from its holdings in *Inventus Power v. Shenzhen Ace Battery*, 339 F.R.D. 487 (N.D. Ill. 2021), or allow unsubstantiated Chinese laws to trump the Federal Rules of Civil Procedure here. As discussed below, that case's facts remain analogous to the present case, and the Court's decision there is controlling and necessary to avoid undue prejudice to Motorola. **First,** the letter from the Commerce Bureau of Shenzhen Municipality is irrelevant because that entity has no responsibility for interpreting or enforcing the export control laws at issue. Moreover, the letter does not state that Hytera's H-Series source code cannot be made available in the United States; it merely advises Hytera that it should make its own assessment. **Second,** contrary to Hytera's contention, Mr. Fang's testimony is wholly consistent with the article on his law firm's website. Hytera argues that the article contradicts Mr. Fang's purported opinion that Hytera needed to wait for an official determination before *asserting* that its source code is "critical data" subject to the export laws. But Mr. Fang said no such thing. Rather, he explained that, for Hytera to *prove* that it is "a critical information infrastructure operator" subject to the Data Security Laws, it had to provide the determination from the competent

2

authority. There is no inconsistency between Mr. Fang's testimony and the article. ***Finally,*** Hytera's suggestion that Motorola should be required to hire an expert in China to review the H-Series source code in China for this United States litigation is unworkable and not a solution to Hytera's ongoing failure to produce the source code in this case. The timing of this suggestion is telling: if Hytera truly believed this proposal would solve the problem, it could have offered it months ago.

At bottom, nothing about Hytera's proposed sur-reply changes that the balance of comity factors that must be applied to Hytera's Chinese law objections clearly favors rejecting those objections. Indeed, Hytera's proposed sur-reply does not even address the required analysis, which unambiguously favors applying U.S. federal rules over Chinese laws in this case, for the reasons Motorola has previously explained. *See* Dkt. 298 at 9–16; Dkt. 304 at 8–16.

## II. ARGUMENT

### A. Hytera's Request to File a Sur-Reply Is Unjustifiably Late and Should Be Denied for that Reason Alone

Hytera's proposed "sur-reply" (which is in fact an attempted "reply" to the supplemental responsive brief Motorola submitted on June 30 (Dkt. 304)) belatedly raises arguments Hytera could and should have raised far earlier if it wanted to raise them at all. ***First***, the Commerce Bureau Letter Hytera attaches was dated July 20, 2023, more than a month ago. *See* Dkt. 314, Ex. B at 2. Hytera does not explain why it waited more than a month before raising this letter. ***Second,*** the purportedly contradictory article Hytera identifies (which is not a contradiction at all, as explained below) was available nearly a year ago, in September 2022 (Dkt. 314, Ex. C), meaning that Hytera could have raised this alleged inconsistency nearly two months ago. ***Third,*** Hytera's suggestion that Motorola could review H-Series source code in China with a Chinese expert, rather than in the United States, could have been made long ago if Hytera truly thought this suggestion

3

would resolve the issue. *See* Dkt. 314 at 3, Ex. D. This offer, made for the first time on the day Hytera moved for leave to file its sur-reply, is not workable and is not sufficient to satisfy Hytera's discovery obligations in this U.S. litigation, for the reasons discussed below.

In sum, Hytera's request to file a sur-reply is unwarranted and should be denied based on the timing of the request alone. Permitting Hytera's belated sur-reply would unnecessarily encourage Hytera's blatant efforts to delay Motorola's longstanding attempts to conduct discovery into the H-Series products. The Court rejected all of Hytera's objections to Motorola's request for H-Series source code in January 2023.[1] Dkt. 275. More than seven months later, Hytera still has not produced the source code it was required to produce. Instead, on the day it was obligated to produce the source code under Court order, Hytera belatedly raised new objections, this time based on Chinese law. *See* Dkt. 298 at 5–7 (summarizing Hytera's dilatory conduct). That late objection led to yet another round of briefing, which closed on June 30, 2023. And now, more than two months after *that* briefing concluded, Hytera again raises numerous new arguments that it could have raised earlier in the process. Altogether, Hytera's staggered objections have delayed discovery into the H-Series source code **by 17 months**.[2] In a case that has been pending for **more than six years** (since 2017) at just the District Court level, allowing Hytera to introduce even more delay by belatedly raising even more arguments is wholly prejudicial to Motorola and entirely unacceptable. Accepting a late sur-reply would only exacerbate and encourage this delay. Hytera's request to file a "sur-reply" should therefore be denied on this basis.

---

[1] Motorola first requested Hytera to produce the H-Series source code in November 2021. Motorola moved to compel the production of H-Series source code in March 2022, and, in January 2023, the Court overruled Hytera's objections and ordered Hytera to produce the H-Series code.

[2] It has been 17 months since March 2022, when Motorola moved to compel H-Series source code.

4

## B. Hytera's Sur-Reply Points Are Substantively Meritless

Even if the Court were inclined to grant Hytera leave for its sur-reply, however, the new points Hytera raises are substantively meritless and do not justify its ongoing failure to produce the source code it was ordered to produce earlier this year (Dkt. 291). As explained below, none of the points Hytera seeks to raise changes the analysis that Hytera's source code is not somehow precluded from discovery by Chinese law. Moreover, Hytera's sur-reply does nothing to address the balancing of comity factors, which unambiguously confirm here, just as in *Inventus Power, Inc. v. Shenzhen Ace Battery Co.*, 339 F.R.D. 487 (N.D. Ill. 2021), that U.S. law should govern in this case over Chinese laws for the reasons Motorola has previously explained.

### 1. The Commerce Bureau Letter is irrelevant and does not purport to rule that Hytera's H-Series source code constitutes "critical data."

Hytera's reliance on the letter from the Commerce of Bureau of Shenzhen fails for multiple reasons. As a foundational matter, the Commerce Bureau of Shenzhen is not a competent authority for interpreting the relevant Data Security Laws and determining whether a Chinese company's source code and/or devices are subject to those laws. *See* Boloori Decl.,[3] Ex. 1 ("Fang Decl. #2") ¶¶ 7–9. Notably, Hytera provides no evidence about the role of the Commerce Bureau of Shenzhen—a city in China—or of its legal authority over these issues. But as Mr. Fang explains, this city bureau's duties do *not* include determining compliance with Data Security Laws. Fang Decl. #2 ¶ 9, Ex. A. Instead, as Mr. Fang explains, the correct Chinese procedure requires Hytera to conduct a self-assessment and give that assessment to the Cyberspace Administration of Guangdong Province ("CAGP"). Fang Decl. #2 ¶ 10. Hytera has provided no evidence that it

---

[3] Declaration of Ali-Reza Boloori, submitted in support of the instant brief.

undertook that self-assessment, or that it provided the results to the correct authority in China (or to this Court).

But even taking the letter on its face, and disregarding that it was not obtained from a competent authority on the matters to which it relates, the letter's contents do not help Hytera. It states that "source code in respect of DMR two-way radios and base stations constitutes critical data affecting national security," but provides no supporting analysis or explanation as to why. To the contrary, the letter directs **Hytera** to "solemnly assess" various factors—"the relevant outbound data transfer, means of transmission, security measures, location of storage abroad, retention period, responsibilities and obligations of the recipient, [and] restrictions on the further transfer by the recipient of the data transferred"—to determine *whether* it can provide the source code. Dkt. 314, Ex. B at 2. This shows that even the Commerce of Bureau of Shenzhen did not make a definitive ruling as to whether Hytera could provide the H-Series source code in the United States.

The letter also speculates in a non-definitive fashion that Hytera's "two-way radios, base stations and other private network communication products *may* constitute critical information infrastructure within the meaning of Article 2 of the Regulations on the Security Protection of Critical Information Infrastructure." Dkt. 314, Ex. B at 1 (emphasis added). This is not a determination, but instead again directs **Hytera** to make a "solemn[] assess[ment]" as to whether its products constitute Critical Information Infrastructure. *Id.*; *see also* Fang Decl. #2 ¶¶ 10–12.

In closing, the letter again asks Hytera to "offer a timely and effective explanation about the means of transmission, security measures, location of storage abroad, retention period, responsibilities and obligations of the recipient, restrictions on the further transfer by the recipient of the data transferred abroad to other organizations and individuals, and other key issues in relation to the relevant outbound data transfer" ***before any assessment by even the Shenzhen***

6

***Commerce Bureau could occur***. Dkt. 314, Ex. B at 1. There is no evidence that Hytera has conducted any such analysis, despite already having imposed significant delays in this case. Hence, the Commerce Bureau Letter does not change the parameters of the dispute, or provide any valid justification for Hytera's ongoing failure to produce the source code.

2. <u>The article on the Zhong Lun firm's website is fully consistent with Mr. Fang's declaration testimony.</u>

Hytera's reliance on a website article on the Zhong Lun law firm's website is also unavailing. In its response to Hytera's brief, Motorola correctly highlighted there is no evidence that either Hytera or its customers are "critical information infrastructure operators" ("CIIOs"). Dkt. 304 at 5. Hytera now tries to remediate this evidentiary gap by pointing to an article recommending that companies proactively identify whether they have "critical data" and not wait for the release of a "critical data catalog," given that such a catalog has not yet been issued. Dkt. 314 at 2; *see also* Dkt. 315-3 at 5. Hytera insists this statement contradicts Motorola's declarant's "opinion that Hytera needed to wait for an official ruling before asserting its code was covered by the PRC Data Laws." Dkt. 314 at 3. But Mr. Fang never opined that "Hytera needed to wait for an official ruling before *asserting* its code was covered by the PRC Data Laws." Rather, he explained that, for Hytera to *prove* that it is a CIIO, it had to provide an official determination by the competent authorities, which it tellingly still has not done. *See also* Fang Decl. #2 ¶¶ 15–19.

3. <u>Hytera's offer for a Chinese expert to review the H-Series code in China is unworkable.</u>

As a last-ditch attempt to excuse its ongoing failure to produce the source code ordered by the Court, Hytera suggests that perhaps Motorola could review the H-Series source code in China using an expert with Chinese citizenship. Besides its inexplicable tardiness, this belated proposal is fundamentally unworkable, unduly prejudicial to Motorola, and at odds with the Court's decision in the *Inventus* case. By allowing Hytera to avoid importing the H-Series source code

into the United States, the proposal would deprive Motorola from: (i) having its testifying experts, who are not Chinese citizens, review the source code; (ii) allowing its U.S.-based outside counsel review the work product of the Chinese expert who reviews the code in China; and (iii) admitting into evidence, at trial, at least portions of the source code. None of these would be possible without the source code being located in the United States. Hytera's source code review proposal—which, as stated above, it conspicuously fails to reconcile with the comity factors, including those relating to the importance of providing this evidence to Motorola's experts, its use in discovery and court proceedings here, and the related United States interests, to name a few—would be unfair and highly prejudicial to Motorola.

Indeed, this exact same issue arose in *Inventus Power, Inc. v. Shenzhen Ace Battery Co.*, Case No. 20-cv-3375, Dkt. 212 (N.D. Ill. Feb. 17, 2022), the case that the parties were to address in the supplemental briefing here. *See* Dkt. 296. In the *Inventus* case, the defendants similarly requested that the Court permit source code to be produced for review in China. *See* Hr'g Tr. at 15–17, *Inventus Power, Inc. v. Shenzhen Ace Battery Co.*, Case No. 20-cv-3375 (N.D. Ill. Feb. 17, 2022) (Boloori Decl., Ex. 2). The Court rejected that request, "order[ing] that the source code be made available for review in the United States." *Id.* Hytera offers no explanation for why that decision should not be followed here, particularly given the same factors are at play: this is a case pending in the United States and discovery is occurring pursuant to United States laws in the United States. Accordingly, the source code should "be made available for review in the United States." *Id.*

### III. CONCLUSION

For the above reasons, Motorola respectfully submits that the Court decline to exercise its discretion to grant Hytera leave to file its sur-reply. If the Court is inclined to grant leave, the three

points that Hytera raises do not substantively aid its position and should be rejected as, respectively, irrelevant, incorrect, and unworkable.

DATED: September 1, 2023

Respectfully submitted,

 */s/ Akshay Deoras*
Adam Alper (admitted *pro hac vice*)
adam.alper@kirkland.com
Akshay S. Deoras (admitted *pro hac vice*)
akshay.deoras@kirkland.com
Brandon H. Brown (IL Bar No. 266347 CA)
brandon.brown@kirkland.com
KIRKLAND & ELLIS LLP
555 California Street
San Francisco, CA 94104
Telephone: (415) 439-1400
Facsimile: (415) 439-1500

Michael De Vries (admitted *pro hac vice*)
michael.devries@kirkland.com
KIRKLAND & ELLIS LLP
555 South Flower Street, Suite 3700
Los Angeles, CA 90071
Telephone: (213) 680-8400
Facsimile: (213) 680-8500

Ali-Reza Boloori (admitted *pro hac vice*)
ali-reza.boloori@kirkland.com
KIRKLAND & ELLIS LLP
2049 Century Park East, Suite 3700
Los Angeles, CA 90067
Telephone: (310) 552-4200
Facsimile: (310) 552-5900

David Rokach (IL SBN: 6279703)
david.rokach@kirkland.com
KIRKLAND & ELLIS LLP
300 North LaSalle
Chicago, IL 60654
Telephone: (312) 862-2000
Facsimile: (312) 862-2200

Joshua L. Simmons (admitted *pro hac vice*)
joshua.simmons@kirkland.com

9

KIRKLAND & ELLIS LLP
601 Lexington Avenue
New York, NY 10022-4611
Telephone: (212) 446-4800
Facsimile: (212) 446-4900

*Attorneys for Plaintiff*
Motorola Solutions, Inc.

**CERTIFICATE OF SERVICE**

I, Akshay S. Deoras, an attorney, hereby certify that on September 1, 2023, I caused a true and correct copy of the foregoing document to be served via the Court's ECF system upon all counsel of record.

DATED: September 1, 2023

/s/ *Akshay Deoras*
Akshay S. Deoras