IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| MOTOROLA SOLUTIONS, INC., | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | No.  1:17-cv-01972 |
| v. | ) | |
| | ) | District Judge Franklin U. Valderrama |
| HYTERA COMMUNICATIONS CORPORATION LTD., | ) ) | Magistrate Judge Jeffrey I. Cummings |
| | ) | |
| Defendant. | ) | |

**MEMORANDUM OPINION AND ORDER**

Before the Court is defendant Hytera Communications Corporation Ltd.'s ("Hytera") motion for extension of time to produce source code related to its H-Series products, (Dckt. #295), which implicates the application of Chinese law to discovery in this matter.  For the reasons set forth below, Hytera's motion for extension of time is denied.

**I.      RELEVANT BACKGROUND[1]**

Motorola filed this lawsuit in 2017 alleging that Hytera had infringed on seven patents related to digital, two-way radio technologies.  Hytera subsequently brought a counterclaim against Motorola, seeking declarations of invalidity and noninfringement.  (Dckt. #105).

Motorola served its final infringement contentions on August 5, 2020.  These contentions included the redesigned 2019 "i-Series" digital mobile radios ("DMR radios"), for which Hytera had previously produced the source code to Motorola.  (Dckt. #254 at 4).  On or around October 29, 2021, Hytera announced the launch of the "H-Series," yet another line of DMR radios.  (*Id*.).  On January 5, 2023, this Court granted Motorola's opposed motion to amend its final

---

[1] The Court presumes familiarity with the facts of this case and includes only those facts that are relevant to the discovery dispute before the Court.

infringement contentions to include the H-Series and to compel Hytera to produce discovery related to those radios, including source code. (Dckt. #275 at 13). Over Hytera's pending objections to that ruling before the District Court, on March 29, 2023, the Court ordered the parties to proceed with H-Series discovery, including the exchange of technical documents, the production of source code, and Rule 30(b)(6) deposition(s). (Dckt. #291). However, to "minimize the burden and any arguable prejudice to defendant pending the resolution of its objections," the Court directed the parties to proceed with H-Series discovery in a sequenced matter, beginning first with the exchange of technical documents by May 17, 2023. (Dckt. #289 & #291). With respect to the H-Series source code, the Court directed Hytera to "make its source code available by 6/7/23 for six weeks (through 7/19/23)." (Dckt. #291).

The parties proceeded with H-Series discovery as directed and, as of May 10, 2023, Hytera intended to make the source code related to the H-Series products available. (Dckt. #294). On May 24, 2023, Motorola's counsel e-mailed defense counsel to discuss the logistics of the source code production so that Motorola's source code reviewers could make necessary travel plans. (Dckt. #298-1 at 8-9). On June 2, 2023, defense counsel confirmed that the source code would be made available from June 7 through July 19, 2023 at counsel's Cleveland office. (*Id*. at 7-8).

However, on June 7, 2023 – the deadline for production of the H-Series source code – Hytera filed its motion for extension of time to produce the code, asserting, for the first time, that despite its diligent efforts to prepare the code "for inspection in the United States," it had not yet received "authorization from the government of the People's Republic of China" to do so.

2

(Dckt. #295 at 2). In its motion, Hytera sought an indefinite extension of time to produce the code while it continued to work to obtain the necessary permission under Chinese law.[2]

Recognizing the potential dispute regarding the application of Chinese law, the Court ordered the parties to file simultaneous briefs (and response briefs) "addressing whether provisions of Chinese law should impact this Court's order regarding the production of the source code given that discovery in this case is governed by the Federal Rules of Civil Procedure." (Dckt. #296). The Court specifically directed the parties to this Court's prior decision in *Inventus Power v. Shenzhen Ace Battery*, 339 F.R.D. 487 (N.D.Ill. 2021). In that case, this Court addressed whether discovery should proceed under the Federal Rules of Civil Procedure or – as the Chinese corporate defendant requested – under the Hague Convention to protect the defendant from violating various Chinese cyber security laws. Ultimately, the Court concluded that the defendant failed to show "that the sovereignty issues at stake and the principles of comity favor[ed] the application of the Hague Convention," and directed the parties to proceed with discovery under the Federal Rules, notwithstanding any potential violation of Chinese law or any potential sanctions that might result from such a violation. *Inventus*, 339 F.R.D. at 498.

As directed, the parties reviewed this Court's opinion in *Inventus* and have since submitted simultaneous briefs, (Dckt. #297 & #298), response briefs (Dckt. #303 & #304), a sur-reply, (Dckt. #314-1), and a response thereto, (Dckt. #320). For its part, throughout its submissions, Hytera attempts to distinguish this matter from this Court's ruling in *Inventus* and

---

[2] Attached to Hytera's motion is a Chinese version of Hytera's "application to the Chinese government for the required security assessment and permissions to export those specific code files to the United States." (Dckt. #295 at 3 & #295-1). Motorola has since submitted an English translation of that application, which reveals that Hytera submitted the application to the "Guangdong Provincial Internet Information Office" on May 31, 2023. (Dckt. #298-1 at 12-14).

3

asks the Court to postpone its production of the "marginally relevant" H-Series source code until it is "authorized by the Chinese government so that Hytera is not unfairly forced to choose between being sanctioned by this Court or by the Chinese government." (Dckt. #297 at 5, 13). Motorola, on the other hand, asserts that this Court's reasoning in *Inventus* "controls, and confirms that the Federal Rules of Civil Procedure – not Chinese laws – apply to discovery in this case." (Dckt. #298 at 7). For the reasons set forth below, the Court agrees with Motorola.

## II. ANALYSIS

### A. Standard to determine whether Chinese law precludes Hytera's production of the H-Series source code.[3]

"Foreign laws that block the production of discoverable material do not automatically excuse a party from its Rule 26 obligations." *Philips Medical Systems (Cleveland), Inc. v. Buan*, No. 19 CV 2648, 2022 WL 602485, at *2 (N.D.Ill. Mar. 1, 2022). Indeed, as this Court addressed in detail in *Inventus*, "[i]t is well settled that [foreign] statutes do not deprive an American court of the power to order a party subject to its jurisdiction to produce evidence even though the act of production may violate that statute." *Inventus*, 339 F.R.D. at 500, *quoting Société Nationale Industrielle Aérospatiale v. U.S. Dist. Ct. for S. Dist. of Iowa*, 482 U.S. 522, 544 n.29 (1987). However, in "recognition of the potential liability a party fulfilling its discovery obligations could face for violating foreign law, courts 'should exercise special vigilance to protect foreign litigants from the danger that unnecessary, or unduly burdensome, discovery may place them in a disadvantageous position.'" *Philips*, 2022 WL 602485, at *2, *quoting Aérospatiale*, 482 U.S. at 546.

---

[3] Hytera contends that "it is not asking the Court to choose between one set of rules or another," but rather to simply "postpone" the production of the source code. (Dckt. #297 at 13). However, Hytera's request for an indefinite extension of time and the positions asserted in its submissions reveal that the underlying nature of its request is to essentially avoid production of the H-Series source code entirely. As such, to avoid further delay in this 2017 case, the Court proceeds accordingly.

4

In exercising this vigilance, courts apply a two-step process. First, the party seeking to block discovery – here, Hytera – must show that foreign law "actually bars the production at issue." *Republic Techs. (NA), LCC v. BBK Tobacco & Foods*, No. 16 CV 3401, 2017 WL 4287205, at *1 (N.D.Ill. Sept. 27, 2017). If the court determines that the foreign law in question blocks production of the discovery, the Court moves to the second step and must weigh the interests of the United States and those of the foreign state. *Inventus*, 339 F.R.D. at 501. To do so, district courts are tasked with balancing the following five factors "relevant to any comity analysis," and drawn from the Supreme Court in *Aérospatiale*:

> (1) the importance to the investigation or litigation of the documents or other information requested;
>
> (2) the degree of specificity of the request;
>
> (3) whether the information originated in the United States;
>
> (4) the availability of alternative means of securing the information; and
>
> (5) the extent to which noncompliance with the request would undermine important interests of the United States, or compliance with the request would undermine the important interests of the state where the information is located.

482 U.S. at 544 n.28 (citing Restatement (Third) of the Law of Foreign Relations §442 (1987)); *see also Reinsurance Co. of America, Inc. v. Administratia Asigurarilor de Stat,* 902 F.2d 1275, 1281-83 (7th Cir. 1990) (relying on the same factors to determine whether Romanian law barred production of discovery). Some courts, including this Court in *Inventus*, also consider two additional factors: "[6] the hardship of compliance on the party or witness from whom discovery is sought; and [7] the good faith of the party resisting discovery." *Inventus*, 339 F.R.D. at 505 (citing *Laydon v. Mizuho Bank, Ltd.*, 183 F.Supp.3d 409, 419-20 (S.D.N.Y. 2016) and *Sun Grp.*

*U.S.A. Harmony City, Inc. v. CRRC Corp. Ltd.*, No. 17-CV-02191-SK, 2019 WL 6134958, at *4 (N.D.Cal. Nov. 19, 2019)).

Applying this two-step analysis here, the Court concludes – as in *Inventus* – that Hytera has satisfied the first step but has failed to show at the second step "that the sovereignty issues at stake and the principles of comity" weigh in favor of barring the production of the source code. *Inventus*, 339 F.R.D. at 498.

> **B. Hytera has met its burden to show that Chinese law – particularly, Article 37 of the Cybersecurity Law – blocks the production of the H-Series source code absent approval by Chinese authorities.**

Under the governing test, Hytera must first show that Chinese law "actually bars" the discovery at issue, i.e., the production of the H-Series source code for review in the United States. *Inventus*, 339 F.R.D. at 499 (citing *Wultz v. Bank of China Ltd.*, 942 F.Supp.2d 452, 460 (S.D.N.Y. 2013)). To do so, Hytera "must provide the Court with information of sufficient particularity and specificity to allow the Court to determine whether the discovery sought is indeed prohibited by foreign law." *Inventus*, 339 F.R.D. at 499 (citation omitted). The party must describe, among other things, "the provisions of the foreign law, the basis for its relevance, and the application of the foreign law to the facts of the case." *Id.* In determining whether foreign law bars the discovery, courts may "consider any relevant material or source, including testimony, whether or not submitted by a party or admissible under the Federal Rules of Evidence." *Philips*, 2022 WL 602485, at *3; Fed.R.Civ.P. 44.1; *see also Bodum USA, Inc. v. La Cafetiere, Inc.*, 621 F.3d 624, 628 (7th Cir. 2010) (directing trial courts to "use the best of the available sources").

Here, Hytera argues that two Chinese data security laws preclude the production of the H-Series source code without approval from the Chinese authorities, namely: (1) Article 36 of the Data Security Law ("DSL"); and (2) Article 37 of the Cybersecurity Law ("CSL").[4]

Article 36 of the DSL provides, in relevant part:

> The competent authorities of the People's Republic of China shall handle requests for data *made by foreign judicial or law enforcement authorities*, in accordance with the relevant laws and international treaties or agreements concluded or acceded to by the People's Republic of China, or in accordance with the principles of equality and reciprocity. Without the approval of the competent authorities of the People's Republic of China, organizations or individuals in the People's Republic of China *shall not provide data stored within the territory of the People's Republic of China to any overseas judicial or law enforcement body.*

Art. 36, Data Security Law of the PRC, June 10, 2021 (Dckt. #297-2 at 48) (emphasis added).

Article 37 of the CSL provides:

> Critical information infrastructure operators that gather or produce personal information or important data during operations within the mainland territory of the People's Republic of China, shall store it within mainland China. Where due to business requirements it is truly necessary to provide it outside the mainland, they shall follow the measures jointly formulated by the State cybersecurity and informatization departments and the relevant departments of the State Council to conduct a security assessment; where laws and administrative regulations provide otherwise, follow those provisions.

Art. 37, Cybersecurity Law of the PRC, June 1, 2017. (Dckt. #297-2 at 14). Even more recently, in 2022, China issued additional guidelines for complying with its data security laws, including the DSL and the CSL, titled "Outbound Data Transfer Security Assessment Measures," (Dckt. #297-2 at 69-76), and "Guidelines for Identification of Critical Data," (Dckt. #297-2 at 84-90).

According to Hytera, it has met its burden to show that both Article 36 of the DSL and Article 37 of the CSL – as further clarified by the updated guidelines – preclude it from

---

[4] Throughout its submissions, Hytera also cites to the "Personal Protection Law of the People's Republic of China," but, as Motorola argues, Hytera has not substantively addressed the application of that law to the source code here.

producing the H-Series source code without prior approval from Chinese authorities. The Court agrees, but only with respect to Article 37 of the CSL.

> 1. **Hytera has *not* met its burden to show that Article 36 of the DSL blocks the production of the H-Series source code.**

Again, under Article 36 of the DSL, a Chinese company must obtain approval from the appropriate Chinese authorities before it produces data stored in China in response to requests "*made by foreign judicial or law enforcement authorities*." (Dckt. #297-2 at 48). However, as recently explained by a court in this District which reviewed Article 36 of the DSL:

> Unlike in civil law jurisdictions where the judge takes a leading role in collecting evidence, discovery requests and responses thereto in the American common law system are traded between the parties. While the court oversees the process, it does not make the request and is not involved in the stewardship or use of the exchanged information – in other words, the data is not provided to the U.S. court. On its own terms, therefore, the DSL's review and approval requirements [of Article 36] do not appear to apply to the American civil discovery process.

*Philips*, 2022 WL 602485, at *6 (internal citations and quotations omitted). Although other district court opinions are not binding on this Court, the Court finds this reasoning persuasive and reaches the same result here. *Beezley v. Fenix Parts, Inc.*, 328 F.R.D. 198, 204 (N.D.Ill. 2018) ("Even decisions of other district courts in the same district are not 'binding,' although they may be persuasive.").

Indeed, it is not the Court that requested the production of the H-Series source code, nor will the Court be reviewing that source code upon its production.[5] More importantly, Hytera has not directed the Court to any case where a court has held that Article 36 of the DSL blocks the production of Chinese data in the context of the exchange of discovery between the parties. As

---

[5] Hytera's attempt to turn an order from this Court compelling production of the source code into a "judicially-initiated request" that would fall under the purview of Article 36 is disingenuous at best. (Dckt. #303 at 4-5). At bottom, Motorola – which initially requested the production of the H-Series source code – only now requires assistance from the Court after Hytera refused, yet again, to produce the source code.

such, Hytera has not met its burden to show that Article 36 of the DSL bars the production of H-Series source code.

### 2. Hytera *has* met its burden to show that Article 37 of the CSL blocks the production of the H-Series source code.

With respect to Article 37 of the CSL, however, the Court reaches the opposite result. Again, Article 37 requires "critical information infrastructure operators that gather or produce . . . important data" to follow certain guidelines, including conducting a security assessment, before providing that data outside of mainland China. In support of its position that Article 37 applies to the production of the source code, Hytera has submitted: (1) the declaration of Chinese attorney Jiajie Huang, who specializes in cybersecurity and data security laws, (Dckt. #297-1 at 1-6); and (2) a recent letter from the "Commerce Bureau of Shenzhen Municipality on Alert of Risk of Outbound Data Transfer," (Dckt. #314-2 at 3-4).

The Court finds – over Motorola's objections – that Hytera's submissions are sufficient to meet its burden that Article 37 and the subsequent guidelines block the production of source code absent express permission. Specifically, Huang's declaration and the Commerce Bureau's letter confirm that "source code in respect of DMR-two way radios and base stations constitutes critical data affecting national security," within the meaning of the recent guidelines and thereby potentially implicating Chinese data laws, including the CSL. (Dckt. #314-3 at 3). The letter further warns that the transfer of such data "involves significant risks." (*Id.*).

Although the Court is not required to adopt China's interpretation of its own laws, *see Animal Sci. Prod., Inc. v. Hebei Welcome Pharm. Co.*, 138 S. Ct. 1865, 1873 (2018), it may "consider any relevant material or source." Fed.R.Civ.P. 44.1. Having reviewed Hytera's evidence here, the Court concludes, as in *Inventus*, that the declaration and letter from Chinese authorities regarding the source code at issue satisfies its burden to show Article 37 is a blocking

9

statute. *See Sun Grp.*, 2019 WL 6134958, at *6 ("In light of Wei's declaration and the letter by the Chinese Ministry of Justice on this specific issue, the Court finds that Defendant has demonstrated that producing documents located in the PRC in response to Plaintiff's discovery requests would violate [Chinese Law].").

This finding does not, however, end the inquiry. "Instead, the Court must turn to the second step of the analysis to balance the interests of the United States and those of the foreign state." *Inventus*, 339 F.R.D. at 501.

### C. Hytera has failed to show that the comity factors weigh in favor of withholding the source code.

After arguing that Chinese law serves to block the production of the H-Series code, Hytera walks through each of the comity factors, attempting to demonstrate that – unlike in *Inventus* – they weigh against the production of the code. Respectfully, the Court disagrees.

#### 1. The importance to the investigation or litigation of the documents/information requested

This factor warrants little attention as the importance and relevance of the H-Series source code to Motorola's infringement contentions has already been firmly established in this litigation. As explained above, *supra* at Section I(A), this Court has now *twice* directed Hytera to produce the H-Series source code: first, in granting Motorola's motion to amend its final infringement contentions and permitting relevant discovery, including source code, (Dckt. #275 & #309); and second, in directing the parties to proceed with H-Series discovery in a sequenced matter, which included the production of the source code as the second step. The Court finds no reason to reconsider its prior orders and Hytera's attempts to now "moot" the relevance of the H-Series code fall short for the following reasons.

10

First, Hytera's assertion – made in its June 6, 2023 submission – that it "intends to file shortly a motion for summary judgment of non-infringement by the H-Series products," (Dckt. #297 at 15), does not serve as a basis to further delay the twice-ordered source code. Not only is there no such motion on file – now, over three months later – but even if such a motion had been filed, this Court would be highly unlikely to exercise its discretion to grant a stay of H-Series discovery pending the motion's resolution in this 2017 case. *Cent. States, Se. & Sw. Areas Pension Fund v. Waste Mgmt. of Michigan, Inc.*, 674 F.3d 630, 636 (7th Cir. 2012) (noting that "district courts enjoy broad discretion in controlling discovery.").

Second, Hytera's subsequent production of technical documents related to the H-Series products does not excuse it from producing the source code. Not only does Motorola dispute that Hytera has produced responsive H-Series technical documents, (*see* Dckt. # 304 at 11, n.4), but this Court's orders permitting H-Series discovery did not include a permissive option for Hytera to pick and choose between one category of H-Series discovery or the other. Instead, this Court ordered sequenced H-Series discovery to include documents, source code, *and* depositions. (Dckt. #289 & #291). Similarly, Hytera's offer to permit an inspection of the radio itself does not moot this Court's ruling that the H-Series source code is discoverable in this matter, which – following the District Court Judge's recent order overruling Hytera's objections – undoubtedly includes the H-Series products. (Dckt. #309 (overruling Hytera's objections to this Court's order allowing Motorola to amend its infringement contentions to include the H-Series and to take discovery related thereto)).

Finally, Hytera's representation that there is no functional difference between its i-Series products – for which it previously produced the source code – and its H-Series products is an insufficient basis to withhold the H-Series code. Not only did Hytera previously refuse to make

11

such a representation, (*see* Dckt. #254 at 6), but Motorola should not be forced to simply rely on Hytera's representations regarding the functionality of the H-Series. And in fact, Hytera's prior production of the i-Series source code – without objection – and its recent offer to produce the H-Series code in *China* with certain parameters, (*see* Dckt. #315-4),[6] further undermine its effort to now deem irrelevant the H-Series source code – which Hytera now asserts is functionally equivalent to the previously produced i-Series code.

In sum: having already ruled that the H-Series source code is relevant, it is not for Hytera to now serve as the arbiter as to just *how* relevant the source code is. The source code is important to this litigation, and this factor weighs in favor of production. *See Inventus*, 339 F.R.D. at 501; *Richmark Corp. v. Timber Falling Consultants*, 959 F.2d 1468, 1475 (9th Cir. 1992) ("Where the evidence is directly relevant . . . we have found this factor to weigh in favor of disclosure.") (internal quotation and citation omitted).

### 2. The degree of specificity of the request

Contrary to Hytera's unsupported assertion otherwise, the specificity of Motorola's request is undeniable.[7] Because the request for source code at issue is limited to the H-Series products – now plainly at issue in this litigation – this factor favors production of the code. *Inventus*, 339 F.R.D. at 502; *Trueposition, Inc. v. LM Ericsson Tel. Co.*, No. CIV.A. 11-4574,

---

[6] In particular, Hytera offered to make the H-series source code available for review in China by an expert with Chinese citizenship so long as the review followed Chinese data export laws. (Dckt. #315-4 at 2). Motorola rejected this proposal on the grounds that it is "fundamentally unworkable" and "unduly prejudice to Motorola." (Dckt. #320 at 9-10). Furthermore, as Motorola notes, this Court rejected the *Inventus* defendant's analogous proposal to have its source code reviewed in China as opposed to in the United States as the plaintiff sought. *See Inventus Power, Inc. v. Shenzhen Ace Battery Co.*, No. 20-cv-3375 (N.D.Ill.) (2/17/22 hearing transcript) (Dckt. #259 at 15-19).

[7] Although in its objections before the District Court Judge, Hytera argued that the source code should be "narrowly tailored to the modules that are truly relevant to the accused features' functionality," (Dckt. #276 at 16), it did not further elaborate on that position here and – more importantly – the District Court Judge has since overruled Hytera's objections, (Dckt. #309).

2012 WL 707012, at *5 (E.D.Pa. Mar. 6, 2012) ("The discovery requests are specific and adequately tailored to the jurisdictional issue at hand.").

         **3.**        **Whether the information originated in the United States**

Hytera maintains that the "source code was created in China and is securely stored in China," which weighs in its favor. In response, Motorola does not concede this factor, instead arguing that the code *could* have originated elsewhere to the extent it is based on *Motorola's* code. Nonetheless, to the extent that the source code for the H-Series products – infringing or not – was created in and is currently maintained in China (hence the instant dispute), this factor weighs slightly against production of the code. *See Inventus*, 339 F.R.D. at 502.

         **4.**        **The availability of alternative means of securing the information**

As the Court explained in *Inventus*, under this factor "if the information sought can easily be obtained elsewhere, there is little or no reason to require a party to violate foreign law." *Inventus*, 339 F.R.D. at 502 (citing *Milliken & Co. v. Bank of China*, 758 F.Supp.2d 238, 247 (S.D.N.Y. 2010)). "Conversely, if the information cannot be easily obtained through alternative means, this factor is said to counterbalance the previous factor – the location of the documents and information – and weighs in favor of disclosure." *Inventus*, 339 F.R.D. at 502 (internal quotations and citation omitted).

Here, Hytera again argues that it should not be required to produce the code because Motorola can obtain the same information through the previously produced technical documents and source code for the i-Series products. For the same reasons as described above, *supra* at Section II(C)(1), the Court rejects this rationale. To reiterate, not only is it still in dispute whether all of the responsive documents have been produced, but the Court has already determined that the appropriate scope of H-Series discovery includes the source code, which is

13

solely in Hytera's possession. As there is no alternative means to obtain the source code, this factor weighs in Motorola's favor.

> **5. The extent to which noncompliance with the request would undermine important interests of the United States, or compliance with the request would undermine the important interests of the state where the information is located.**

The last factor – the balancing of the national interests of the United States and China – "is the most important, as it directly addresses the relations between sovereign nations." *Inventus*, 339 F.R.D at 504, *quoting Wultz*, 910 F.Supp.2d at 558 (citation omitted). When examining this factor, courts should engage in a "particularized analysis of the respective interests of the foreign nation and the requesting nation." *Inventus*, 339 F.R.D at 504, *quoting Nike, Inc. v. Wu*, 349 F.Supp.3d 310, 335 (S.D.N.Y. Sept. 25, 2018), *aff'd*, 349 F.Supp.3d 346 (S.D.N.Y. 2018). Doing so here clearly tips this factor in Motorola's favor, despite Hytera's attempt to otherwise distinguish the Chinese interests at issue.

First, the Court's reasoning in *Inventus* applies firmly to this case, which, like *Inventus*, involves the United States, China, and the protection of intellectual property. As the Court explained in *Inventus,* the United States "has a substantial interest in vindicating the rights of American plaintiffs," "an overriding interest in the just, speedy, and inexpensive determination of litigation in its courts," an "obvious interest in having its own procedural rules applied to discovery," and a "significant interest in protecting its own trade secrets and intellectual property." *Inventus*, 339 F.R.D. at 504 (internal quotations and citations omitted). On the other hand, China "has a significant national interest in ensuring that its citizens abide by its laws." *Id*.

Upon balance of these interests, as in *Inventus*, this factor weighs in Motorola's favor. First, the United States's interest in protecting its intellectual property outweighs China's interest

14

in preventing its corporations from violating its data security laws. Indeed, as a court in this District recently elaborated, at least with respect to Article 36 of the DSL:

> Defendants' "understanding" of the DSL would give the Chinese Supreme People's Court broad power to delay or prevent discovery in American courts. Such an interpretation would in essence permit the Chinese judiciary to oversee discovery decisions made by American courts regarding the responsibilities of Chinese litigants. The DSL therefore would not represent a Chinese sovereign interest in the nondisclosure of specific material, but rather an attempt to insert a Chinese court into the American legal process for the potential benefit of Chinese litigants. Not only would such a law infringe upon the sovereignty of the United States, see U.S. CONST. art. III; 28 U.S.C. § 1331, but it would also severely disadvantage parties opposing Chinese litigants in American courts. As a result, the United States has a strong interest in not limiting discovery because of the DSL.

*Philips*, 2022 WL 602485, at *6.

Moreover, Hytera's attempt to distinguish this matter from *Inventus* because the source code here includes technology also used in critical infrastructure in China – thus implicating national security concerns – is not persuasive on the record before the Court for two reasons. First, Hytera has previously produced the i-Series source code, which – *by its own representation* – is functionally equivalent to the H-Series code. Consequently, it is difficult to understand how Hytera's production of the H-Series source code will pose a different risk – let alone, a greater risk – to China's national security than has already been created by Hytera's production of the i-Series source code. Second, Hytera's offer to voluntarily produce the H-series source code for inspection, albeit in China, (*supra*, at n.6), further belies Hytera's contention that allowing Motorola to access the code will damage China's national security.

### 6. Two additional factors regularly considered in other Circuits

As the parties acknowledge, courts – including this one – also consider two additional factors: namely, the hardship of compliance on the party or witness from whom discovery is sought; and the good faith of the party resisting discovery. *Inventus*, 339 F.R.D. at 505; *Laydon*,

15

183 F.Supp.3d at 419-20; *Sun Grp.*, 2019 WL 6134958, at *4. These factors also weigh against Hytera's position.

With respect to the hardship of compliance "this factor is concerned primarily with any sanctions or criminal penalties a foreign defendant may suffer in its own country for complying with a discovery request in a United States court." *Inventus*, 339 F.R.D. at 505. Here, Hytera cites to China's recent $1.2 billion sanction on ride share company Didi for violation of Chinese data security laws and implies that it too could face steep sanctions. However, by its own admission, the Chinese laws used to sanction Didi "are *not* the same as those at issue here." (Dckt. #297 at 18 (emphasis added)). Furthermore, Hytera has not provided any evidence of a Chinese individual or company being penalized for the production of documents or data for use in discovery in U.S. litigation. *See Inventus*, 339 F.R.D. at 505.

As for Hytera's "good faith," it is notable that Hytera waited until the eleventh hour to first raise *any* concern regarding the application of Chinese data security laws. Indeed, despite having applied for permission from the Chinese authorities on May 31, 2023 (two months after the Court first ordered production of the code), Hytera informed Motorola on June 2 that the code would be produced in Cleveland by the June 7 deadline. In doing so, Hytera made *no* mention of its pending request for permission from the Chinese government. Instead, Hytera waited until the deadline itself to first raise this issue with Hytera and the Court. At a minimum, Hytera's inexplicable delay in raising what it now asserts is an impenetrable barrier to producing the H-Series source code in the United States tilts this final factor in Motorola's favor.

In sum: upon review of all of the factors, only one of which weighs in Hytera's favor, the Court will adhere to its prior ruling in *Inventus* and it finds, over Hytera's objections, that the

Federal Rules of Civil Procedure require Hytera to produce the H-Series source code to Motorola in the United States.

## CONCLUSION

For the foregoing reasons, Hytera's motion for extension of time to produce H-Series source code, (Dckt. #295), is denied. Hytera is directed to make the H-Series source code available for Motorola's review in the United States for a six-week period beginning on September 26, 2023. The Court expects that the parties will meet and confer regarding the location and logistics of the source code production and review. By October 12, 2023, the parties shall file a joint status report confirming that Hytera has made the source code available for review and proposing an agreed deadline for the completion of the remaining H-Series discovery.

**DATE: September 12, 2023**

**Jeffrey I. Cummings**
**United States Magistrate Judge**