**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | | |
|---|---|---|
| MOTOROLA SOLUTIONS, INC.<br><br>Plaintiff,<br><br>v.<br><br>HYTERA COMMUNICATIONS CORPORATION LTD.<br><br>Defendants. | ) | Case No. 1:17-cv-01972<br><br>Honorable Franklin U. Valderrama<br>Magistrate Judge Jeannice W. Appenteng<br><br>**PUBLIC VERSION—REDACTED** |

**RESPONSE TO MOTOROLA'S OPPOSED MOTION TO HOLD HYTERA IN CONTEMPT**

# TABLE OF CONTENTS


I. INTRODUCTION ........ 1

II. BACKGROUND ........ 7

III. ARGUMENT ........ 7

A. Hytera's placement of the entire H-Series code into escrow renders Motorola's motion unnecessary ........ 8

B. Hytera did not violate any Court Order ........ 8

1. The Court did not order Hytera to produce the *entire* H-Series source code, which Motorola does not dispute contains a vast amount of irrelevant code ........ 8

2. Hytera did not violate the Order requiring it to produce H-Series source code ........ 11

C. Motorola has not demonstrated it is entitled to a preliminary injunction ........ 14

IV. CONCLUSION ........ 15

# TABLE OF AUTHORITIES

**Cases**

*APC Filtration, Inc. v. Becker*, No. 07-CV-1462, 2010 WL 4930688 (N.D. Ill. Nov. 30, 2010) 14

*Brocade Communications Systems, Inc. v. A10 Networks, Inc.*, 2011 WL 13397353, at *2 (N.D. Cal. Sep. 6, 2011)........ 10

*F.T.C. v. Trudeau*, 579 F.3d 754 (7th Cir. 2009)........ 14

*Oberloh v. Eclips Hair Design, Inc.*, No. 3:10–CV–497, 2015 WL 1064609 (N.D. Ind. Mar. 11, 2015)........ 7

*Radio One, Inc. v. Direct Media Power, Inc.*, 2018 WL 4685470 (N.D. Ill. 2018)........ 13

*S.E.C. v. Hyatt*, 621 F.3d 687 (7th Cir. 2010)........ 7, 8, 11

**Rules**

Fed. R. Civ. P. 26(b)(1)........ 10

## I. INTRODUCTION

Motorola takes a dormant dispute over the scope of production, and after two months of complete silence, escalates it into a contempt motion seeking an extraordinary worldwide injunction—the very injunction it was denied in its trade secret action against Hytera. Given this backdrop, it is not surprising that Motorola's motion falls far short of meeting the high standard for demonstrating contempt. This disagreement is actually about the scope of the ordered production of Hytera's H-Series code—not the flaunting of an unambiguous order. To focus the parties on the actual dispute, ***Hytera is in the process of placing the entire H-Series code into escrow in the United States.*** Once this Court unambiguously determines the scope of what is to be produced, ***the escrow agent will produce that corresponding code without objection from Hytera.***

Despite stipulating it only needed "***targeted and limited discovery into the source code***" (Dkt. #254, p. 9) (emphasis added), it now claims a footnote in the Court's denial of Hytera's Objections to Motorola's Motion to Amend Its Infringement Contentions (Dkt. 309, p. 4, n. 2) somehow supports a new, contradictory position requiring wholesale production of the code. When initially ordering production of the H-Series source code, the Court held:

> ***Motorola's stipulation*** that any additional discovery would be ***'targeted' and 'limited,'*** (Dckt. #254 at 11), further assures this Court that ***Motorola will tailor its requests*** to seek only information that is clearly ***relevant and important to its infringement claims.***"

(Dkt. #275, p. 13.) (Emphasis added.) Motorola ignores its own repeated stipulation about what discovery it claimed it needed—a stipulation the Court apparently relied on in fashioning its limited order that Hytera produce the H-Series Code—and misreads a footnote to morph the "targeted" production into the entire code. Thus, the real issue is the scope of the Court's production order: ***the entire H-Series code versus code "targeted" and "limited" to the patented***

***features of the four patents the H-Series is alleged to infringe***. Once the Court determines that scope, the order it issues will be the trigger for the escrow agent to release the so ordered code.

Using the Court's January 5, 2023 order (Dkt. #275) as a guide, Hytera produced the H-Series code related to the accused features on September 26, 2023, and supplemented the production on November 16, 2023, after an extensive meet and confer process between the parties. In total, Hytera has produced hundreds of thousands of lines of source code. Hytera has not violated any Court Order and believes it has met the threshold of substantial compliance while also making a reasonable and diligent effort to comply. Motorola was even completely silent for almost two months after the November production before raising this issue. Motorola's months of silence after Hytera worked with Motorola in supplementing the code production belies Motorola's draconian injunction request.

Nothing here warrants a contempt finding, let alone a worldwide injunction as a sanction. Importantly, contempt sanctions are meant to coerce compliance. But by placing the code into escrow, no "coercion" is necessary, and the punitive nature of the injunction Motorola seeks is not permitted by the Rules of Civil Procedure. Hytera believes its production has been consistent with this Court's requirement of targeted and limited H-Series discovery and Motorola's representations about the scope of source code it needed. The Court should resolve the ambiguity in the orders and Hytera should not be held in contempt. And again, by placing the entire code into escrow pending production, Hytera has even addressed the unwarranted concerns of Motorola—a production that was never required by any court order.

## II. BACKGROUND

Motorola filed this patent infringement case against Hytera as well as a "companion" trade secret case in March 2017. That month, Motorola also requested that the International

Trade Commission (ITC) investigate whether Hytera infringed the patents asserted in this suit. By law, this case was stayed until the ITC finished its investigation. The trade secret case proceeded to trial where the jury found trade secret misappropriation, but the Court denied Motorola's request for a permanent, worldwide injunction. That case is on appeal. In this case, discovery and claim construction briefing proceeded.

**<u>H-Series Discovery</u>**

The evening before the close of fact discovery, Motorola demanded discovery from Hytera on an entirely new line of Hytera wireless radios called the H-Series. Motorola also sought to add the H-Series into its trade secret case (where a jury verdict had issued in February of 2020), but those attempts were denied. *See Motorola Solutions, Inc. v. Hytera Commc'ns Corp. Ltd.*, Case No. 1:17-cv-01973, 2022 WL 1670019, at *4 (N.D. Ill. Apr. 12, 2022). Here, on March 14, 2022, Motorola moved to amend its infringement contentions and compel written H-Series discovery and the H-Series code. (Dkt. #254.) In granting this motion, the Court relied on "***Motorola's stipulation***" that H-Series discovery, including production of the code, would be '***targeted' and 'limited***' to only information ***"that is clearly relevant and important to its infringement claims***." (Dkt. #275, p. 13) (emphasis added)).

Hytera lodged objections to Judge Cummings' order with Judge Valderrama and moved the magistrate to stay the order to produce in lieu of the objections—a stay that was denied. In responding to Hytera's objections to the Magistrate Judge's order, Motorola reiterated its previous promise of targeted discovery: "Hytera should provide . . . the full set of source code ***involved in carrying out the accused functionality***." (Dkt. #279, p. 14 (emphasis added).) Since discovery had to proceed despite the pending objections, the parties conducted several meet and confers with a June 7, 2023, deadline for Hytera to make the code available for

inspection. (Dkt. #291.) On May 10, 2023, the Parties filed a ***Joint*** Status Report updating the Court on the status of H-Series discovery including this inspection date, confirming Motorola's understanding (as well as Hytera's) that Hytera would be producing only the code relevant to Motorola's infringement claims: "Hytera will make the source code ***related to the accused features on the H-Series products available for review*** . . . ." (Dkt. #293, p. 1 (emphasis added).)

On June 7, 2023, Hytera moved to extend the inspection date.[1] While that motion was pending, on July 18, 2023, Judge Valderrama overruled Hytera's objections including note 2, where the court stated that "to the extent Hytera asks the Court to narrowly tailor the discovery requests of Motorola relating to the H-Series through its Objections, the Court declines to interfere with discovery management which has been referred to Judge Cummings . . . ." (Dkt. #309.) On September 12, 2023, Judge Cummings denied the motion to extend opining that Motorola's H-Series request was narrowly tailored and noted in a footnote that while Hytera had argued that production should be narrowly tailored, "it did not further elaborate that position here—more importantly—the District Court Judge has since overruled Hytera's objections." Again, this footnote appears in a section finding that Motorola had specific discovery requests—probably relying on Motorola's stipulation and other representations that it only sought the code related to the patents at issue.

Hytera produced the code related to the accused features beginning on September 26. Hytera produced 34 files and over 100,000 lines of source code. Motorola's two experts and their assistants commenced reviewing that very day. Their review lasted for eight days and over 60 hours of review. After completing this extensive review and despite its previous stipulation on

[1] Hytera moved to extend the deadline so it could receive authorization to produce the source code from the government of the People's Republic of China in view of a pending security assessment. (Dkt. #295.)

"targeted" discovery, Motorola requested Hytera's ***full set*** ***of H-Series source code***, claiming that the September 26 production was incomplete, including because the production did not include source code files related to [redacted] (Dkt. #339-1, 9-30-23 Boloori Email.) Hytera offered to meet and confer, hoping to resolve the issue. The Parties met and conferred on October 4, where Motorola contradicted its stipulation to the Court and demanded the entire code, while Hytera addressed the confusion from the various orders on scope of production. (*Id.*, 10-6-23 Alexander Email.) On October 13, the Parties filed another Joint Status Report where Motorola complained that Hytera's production was incomplete and threatened to move for contempt. (Dkt. #339.) That same day, Judge Cummings directed the Parties "to continue to meet and confer in an effort to resolve their disputes related to Hytera's recent production of certain source code[.]" (Dkt. #340.)

Motorola was initially silent after the October 13 Order, including nothing on its contempt threat. On October 31, 2023, Motorola sent a letter with a list of purported code files it said were missing and "were necessary to understand the code relating to the accused functionalities[.]" (Dkt. #353-2.) On November 9, Hytera responded and agreed to supplement its production with another set of source code related to [redacted], which Motorola previously identified. (Dkt. #343-2.) On November 13, Motorola requested again to review the code starting on November 16. (Ex. A, 11-13-23 Dou Email.) Hytera produced code on that day, which Motorola's two experts spent another 15 hours reviewing.

***Then, seven weeks of complete silence passed***. For almost two months, there was no peep from Motorola—no complaints and no objections—regarding the adequacy of Hytera's production. Understandably, this gave the impression that the review was complete and satisfactory to Motorola. Then out of the blue, on January 5, 2024, Motorola wrote to Hytera

declaring the parties at an "impasse" and stating Motorola's intention to move for contempt. (Ex. B, 1-5-24 Singh Email.) Hytera attempted to set a meet and confer and the parties had a running exchange of correspondence. Ultimately, however, Motorola gave an ultimatum to Hytera: produce the entire H-Series code despite Motorola's previous "stipulation" or face a contempt motion.

Motorola never adequately explained the seven-week delay, but within a few hours of Hytera again requesting a meet and confer on January 12, 2024, Motorola filed the present motion. The motion included a 21-page declaration from its expert, Dr. Nielson, purporting to explain why Hytera's substantial source code production was somehow insufficient and how, despite Motorola's contrary stipulation to the Court, the entire code was required. (*See* Dkt. #353.) Dr. Nielson's declaration is facially suspect. For instance, he opines that code is missing from patents that were not even asserted against the H-Series calling into question his credibility.

Hytera promptly requested dates to depose Dr. Nielson, which Motorola ignored. (Dkt. #356-1.) After a third request, Motorola finally responded but refused to reasonably make him available or agree to an extension to allow Hytera to take the deposition. (*See id.*) Motorola only offered a short deposition on a date that Hytera's counsel was unavailable. Motorola steadfastly refused to offer any other date, so Hytera moved to compel the deposition and extend its deadline for responding. (*See id.*) Hytera's motion was denied in part, requiring Hytera to file this response by February 1, 2024 without the opportunity to depose Dr. Nielson. (Dkt. #359.)

**<u>The Patents Asserted Against the H-Series</u>**

Of the seven patents at issue in this case, Motorola only alleges that the H-Series infringes four: the '701, '869, '284 and '169 Patents. The claimed features of these patents represent very specific features that are a small subset of the entire operation of an H-Series

radio. (Ex. C, Ou Decl., ¶¶ 5–8, 10.) In fact, the H-Series "turned off" the features of two of these patents—the '701 and the '869 Patents—Motorola thus asserts only limited infringement of these patents unrelated to the H-series modifications. The alleged infringement of these two patents, instead is based on technology in older radios and the H-Series' alleged capability to interact with older radios. (*See*, Ex. D, Excerpts from Motorola's Amended Final Infringement Contentions, pp. 27, 34, 35.) There are no H-series source code files relevant to these legacy features, only for the '284 and '169 Patents. (Ex. C, Ou Decl., ¶¶ 7, 8.)

## III. ARGUMENT

Motorola's contempt motion and punitive sanction are unnecessary. Hytera is placing the code into escrow in the United States with the stipulation that it will produce, without objection, whatever the Court orders after determining exactly what Hytera has been ordered to produce: the entire code or Motorola's initial promise of targeted production. Motorola has also not met the high bar required for establishing contempt. Motorola must establish "by ***clear and convincing evidence*** that (1) a court order sets forth an unambiguous command; (2) the alleged contemnor violated that command; (3) the violation was significant, meaning the alleged contemnor did not substantially comply with the order; and (4) the alleged contemnor failed to make a reasonable and diligent effort to comply." *S.E.C. v. Hyatt*, 621 F.3d 687, 692 (7th Cir. 2010) (emphasis added); *see also Oberloh v. Eclips Hair Design, Inc.*, No. 3:10–CV–497, 2015 WL 1064609, at *2 (N.D. Ind. Mar. 11, 2015) ("A party seeking contempt sanctions for a violation of a court order faces a high bar.").

Motorola cannot establish these elements, let alone meet its evidentiary burden. This is not surprising. Hytera has not violated an unambiguous command and believes it acted diligently once production commenced. Motorola glosses over what was actually ordered to be produced

and instead acts as if contempt is a foregone conclusion. But no matter, putting the code in escrow renders contempt—and its stated goal of coercion—moot.

**A. Hytera's placement of the entire H-Series code into escrow renders Motorola's motion unnecessary**.

Motorola refused to meet and confer with Hytera prior to filing its contempt motion; had it done so, the motion would likely have never been filed. Hytera believes it complied with "targeted" production and is presently working to place the *entire* H-Series source code into escrow in the U.S. in case the Court finds something more than "targeted" production is required.[2] And again, this is a dispute over *how much* source code Hytera must produce not over whether it must produce *any* code. Hytera has already produced hundreds of thousands of lines of code and now is placing *all* the code in escrow pending a decision from this Court as to how much more, if any, must be produced.[3] Given Hytera's willingness, without objection, to produce whatever code the Court might order, a contempt order is unwarranted. And as explained below, Hytera firmly believes it complied with the Court's orders.

**B. Hytera did not violate any Court Order.**

1. The Court did not order Hytera to produce the *entire* H-Series source code, which Motorola does not dispute contains a vast amount of irrelevant code.

Motorola must demonstrate that Hytera violated a court order that sets forth an unambiguous command. *S.E.C.*, 621 F.3d at 692. Motorola contends that the Court commanded

---

[2] Hytera also produced the H-Series source code Motorola is seeking in a separate case between the Parties in the Intermediate People's Court of Shenzhen (the "Chinese Case")1 on January 26, 2024. Motorola has made an appearance in the Chinese Case and will have an opportunity to review the code in that case.

[3] Hytera would prefer to have the stipulated protective order modified so that Motorola can only use the production of H-Series source code in *this case*, if ordered to produce the entire code.

Hytera to produce the entire set of H-Series source code. While not true—at a minimum, such an order was not unambiguous.

Neither Judge Cummings nor Judge Valderrama ordered Hytera to produce the *entire* set of H-Series source code. On January 5, 2023, Judge Cummings allowed Motorola to amend its infringement contentions to assert four patents against Hytera's H-Series products and at Motorola's behest ordered "targeted and limited" discovery related to the H-Series products. (*See* Dkt. #275, p. 13 (internal quotations omitted).) Judge Cummings granted Motorola's request for H-Series discovery expressly relying on Motorola's stipulation that "any additional discovery would be 'targeted' and 'limited'" and that "Motorola will tailor its requests to seek only information that is clearly relevant and important to its infringement claims." (*Id.*) Motorola reiterated this stipulation several times in its response to Hytera's Objections and the May 10, 2023 Joint Status Report. (Dkt. #279, p. 14; Dkt. #293, p. 1.)

Motorola first raised the issue of producing the entire H-Series code on June 30 in a sentence buried on page nine of a brief related to Hytera's Motion to Extend Time to Produce Source Code. There, it claimed without support that "it is necessary for Motorola to receive and review the entire H-Series code base to ensure it can fully discern the operation of the accused features." (*See* Dkt. #304, p. 9.) Motorola contradicted itself in the same brief stating: "[Motorola] ***does not seek all of Hytera's source code***, but rather the specific source code for one product line ***sufficient to understand the products' functionality***" and "***only seeking H-Series source code that is highly relevant to Hytera's infringement***[.]" (*Id.*, pp. 2, 3.)

In its Response to Hytera's Objections, Motorola took issue with the wording "truly relevant" to limit the accused features' functionality, claiming that wording was "vaguely defined." (Dkt. #279, p. 14.) Motorola proposed its own alternative phrase, limiting the scope to

the "source code involved in carrying out the accused functionality," which reflects what the Parties set forth in their Joint Status Report. (*Id.*) Motorola now tries to rewrite that dispute about the proper wording to define a limited scope to a broader dispute about whether Hytera should have to produce the *entire* set of source code. (*See* Dkt. #353-1, p. 6.) Motorola suggests that Judge Valderrama's Order overruling Hytera's objections means Hytera has been ordered to produce the entire code, but this overstates the dispute between Motorola and Hytera as to scope in the briefing on Hytera's objections. It is clear from Judge Valderrama's order that he was not making any ruling on scope of source code discovery: "the Court declines to interfere with discovery management . . . ." (Dkt. #309, n. 2.) Additionally, the Court denied the motion to extend in September finding that the "degree of specificity" fell in Motorola's favor. (Dkt. # 324, p. 12). How could producing the entire code be specific in view of Motorola's previous stipulation?

There has been no unambiguous command that Hytera produce the *entire set* of H-Series source code.[4] Such a proposition runs counter to this Court's instruction that H-Series discovery be targeted and limited, Motorola's multiple representations that it is able to specify and only seeking the code involved in carrying out the accused functionality, and the Federal Rules of Civil Procedure. Rule 26 limits discovery to "matter that is relevant to any party's claim or defense and proportional to the needs of the case." Fed. R. Civ. P. 26(b)(1). "Targeted and limited" has no meaning if Hytera must produce everything without limitation.

[4] Motorola cites *Brocade Communications Systems, Inc. v. A10 Networks, Inc.*, 2011 WL 13397353, at *2 (N.D. Cal. Sep. 6, 2011) to suggest that Hytera violated the Court's Order by not producing the full set of source code, but this is distinguishable. In *Brocade*, the Court unambiguously ordered production of "all [the party's] source code[.]" This is not the case here.

Motorola fails to meet the first contempt element required: "a court order [that] sets forth an unambiguous command." *S.E.C.*, 621 F.3d at 692. The Court has not unambiguously ordered Hytera to produce the *entire* H-Series source code. Rather, as the Parties set forth in their May 10 Joint Status Report, Hytera was ordered to produce "source code related to the accused features on the H-Series Products[.]" (Dkt. #293, p. 1.) Any other reading is in dispute and shows a lack of an unambiguous order.

2. <u>Hytera did not violate the Order requiring it to produce H-Series source code.</u>

Between the September 26 and November 16 reviews, Hytera produced hundreds of thousands of lines of code covering the accused functionality on the H-Series products. (*See* Ex. C, Ou Decl., ¶ 4.) To establish contempt, Motorola must demonstrate that (1) Hytera violated the Court's Order, (2) the violation was significant (i.e., Hytera's production did not substantially comply with the Court's Order), and (3) that Hytera failed to make a reasonable and diligent effort to comply. Motorola has not and cannot demonstrate any of these.

Hytera has produced the H-Series source code related to the accused functionality on the H-Series products, which, at minimum substantially complies with the Court's Order to produce H-Series source code. Motorola contests the adequacy of Hytera's production at a high level with a cursory comparison of the "98 total source code files Hytera has produced" to the "thousands of files that make up the entire code base." (Dkt. #353-1, p. 10.) This perfunctory analysis should carry little weight. Motorola does not dispute, and its expert does not contend, that all the source code files for the H-Series products are relevant to its infringement claims. It cannot.

Motorola does not dispute that the H-Series source code includes a substantial amount of code unrelated to the accused functionalities in the H-Series products. And of the four asserted patents against the H-Series products, only two of them could possibly require source code

analysis, as Motorola's infringement contentions for the '869 and '701 patents claim that the H-Series production infringe only by the fact that they are compatible with certain legacy products that Motorola alleges contain the infringing features. (Ex. D, Excerpts from Motorola's Amended Final Infringement Contentions, pp. 27, 34, 35.) Motorola cannot possibly—and does not—contend that *all* of the H-Series source code is *actually relevant* to the accused functionality of the patents at issue.

The functionality in the H-Series products that Motorola contends infringe its four asserted patents is very limited compared to the giant software architecture on the H-Series products. (*See* Ex. C, Ou Decl., ¶ 10.) Only a small portion of the code is relevant here. Hytera even *removed* the accused functionality related to *two* of those asserted patents in the H-Series, so no code exists for those (*i.e.*, "Short LC Scan" and "Repeater fast re-key after de-keying"). (*See* Hytera Second Supplemental Response to Interrogatory No. 11, Dkt. #254-5, p. 47.) Motorola alleges its infringement for these two patents (the '869 and '701 patents), are not based on the H-Series products containing the accused functionality, but based on the H-Series products being compatible with older Hytera products that Motorola claims contain the accused functionality. (*See*, *e.g.*, Ex. D, Excerpts from Motorola's Amended Final Infringement Contentions, pp. 27, 34, 35.) Motorola does not explain what in the H-Series code would be relevant to proving infringement based on mere compatibility with older, non-H-Series products.

Motorola also argues that other files are missing that it needs to evaluate infringement and supports its argument with a 21-page declaration from its expert, Dr. Nielson, which Hytera has not had an opportunity to test and is moving to strike. (*See* Ex. 6 to Dkt. #353.) Hytera has reviewed the files in the directories that Motorola has identified (*see* Ex. 5 to Dkt. #353) and disagrees with Motorola and Dr. Nielson's claims that this code is relevant and/or necessary to

evaluate the accused functionalities. (*See* Ex. C, Ou Decl., ¶ 4–9.) Most of the directories Motorola identified are unrelated to the accused functionality. (*Id.*, ¶ 9.) And for the directories that do contain code files that relate to accused functionalities, Hytera has produced the relevant files. (*Id.*)

Having not had an opportunity to cross-examine Dr. Nielson regarding his claims, for example that it is "impossible for Motorola to carry out any meaningful infringement analysis" (*see* Ex. 6 to Dkt. #353, ¶ 25), Hytera cannot understand how he is making such conclusions. Dr. Nielson's opinions mostly include vague, conclusory allegations that fail to tie the files' relevance to any patent claims. For example, Dr. Nielson testifies that [redacted] (*Id.*, ¶ 25.) This is generalized opinion with no detail or support.

Further, Dr. Nielson's declaration criticizes Hytera for not producing source code related to functionality of ***patents that are not even asserted against Hytera's H-Series products*** (*see id, e.g.*, ¶¶ 40 ('991 Patent) and 46 ('972 Patent). For the H-Series, Motorola only alleges infringement of the '284, '169, '869, and '701 Patents. Why Dr. Nielsen would opine that code related to unasserted patents is necessary further calls into question the veracity of his declaration. (*See* Dkt. #275, p. 5.) Thus, Motorola's claim that Hytera's production is incomplete is solely based on an untested declaration containing critical errors, misstatements about was produced, and opinions about unasserted patents. This is hardly clear and convincing evidence. [5] Motorola cannot establish contempt.

[5] Motorola's reliance on *Radio One, Inc. v. Direct Media Power, Inc.*, 2018 WL 4685470 (N.D. Ill. 2018) is misplaced. *Radio One* involved a knowing violation of an order restraining the transfer of funds from a frozen account. This is not the case here—Hytera has made a good faith attempt to comply and has complied.

Finally, Motorola's contention that Hytera "failed to make any reasonable or diligent attempt to comply" with the Court's Order is plainly disproven by Hytera's continued efforts to work with Motorola to produce adequate code related to the accused functionalities as well as Motorola's exhaustive review—more than 75 hours. Accordingly, Motorola cannot demonstrate that Hytera did not make a reasonable and diligent effort to comply.

**C. Motorola has not demonstrated it is entitled to a preliminary injunction.**

Notwithstanding Motorola's failure to demonstrate the high burden of establishing contempt, Motorola's request for a "worldwide injunction" is not an appropriate sanction, even if this Court were to hold Hytera in contempt. Civil contempt sanctions should be proportionate to the alleged violation. *APC Filtration, Inc. v. Becker*, No. 07-CV-1462, 2010 WL 4930688, at *1 (N.D. Ill. Nov. 30, 2010) ("When considering an appropriate sanction for a party in contempt, the guiding principle is proportionality.") Remedies for civil contempt are meant to either "*compensate* those harmed by the contemnor's violative conduct or *coerce* the contemnor to cut it out"—they are not meant to be punitive. *See F.T.C. v. Trudeau*, 579 F.3d 754, 777 (7th Cir. 2009). If a contempt sanction "winds up being punitive instead of remedial, then criminal proceedings are required to sustain it." *Id.* at 770. Motorola's proposed sanction is purportedly to coerce compliance,[6] but a worldwide injunction is neither necessary for that nor is it proportionate to Hytera's alleged violation—especially in view of the software escrow. Simply put, this proposed sanction is punitive and not permitted by the controlling case law.

No sanction, let alone one as extreme as a worldwide injunction, is necessary to coerce compliance if this Court finds that Hytera has not complied with any Court Order. Hytera is

[6] Motorola's request for fees related to its Motion should also be denied. Hytera has tried in good faith to work with Motorola and resolve disputes regarding the scope of code. Motorola short-circuited that process after seven weeks of silence, which Hytera took as a sign its November production resolved things, and rushed to the Court with contempt allegations.

currently working on an escrow arrangement with a third-party and will place the entire H-Series source code into an escrow account in the next few days. Upon entry of an Order from this Court finding that Hytera must produce additional source code, even if that order is for the entire set of source code, the escrow agent will produce the required code from the escrow account. Hytera stipulates that it will not object to Your Honor's holding or recommendation to Judge Valderrama. Accordingly, no sanction is necessary to coerce compliance and thus Motorola's request for a worldwide injunction should be denied.

## IV. CONCLUSION

Motorola has not met the high standard of demonstrating by clear and convincing evidence that Hytera has violated an unambiguous order of this Court. Hytera placing the code in escrow pending production by order of this Court obviates the need for any sanction. Motorola has not shown contempt by clear and convincing evidence and its motion should be denied.

Date: February 1, 2024

Respectfully submitted,

*/s/ Todd R. Tucker*

Todd R. Tucker
ttucker@calfee.com
John S. Cipolla (*pro hac vice*)
jcipolla@calfee.com
Mark W. McDougall (*pro hac vice*)
mmcdougall@calfee.com
Andrew W. Alexander
aalexander@calfee.com
Josh A. Friedman (*pro hac vice*)
jfriedman@calfee.com
Bradley S. Pulfer (*pro hac vice*)
bpulfer@calfee.com
John L. Reulbach III (*pro hac vice*)
jreulbach@calfee.com

Dustin D. Likens (*pro hac vice*)
dlikens@calfee.com
Calfee, Halter & Griswold LLP
The Calfee Building
1405 East Sixth Street
Cleveland, Ohio 44114
(216) 622-8200 (Telephone)
(216) 241-0816 (Facsimile)

Boyd Cloern (*pro hac vice*)
bcloern@steptoe.com
STEPTOE & JOHNSON LLP
1330 Connecticut Avenue NW
Washington, DC 20036
(202) 429-3000 (Telephone)
(202) 429-3902 (Facsimile)

*Attorney for Defendant Hytera Communications Corp. Ltd.*

**CERTIFICATE OF SERVICE**

I hereby certify that on February 1, 2024, the foregoing was served upon counsel of record by virtue of the Court's electronic filing system.

*/s/ Todd R. Tucker*
One of the attorneys for Defendant