**UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

MOTOROLA SOLUTIONS, INC.,

Plaintiff,

v.

HYTERA COMMUNICATIONS CORPORATION LTD.,

Defendant.

No. 17-cv-01972
Judge Franklin U. Valderrama

**REDACTED MEMORANDUM OPINION AND ORDER**[1]

Plaintiff Motorola Solutions, Inc. (Motorola) alleges that Defendant Hytera Communications Corporation Ltd. (Hytera) infringes on Motorola Patent Nos. 8,279,991 (the '991 Patent), 7,729,701 (the '701 Patent) and 7,369,869 (the '869 Patent). *See generally* R. 78, Am. Compl.[2] The patents concern two-way digital radio products, technologies, and supporting infrastructure and systems. Before the Court is Hytera's motion for summary judgment of non-infringement for the i-Series and H-

[1]Portions of the parties' briefs were filed under seal, as were many exhibits. The Court filed its original Order under seal so the parties could meet and confer with one another about proposed redactions. R. 586. This public version incorporates the redactions requested by Hytera, which were not opposed by Motorola. R. 590.

[2]Citations to the docket are indicated by "R." followed by the docket number and, where necessary, a page or paragraph citation.

Series products. R. 451, Mot. Summ. J.[3] For the following reasons, the Court grants in part and denies in part Hytera's motion for summary judgment.

**Background**[4]

Motorola owns three patents at interest in this motion: the '991 Patent, the '701 Patent, and the '869 Patent. Am. Compl. ¶¶ 43, 46, 49. Motorola asserts that it has the full right to enforce and/or license these patents. *Id.*

The '991 Patent is directed toward a "method of efficiently synchronizing to a desired timeslot in a time division multiple access communication system." Am. Compl. ¶ 48. The '991 Patent was issued on October 2, 2012. *Id.* Motorola has asserted Claim 7 of the '991 Patent against Hytera. Am. FIC at 3 (HytSJAppx 1446[5]).

The '701 Patent is directed toward "method and system of accessing a de-keyed base station." Am. Compl. ¶ 45. The '701 Patent was issued on June 1, 2010. *Id.* Motorola has asserted Claims 1 and 11 of the '701 Patent against Hytera. Am. FIC at 2–3 (HytSJAppx 1445–46).

---

[3]Hytera has filed five additional motions for summary judgment, on the issues of non-infringement. R. 446, 447, 448, 449, and 450. Additionally, Hytera has also filed a motion for summary judgment on the issue of lost profit or price erosion damages. R. 458. Motorola has filed a cross-motion for partial summary judgment. R. 452. The Court has addressed or will address each of those motions via separate orders.

[4]This factual background is taken from the parties' Rule 56.1 statements of facts and responses, including Hytera's Statement of Facts (R. 445, DSOF); Motorola's Response to Hytera's Statement of Facts (R. 549, Pl.'s Resp. DSOF); Motorola's Statement of Additional Facts (R. 499, PSOAF); and Hytera's Response to Motorola's Statement of Additional Facts (R. 534, Def.'s Resp. PSOAF).

[5]For ease of reference, the Court cites not only to the page number of the Amended Final Infringement Contentions cited, but also to the bates stamp included at the bottom of the document. All citations to HytSJAppx within this Order can be found in R. 445-1–445-4.

The ’869 Patent is directed toward “method and system of scanning a [time division multiple access (TDMA)] channel.” Am. Compl. ¶ 42. The ’869 Patent was issued on May 6, 2008. *Id.* Motorola has asserted Claims 1 and 21 of the ’869 Patent against Hytera. Am. FIC at 2 (HytSJAppx 1445).

Motorola contends that Hytera has infringed the relevant patents by advertising, marketing, offering to sell, importing for sale, and/or selling products in the United States. Am. Compl. ¶ 17. Hytera’s allegedly infringing products include Legacy, i-Series, and H-Series products (the Accused Devices). DSOF ¶ 35.

Hytera argues that the accused i-Series and H-Series devices do not infringe the ’991, ’701, and ’869 Patents as sold, and challenges Motorola’s “mixed-use” theory—the allegation that infringement occurs when customers pair these newer i-Series and H-Series devices with older Legacy products. Memo. Summ. J. at 1–2. Hytera therefore has moved for summary judgment on the issues of direct infringement, induced infringement, and contributory infringement under 35 U.S.C. § 271. *See generally* Memo. Summ. J.

**Legal Standard**

Summary judgment must be granted “if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law.” Fed. R. Civ. P. 56(a). The party seeking summary judgment has the initial burden of showing that there is no genuine dispute and that they are entitled to judgment as a matter of law. *See Carmichael v. Village of Palatine*, 605 F.3d 451,

460 (7th Cir. 2010); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986); *Wheeler v. Lawson*, 539 F.3d 629, 634 (7th Cir. 2008).

If this burden is met, the adverse party must then "set forth specific facts showing that there is a genuine issue for trial." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 256 (1986). A genuine issue of material fact exists if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.* at 248. In evaluating summary judgment motions, courts must view the facts and draw reasonable inferences in the light most favorable to the non-moving party. *Scott v. Harris*, 550 U.S. 372, 378 (2007). The Court may not weigh conflicting evidence or make credibility determinations, *Omnicare, Inc. v. UnitedHealth Grp., Inc.*, 629 F.3d 697, 704 (7th Cir. 2011), and must consider only evidence that can "be presented in a form that would be admissible in evidence." Fed. R. Civ. P. 56(c)(2).

"Since the ultimate burden of proving infringement rests with the patentee, an accused infringer seeking summary judgment of noninfringement may meet its initial responsibility either by providing evidence that would preclude a finding of infringement, or by showing that the evidence on file fails to establish a material issue of fact essential to the patentee's case." *Novartis Corp. v. Ben Venue Lab'ys, Inc.*, 271 F.3d 1043, 1046 (Fed. Cir. 2001).

## Analysis

### I. '991 Patent

In Count V of the Amended Complaint, Motorola alleges that Hytera infringes the '991 Patent. Am. Compl. ¶ 156. Hytera moves for summary judgment for non-

infringement of the ’991 Patent regarding the i-Series and H-Series Accused Devices. Memo. Summ. J. at 3–4. Hytera contends that Motorola “appears to concede that the i-Series and H-Series Accused Devices removed the alleged infringing feature” and has no allegations or supporting facts for infringement of the ’991 patent by the i-Series and H-Series Accused Devices. *Id.*

In response, Motorola concedes that it does not allege that Hytera’s i-Series and H-Series products infringe the ’991 Patent. R. 491, Resp. at 3. Accordingly, asserts Motorola, Hytera’s motion for summary judgment regarding the ’991 Patent is moot. *Id.*

As an initial matter, the Court previously considered whether the H-Series Accused Devices infringed the ‘991 patent in a prior opinion. R. 555, 12/8/2025 Opinion at 6–8. There, the Court recognized that Motorola’s amended complaint could be liberally construed to encompass H-Series products and interpreted Motorola’s response as a request to withdraw counts against those products. *Id.* Motorola’s Amended Complaint was deemed to be amended to remove infringement claims against H-Series products and the Court dismissed those claims with prejudice. *Id.* Because these claims are no longer in this case, Hytera’s motion for summary judgment for noninfringement by the H-Series products of the ‘991 Patent is denied as moot.

As for the i-Series products, the Court finds that the operative complaint could be read to allege a claim that those products infringe the ’991 Patent. *See* Am. Compl. ¶¶ 156–159 (identifying products “include[ed] but are not limited to” various Hytera

products that allegedly infringe the '991 Patent). Therefore, as it did in its earlier order on Hytera's partial motions for summary judgment on the H-Series products, the Court interprets Motorola's response, in which it concedes that it does not allege that the i-Series products infringe the '991 Patent, to be a request to withdraw that count. The Court therefore deems Motorola's Amended Complaint to be amended to remove an infringement claim relating to the i-Series products regarding the '991 Patent in Count V and dismisses this claim with prejudice. *See McReaken v. Kellerman*, 2024 WL 4298900, at *2 (S.D. Ill. Sept. 26, 2024) ("[W]hen a plaintiff withdraws a claim in response to summary judgment, courts within this Circuit typically dismiss these claims with prejudice because it would not be fair at this point to leave open even a remote possibility that defendants might face this claim in some other forum.") (citation modified) (collecting cases). The remainder of the analysis in this Order will only concern the '701 and '869 Patents.

## II. Direct Infringement of the '701 Patent

In Count IV of the Amended Complaint, Motorola alleges that Hytera infringes the '701 Patent both directly and indirectly. Am. Compl. ¶¶ 133–135. As stated above, the '701 Patent covers a method; specifically, it describes an efficient method TDMA wireless communications system that does not require a wakeup message. Resp. at 3; Am. Compl. ¶ 45. Hytera moves for summary judgment asserting that there is no evidence of direct infringement. Memo. Summ. J. at 5–6. Similarly to the '991 claim, Motorola concedes it is not alleging *direct* infringement of the '701 Patent by Hytera for use of the i-Series and H-Series products with Legacy products, instead reserving

argument for indirect infringement. Resp. at 3. Accordingly, Motorola asserts Hytera's motion should be denied as moot. *Id.* For the same reasons stated in the '991 analysis above, the Court disagrees with Motorola. To the extent Count IV alleges direct infringement of the '701 Patent, the Court dismisses this claim with prejudice. *See McReaken*, 2024 WL 4298900, at *2.

### III. Indirect Infringement of the '701 Patent

The Court next turns to indirect infringement. Section 271 specifies two kinds of indirect infringement: contributory infringement and induced infringement. 35 U.S.C. § 271(b)–(c). Both contributory infringement and induced infringement require: (a) an act of direct infringement by someone, *see Linear Tech. Corp. v. Impala Linear Corp.*, 379 F.3d 1311, 1326 (Fed. Cir. 2004) ("There can be no inducement or contributory infringement without an underlying act of direct infringement"); *see also Limelight Networks, Inc. v. Akamai Techs., Inc.*, 572 U.S. 915, 921 (2014), and (b) knowledge of the patent, *see Marposs Societa Per Azioni v. Jenoptik Auto. N. Am., LLC*, 262 F. Supp. 3d 611, 618, 620 (N.D. Ill. 2017) (a showing of induced infringement under § 271(b) requires that "the alleged infringer knowingly induced infringement and possessed specific intent to encourage another's infringement" and a showing of contributory infringement under § 271(c) requires that "that the accused infringer had knowledge of the patent").

Beyond these threshold requirements, induced infringement requires that there is "evidence of active steps taken [by the alleged infringer] to encourage direct infringement." *Barry v. Medtronic, Inc.*, 914 F.3d 1310, 1334 (Fed. Cir. 2019) (citation

modified). Moreover, to establish contributory infringement, the patent owner also must show that the component at issue for contributory infringement has no substantial non-infringing uses. *Fujitsu Ltd. v. Netgear, Inc.*, 620 F.3d 1321, 1326 (Fed. Cir. 2010); *see also Vita-Mix Corp. v. Basic Holding, Inc.*, 581 F.3d 1317, 1327 (Fed. Cir. 2009) (holding that "non-infringing uses are substantial when they are not unusual, far-fetched, illusory, impractical, occasional, aberrant, or experimental").

*A. Induced Infringement of the '701 Patent*

Hytera argues that it is entitled to summary judgment on Motorola's claim for indirect infringement of the '701 Patent because Motorola mistakenly directs its infringement claim at the i-Series and H-Series subscriber radios instead of the Legacy repeaters. Memo. Summ. J. at 4–5. Specifically, Hytera argues Motorola has provided no evidence: (1) that the accused radios (the only i-Series and H-Series Accused Devices for the '701 Patent) are capable of operating with Legacy repeaters, (2) that Hytera ever performed the claimed method with i-Series or H-Series Accused Devices, and (3) that Hytera knowingly induced infringement. *Id.* at 4–8. The Court addresses each argument in turn.

First, Hytera contends that because it is the *repeaters* practicing the claims and not the *radios* themselves, the radios cannot be found to infringe. Memo. Summ. J. at 4–5. Further, Hytera maintains that Motorola has provided no evidence that the i-Series and H-Series Accused Devices can operate with Legacy Accused Devices. *Id.* at 5. Not so, counters Motorola, pointing out that its expert, Dr. Stephen Wicker, testified that, while it is the base station that performs the steps of the '701 claims,

infringement also requires receiving transmission from radios. Resp. at 4; Pl.'s Resp. DSOF ¶ 37. Additionally, any time Legacy repeaters operate with i-Series, H-series, or Legacy radios, the communication launches the steps that infringe the '701 Patent. Resp. at 4. Motorola also relies on the fact that both i-Series and H-Series repeaters operate to the same DMR standard, citing comments from Hytera representatives that compliance with the standard ensures compatibility amongst devices. *Id.* at 4–5 (citing Pl.'s Resp. DSOF ¶ 40). Motorola posits that, since the devices comply with the Digital Mobile Radio (DMR) standard, and the standard requires interoperability, the devices should be able to communicate with each other. *Id.*

The Court finds that Motorola has established a genuine dispute of material fact regarding whether the i-Series and H-Series radios are capable of infringement. Compliance with the DMR standard and statements by Hytera representatives indicate that the devices can work together. Hytera's argument that the repeaters, rather than the radios, are performing the method is a misapplication of 35 U.S.C. § 271(b), which states "[w]hoever actively induces infringement of a patent shall be liable as an infringer." Induced infringement targets conduct and not just the products involved. Thus, when a patent covers a system of components acting together or a method of using them, it is not required that each component individually infringes. *See Mitek Sys., Inc. v. United Services Automobile Assn.*, 139 F.4th 1340, 1351 (Fed. Cir. 2025) (whether a supplier's product constitutes a "material component" is strictly an inquiry for contributory infringement under § 271(c), not induced infringement under § 271(b)). Therefore, a genuine question of

material fact remains as to whether Hytera's conduct surrounding the radios and repeaters constitutes active inducement.

Next, the Court turns to whether there is evidence of actual infringement on the part of Hytera end users. Hytera argues that Motorola has provided no direct evidence that the i-Series or H-Series radios have been utilized by end users with the Legacy repeaters. Memo. Summ. J. at 6. Without this evidence, contends Hytera, there can be no underlying direct infringement required for indirect infringement and it is entitled to judgment as a matter of law. *Id.*

Motorola disagrees, relying heavily on comments made by Steve Cragg, a seller of Hytera radios, and self-identifying end users who confirm they can use the i-Series radios with Legacy repeaters without updating firmware that would avoid the infringing method. Resp. at 5–6. Cragg told customers that "[t]he i-Series products are compatible with Legacy products, so a user does not need to update the system to swap in i-Series products." *Id.* at 6 (quoting R. 501-2, Exh. 75 at 2). Additionally, commentors to an online article noted they could avoid updating the firmware and suggested others avoid it "like the virus." *Id.* (citing R. 501-2, Exh. 77). Motorola also cites [redacted]. *Id.* (citing 502-1, Exh. 2 at 50–53).

In reply, Hytera disputes the implications of Cragg's comments, consumer comments, and sales data. Regarding Cragg's statement, Hytera points out a preceding sentence that states the new products are a replacement for Legacy

products. R 529, Reply at 4–5 (citing R. 502-4, Exh. 57). Further, Hytera posits that even if the products are compatible, that is insufficient for evidence that infringement occurred. *Id.* at 5. Regarding the consumer comments, Hytera points out that the conversations only involve firmware upgrades on the radios and not the repeaters. *Id.* As for the sales data, Hytera suggests that a drop in sales is more likely due to Motorola's continued litigation that has caused a brief worldwide injunction. *Id.*

The Court finds Motorola's evidence of disproportionate sales data and comments by Cragg, while circumstantial, sufficient to establish a genuine issue of fact as to whether infringement has taken place.[6] A patentee may rely on circumstantial evidence to prove infringement. *Lucent Techs., Inc. v. Gateway, Inc.*, 580 F.3d 1301, 1318 (Fed. Cir. 2009) (affirming a jury finding of direct infringement based on circumstantial evidence of product sales). Regarding Cragg's statements, Hytera's argument that the devices are advertised as replacements does not negate the remainder of his quote. Viewed in the light most favorable to Motorola, Cragg's assurance that a user "does not need to update the system to swap in i-Series products" supports a reasonable inference that the new devices can, and are being, used in conjunction with Legacy systems. Similarly, the disproportionate sales data provides a reasonable basis to infer that customers are operating mixed systems that

[6]The comments from self-identifying users, while potentially persuasive, come with concerns regarding their lack of context and potential inadmissibility. *See, e.g.*, *Truinject Corp v. Galderma S.A.*, 694 F. Supp. 3d 491, 501 (D. Del. 2023) (Regarding an online post used for patent infringement, "the post is inadmissible hearsay. A party can rely upon hearsay statements on a motion for summary judgment only if the statements are capable of admission of trial."). This evidence is not necessary for the Court's finding, so the Court does not consider it.

practice the infringing method. Because a jury could reasonably rely on this data to find infringement, summary judgment is inappropriate.

Third, Hytera argues that Motorola provides no evidence that Hytera knew customers would use i-Series and H-Series radios with Legacy repeaters or that Hytera directed customers to do so. Memo. Summ. J. at 6–7. Additionally, in its reply, Hytera also contends that Motorola failed to prove that Hytera had knowledge of the '701 Patent. Reply at 6–7. However, arguments raised for the first time in a summary judgment reply brief are waived, so that point is moot. *Novosteel SA v. U.S., Bethlehem Steel Corp.*, 284 F.3d 1261, 1274 (Fed. Cir. 2002) ("Raising the issue for the first time in a reply brief does not suffice. . . [a]s a matter of litigation fairness and procedure, then, we must treat this argument as waived").

In response, Motorola claims Hytera either intentionally directed customers to infringe or, at the very least, was willfully blind to the probability customers would infringe. Resp. at 7–8. Motorola argues that Hytera, [redacted]. *Id.* at 7 (citing R. 502-3, Exh. 40 at 56:22–24, 65:2–9, 124:15–125:7, 125:9–11, 352:18–22). From Motorola's perspective, the clarity of such instructions creates a genuine dispute of fact. *Id.* at 8 (citing *C.R. Bard, Inc. v. Advanced Cardiovascular Sys., Inc.*, 911 F.2d 670, 675 (Fed. Cir. 1990) (holding that instructions to use products in an allegedly infringing manner were "at best ambiguous" and thus precluded summary judgment)). Motorola also notes that Hytera gave notice to customers that they can interchangeably use any devices that

meet DMR standards. *Id.* (citing R. 501-1, Exh. 56 at 9 (instructions indicating that customers can use "***any***" "DMR standard compliant radios" interchangeably) (emphasis in Resp.)). Additionally, Motorola asserts that Hytera's lack of product design protocols or service instructions to *prevent* infringement shows an intent to induce infringement. *Id.* In its reply, Hytera does not meaningfully address these arguments regarding intent for induced infringement. *See* Reply.

The Court finds Motorola has established a genuine issue of fact as to whether Hytera possessed the specific intent to induce infringement through the distribution of its technical instructions. The question of whether a defendant possessed subjective intent is generally a fact-based assessment not suitable for summary judgment. *See TecSec, Inc. v. Adobe Inc.*, 978 F.3d 1278, 1287 (Fed. Cir. 2020) ("[T]he subjective intent element of induced infringement . . . is a fact issue."). To the extent Hytera argues its technical instructions do not explicitly direct infringement, any ambiguity in those documents only reinforces that this is a factual dispute and not appropriate for summary judgment.[7]

The Court notes, however, that Motorola's reliance on the absence of instructions of how *not* to infringe is not itself evidence of intent. *Warner-Lambert Co. v. Apotex Corp.*, 316 F.3d 1348, 1364 (Fed. Cir. 2003) ("[M]ere knowledge of possible infringement by others does not amount to inducement; specific intent and action to

[7]Motorola also relies on *Global-Tech Appliances, Inc. v. SEB S.A.* to argue that Hytera operated with "willful blindness." 563 U.S. 754, 766, 771 (2011). However, Motorola relies primarily on Hytera's knowledge of Motorola's patents, which does not address the actual question: whether Hytera knew customers would likely infringe. Because Motorola's affirmative evidence of intent via the manuals is sufficient to survive summary judgment, the Court need not address Motorola's willful blindness argument.

induce infringement must be proven."); *see also Vita-Mix Corp. v. Basic Holding, Inc.*, 581 F.3d 1317, 1328 (Fed. Cir. 2009). Regardless, because Motorola has produced affirmative evidence regarding Hytera's technical support instructions and DMR compatibility statements, a reasonable jury could infer the requisite specific intent. Accordingly, summary judgment on the issue of scienter is inappropriate.

In sum, viewing the record in the light most favorable to Motorola, genuine disputes of material fact remain regarding the devices' capabilities, underlying direct infringement, and Hytera's specific intent. Therefore, the Court denies summary judgment as to the induced infringement claim for the '701 Patent.

*B. Contributory Infringement of the '701 Patent*

The Court next turns to the issue of contributory infringement. To establish contributory infringement, the patentee bears the burden of proving that the accused product lacks any substantial non-infringing uses. *Toshiba Corp. v. Imation Corp.*, 681 F.3d 1358, 1363 (Fed. Cir. 2012). Hytera argues that Motorola has failed to provide evidence that the Accused Devices are "not a staple article or commodity of commerce suitable for substantial noninfringing use" under Section 271(c). Memo. Summ. J. at 7. Hytera reiterates that the i-Series and H-Series radios are sold and intended to be used with i-Series and H-Series repeaters and have many other functions that do not infringe the '701 Patent. *Id.*

Motorola counters that the substantiality of non-infringing uses is a question of fact generally inappropriate for summary judgment. Resp. at 9 (citing *Lecat's Ventriloscope v. MT Tool & Mfg.*, 351 F. Supp. 3d 1100, 1124 (N.D. Ill. 2018)).

Motorola contends that Hytera relies solely on expert testimony to prove substantial non-infringing uses, and counters with its own expert testimony. *Id.* Specifically, according to Motorola, its expert "explains that Hytera in fact encouraged the use of i-Series and H-Series products with Legacy products because its customers had Legacy products and Hytera did not require those customers to return the Legacy products when it released i-Series and H-Series products." *Id.* In reply, Hytera asserts that this battle of experts is manufactured and that "it is hornbook law that an expert's unsupported conclusion on the ultimate issue of infringement is insufficient to raise a genuine issue of material fact." Reply at 6 (citing *Arthur A. Collins, Inc. v. N. Telecom Ltd.*, 216 F.3d 1042, 1046 (Fed. Cir. 2000)).

The Court finds that Motorola has failed to establish a genuine issue of fact as to whether there is substantial noninfringing use of the Accused Devices required for contributory infringement. As a threshold matter, Motorola's argument that summary judgment is improper because *Hytera* has not shown substantial noninfringing use is incorrect as a matter of law. As stated above, the patent owner bears the burden of proving the lack of substantial noninfringing use. *See Toshiba Corp.*, 681 F.3d at 1363. Motorola seeks to shift the burden from the patent owner to the alleged infringer without a legal basis.

Motorola's reliance on its expert's report to create a genuine issue of material fact is unavailing. Hytera is correct that an expert's unsupported conclusion cannot defeat summary judgment; the Federal Circuit has stated that "the expert must set forth the factual foundation for his opinion . . . in sufficient detail for the court to

determine whether that factual foundation would support a finding of infringement." *Arthur A. Collins* 216 F.3d at 1047–48. Here, Motorola's expert, Dr. Wicker, fails to provide this requisite factual foundation. Dr. Wicker states that he has "not seen any evidence of any use" for the Accused Devices that does not involve the infringing software and asserts that removing the functionality would cause the system to fail. HytSJAppx 271 ¶¶ 169–170. This statement is conclusory and does not meet the affirmative burden that rests with Motorola to demonstrate the absence of noninfringing use.

Furthermore, Motorola's own arguments regarding the DMR standard betray its contributory infringement claim. Motorola argues that because the devices comply with the DMR standard, they are compatible. If all DMR devices are compatible, the i-Series and H-Series radios can readily be used with a wide array of non-Legacy, non-infringing devices. Because this constitutes a substantial non-infringing use, and Motorola has offered no factual evidence to suggest this use is merely unusual or far-fetched, Motorola cannot meet its burden under § 271(c).

Even drawing all reasonable inferences in favor of Motorola, the Court finds that Motorola has failed to produce evidence demonstrating that the accused radios' intended operation with compatible, non-Legacy repeaters is an insubstantial use. Motorola therefore does not meet its burden under § 271(c). Accordingly, Hytera's motion for summary judgment is granted as to Motorola's claim for contributory infringement of the '701 Patent.

## IV. Direct Infringement of the ’869 Patent

In Count III of the Amended Complaint, Motorola alleges that Hytera infringes the ’869 Patent both directly and indirectly. Am. Compl. ¶ 111. Recall, the ’869 Patent claims a method, specifically, a “method and system of scanning a [time division multiple access (TDMA)] channel.” Am. Compl. ¶ 42. According to Motorola, the ’869 Patent improves scan operations for two-way radio devices, including reducing the amount of time that a subscriber unit spends on scanning. Resp. at 10. The scan feature is important because DMR radios will not know if a transmission is directed to it without scanning, and it is one of the most frequently used functions in DMR products. *Id.* (citing R. 502-4, Exh. 92, ¶¶ 99–100). Hytera contends it is entitled to summary judgment as there is no evidence of direct or indirect infringement. Memo. Summ. J. at 8–11.

The Court starts with Motorola’s claim that Hytera directly infringes the ’869 Patent. Hytera characterizes Motorola’s infringement theory for the ’869 Patent as essentially the reverse of its theory for the ’701 Patent, noting that Motorola alleges infringement occurs when an i-Series or H-Series repeater is used in a mixed system with a Legacy subscriber radio. Memo. Summ. J. at 8.

Hytera argues that Motorola’s direct infringement claim fails as a matter of law because Motorola has produced no evidence that Hytera itself ever performed the claimed method. Memo. Summ. J. at 9. Motorola counters that Hytera directly infringes in two ways: (1) by selling the i-Series and H-Series repeaters to customers who use Legacy subscriber radios, and (2) by making and using the accused systems

during its own product testing and repair services. *Id.* at 10–11 (citing *Koninklijke Philips N.V. v. Zoll Medical Corp.*, 656 F. App'x 504, 519 (Fed. Cir. 2016) (finding direct infringement where a party practiced method claims "during its own product testing and trials")). [redacted]. Resp. at 10–11 (citing R. 502-4, Exhs. 64, 65). Motorola also points to its expert Dr. Rangan's statement that, "any time a system or use of a system comprises a Legacy subscriber and a repeater—either Legacy, i-Series, or H-Series—it infringes the '869 Patent." *Id.* at 10 (citing R. 502-4, Exh. 92 § IV.H).

In reply, Hytera contends that, like the '701 Patent, potential mixed-use cases lack evidence. Reply at 8. Hytera points out that Motorola's [redacted]. *Id.* at 8–9. Indeed, argues Hytera, [redacted]. *Id.* at 9 (citing HytSJAppx 1258 ¶¶ 130–31). [redacted]. *Id.*

The Court finds that Motorola has failed to establish a genuine dispute of material fact regarding direct infringement by Hytera. It is well-settled that the mere sale of a device capable of performing a claimed method does not constitute direct infringement of that method. *Ormco Corp. v. Align Tech., Inc.*, 463 F.3d 1299, 1311 (Fed. Cir. 2006) ("Method claims are only infringed when the claimed process is performed, not by the sale of an apparatus that is capable of infringing use."). Therefore, Hytera's sale of repeaters cannot support a claim for direct infringement without further evidence that infringement has taken place.

Second, Motorola's reliance on Hytera's RMA service records is insufficient to survive summary judgment. While testing a product can constitute direct infringement, the '869 Patent requires a system or method comprising both a subscriber radio and a repeater. As Hytera points out, the [redacted]. Reply at 9; Def.'s Resp. PSOAF ¶ 39. And the Court agrees with Hytera that Dr. Rangan's report contains only conclusory statements related to the i-Series and H-Series operation with Legacy subscriber radios and thus is insufficient to create a question of fact as to Hytera's use of the method covered by the '869 Patent. Accordingly, Hytera's motion for summary judgment is granted as to Motorola's claim for direct infringement of the '869 Patent.

## V. Indirect Infringement of the '869 Patent

The Court next turns to Motorola's claims for indirect infringement of the '869 Patent. To survive summary judgment on indirect infringement, Motorola must first demonstrate that a genuine dispute of material fact exists regarding an underlying act of direct infringement by a third party, namely Hytera's customers or dealers. *See Limelight Networks*, 572 U.S. at 921 (holding that there can be no indirect infringement without proof of an underlying act of direct infringement). From there, the Court must assess whether Motorola has met its evidentiary burdens for induced and contributory infringement.

### *A. Induced Infringement of the '869 Patent*

Hytera argues that Motorola's induced infringement claim fails because there is no evidence that customers mixed Legacy subscriber radios with i-Series or H-Series repeaters, nor is there evidence that Hytera intended for them to do so. Memo. Summ. J. at 9–10. As with the '701 Patent, Hytera asserts that Motorola has provided no evidence: (1) that the accused repeaters are capable of operating with Legacy radios, (2) that Hytera or its customers ever performed the claimed method with i-Series or H-Series Accused Devices, or (3) that Hytera knowingly induced infringement. *Id.* at 10. Motorola disagrees, insisting that there are at least genuine factual disputes underlying each of Hytera's arguments that warrant denying summary judgment. The Court addresses each argument in turn.

First, Hytera argues that Motorola's expert provided no tests nor any analysis to show the i-Series and H-Series repeaters are cable of communicating with Legacy

subscriber radios, relying instead on a theoretical assumption based on the DMR standard. Memo. Summ. J. at 8–9. While Motorola briefly disputes Hytera's characterization of the testing record, Motorola primarily relies on the opinion of its expert, Dr. Rangan, who states that any time a system comprises a Legacy subscriber radio and an i-Series or H-Series repeater, it infringes the '869 Patent. Resp. at 10 (citing R. 502-4, Exh. 92, ¶¶ 99–100); Pl.'s Resp. DSOF ¶ 39. Motorola also points to Hytera's own advertisements, which explicitly state that the i-Series and H-Series products "[c]an be used with conventional DMR Tier II repeaters" and are "compatible with your existing radios." *Id.* at 12 (citing R. 501-2, Ex. 95 at 5–6; R. 501-1, Exh. 56 at 17). Hytera, in reply, calls the DMR compliance argument "nonsensical" and that it requires the '869 Patent to be considered a standard essential patent. Reply at 10. A standard essential patent is a patent whose claims cover technology that is necessary to implement an industry standard, such that every implementation of the standard infringes the patent. *INVT SPE LLC v. Int'l Trade Comm'n*, 46 F.4th 1361 (Fed. Cir. 2022).

The Court finds Motorola has established a genuine dispute of material fact regarding capability of infringement. Hytera's own marketing materials promoting backward compatibility between products contradict its current position that such operation is unproven or impossible, and Motorola's expert testimony supports the conclusion. Further, Hytera's proposition that Motorola's theory effectively transforms the '869 Patent into a standard essential patent is unavailing. Not only is it is a new argument raised for the first time in a reply brief and thus waived, *see*

*Novosteel*, 284 F.3d at 1274, but, waiver aside, it also is a fact-based inquiry that raises an issue of material fact for the jury.

Second, the Court turns to whether there is evidence of actual underlying infringement by end users. Hytera argues that Motorola has not provided any evidence that any customer has actually used a mix of Legacy subscriber radios and new i-Series or H-Seriews repeaters to perform the method of the ’869 Patent. Memo. Summ. J. at 10. However, as the Court noted in its analysis of the ’701 Patent, a patentee may rely on circumstantial evidence to prove direct infringement by third parties. *Lucent Techs.*, 580 F.3d at 1318. Viewing the record in the light most favorable to Motorola, a jury could reasonably infer that because Hytera actively marketed these new repeaters as “future-proof systems” compatible with “existing radios,” customers who owned Legacy radios purchased and used the new repeaters as advertised. Resp. at 11 (citing R. 501-1, Exh. 56 at 17). This circumstantial evidence is sufficient to survive summary judgment.

Third, the Court considers whether Hytera knowingly and intentionally induced infringement. Hytera contends that Motorola has provided no evidence that Hytera knew or intended customers to use i-Series and H-Series repeaters with Legacy radios, let alone directed its customers to do so. Memo. Summ. J. at 10. In response, Motorola points to evidence that Hytera provided its customers and dealers with detailed manuals, training, and technical support specifically covering the configuration and use of the DMR scan functions. Resp. at 12 (citing R. 501-2, Exhs. 96, 97, 98, 99, 104; R. 502-4, Exh. 100; R. 502-5, Exh. 101). Motorola argues that

because scanning is an essential band-related feature—without which a radio would not know which channel to use—providing these instructions demonstrates an intent to induce the infringing method. *Id.*

The Court finds that Motorola has established a genuine issue of material fact regarding scienter. As stated above, the question of whether a defendant possessed subjective intent is generally a fact-based assessment, not suitable for summary judgment. *See TecSec*, 978 F.3d at 1287. Whether Hytera's distribution of manuals and dealer training regarding the scan function was simply innocent participation in an open standard, or a calculated effort to encourage customers to infringe the '869 Patent using mixed systems, is a question of intent that must be resolved by a jury.

In sum, viewing the record in the light most favorable to Motorola, genuine disputes of material fact remain regarding the Accused Devices' capabilities, the underlying direct infringement by customers, and Hytera's specific intent. Accordingly, Hytera's motion for summary judgment is denied as to Motorola's claim for induced infringement of the '869 Patent.

**B. Contributory Infringement of the '869 Patent**

Last, the Court addresses contributory infringement of the '869 Patent. As stated previously, 35 U.S.C. § 271(c) requires the patentee to prove that the accused products lack any substantial non-infringing uses.

Hytera argues that Motorola's contributory infringement claim for the '869 Patent suffers from the same flaw as the '701 Patent—that Motorola has provided no evidence that they are "not a staple article or commodity of commerce suitable for

substantial noninfringing use." 35 U.S.C. § 271(c). Further, Hytera contends that "Motorola is not even accusing the i-Series and H-Series repeaters of infringement when used with i-Series and H-Series subscriber radios, *as they are sold and intended to be used*." Memo. Summ. J. at 10 (emphasis in memorandum). Motorola, in response, fails to dispute this assertion and again incorrectly places the burden on Hytera to proffer evidence of non-infringing use. Resp. at 12. By failing to dispute Hytera's argument, Motorola has waived a response. *See Rodriguez v. Dep't of Veterans Affs.*, 8 F.4th 1290, 1305 (Fed. Cir. 2021) ("An issue that is merely alluded to and not developed as an argument in a party's brief is deemed waived."). Hytera takes this as an admission by Motorola that there are non-infringing uses. Reply at 11.

For the same reasons laid out in its analysis of contributory infringement of the '701 Patent, the Court finds that Motorola's contributory infringement claim fails as a matter of law. As the Court noted above, Motorola cannot pass the burden of providing evidence of noninfringing use onto the alleged infringer, and Motorola has provided no evidence to meet its burden. Further, Motorola's failure to dispute statements by Hytera insinuating noninfringing use in the pairing of i-Series or H-Series repeaters with i-Series and H-Series radios supports Hytera's argument. Accordingly, Hytera's motion for summary judgment is granted as to Motorola's claim for contributory infringement of the '869 Patent.

## Conclusion

For the foregoing reasons, the Court grants in part and denies in part Hytera's motion for summary judgment [451]. Hytera's motion for summary judgment is denied as moot as to its infringement claim relating to the H-Series products regarding the '991 Patent in Count V. The Court deems Motorola's Amended Complaint amended to remove: (1) its infringement claim relating to the i-Series products regarding the '991 Patent in Count V, and (2) its direct infringement claim relating to the i-Series and H-Series products regarding the '701 Patent in Count IV. These claims are dismissed with prejudice.

Hytera's motion for summary judgment is denied as to Motorola's claims for induced infringement of the '701 and '869 Patents under 35 U.S.C. § 271(b). Hytera's motion for summary judgment is granted as to Motorola's claims for contributory infringement of the '701 and '869 Patents under 35 U.S.C. § 271(c), and as to Motorola's claim for direct infringement of the '869 Patent under 35 U.S.C. § 271(a).

Dated: September 28, 2026
Redacted: October 20, 2026

United States District Judge
Franklin U. Valderrama